Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck, NY 11021-3104
Telephone: (516) 268-7080
spencer@spencersheehan.com

United States District Court
Southern District of New York                                  7:20-cv-03032-CS

Lauren Biegel, Greg Maroney, individually
and on behalf of all others similarly situated,

                Plaintiffs,

       - against -                                  First Amended Class Action
                                      Complaint

Blue Diamond Growers,

                Defendant

       Plaintiffs by attorneys alleges upon information and belief, except for allegations pertaining to plaintiffs, which are based on personal knowledge:

       1.    Blue Diamond Growers ("defendant") manufactures, distributes, markets, labels and sells almondmilk yogurt purporting to be flavored with "Vanilla with other natural flavors" under the Almond Breeze brand, with a picture of cured vanilla beans and a vanilla flower ("Product").

       2.    The Product is available to consumers from retail and online stores of third-parties and is sold in containers of various sizes, including 24 OZ.



3. Contrary to the front label representation of "Vanilla [with other natural flavors]," the cured vanilla beans and vanilla flower, the Product is not flavored mainly from vanilla.

4. Instead, the Product is flavored mainly from vanillin – misleadingly identified as "other natural flavors," and as a result, does not taste like vanilla.

5. Vanilla (*Vanilla planifolia Andrews* and *Vanilla tahitenis Moore*) comes from an orchid plant that originated in Mexico where it was first cultivated.

6. The fruit pod of the vanilla flower is the vanilla bean, the raw material for vanilla flavorings.

7. The vanilla bean is heated in the sun, soaked in alcohol and its flavor constituents extracted (vanilla extract).

8. Vanilla's unique and complex flavor is due to the many odor-active compounds including acids, ethers, alcohols, acetals, heterocyclics, phenolics, hydrocarbons, esters and

carbonyls, shown in the table below for a sample of vanilla extract.

| MS Scan # | Area Integration | Peak Assignment | Peak Area % |
|---|---|---|---|
| 67 | 16132 | hexanal | 0.0206 |
| 71 | 16235 | butanediol isomer | 0.0207 |
| 81 | 57370 | butanediol isomer | 0.0732 |
| 103 | 36387 | 3-methylbutyric acid | 0.0464 |
| 115 | 33053 | furfural | 0.0422 |
| 141 | 27408 | butanal, diethyl acetal | 0.0350 |
| 262 | 18390 | 3-methylbutanal, diethyl acetal | 0.0235 |
| 281 | 25224 | hexanoic acid | 0.0322 |
| 289 | 2729 | methyl furfural | 0.0035 |
| 299 | 52183 | phenol + trace of benzaldehyde | 0.0665 |
| 349 | 2385 | 1H-pyrrole-2-carboxaldehyde | 0.0030 |
| 379 | 47287 | limonene + benzyl alcohol | 0.0603 |
| 397 | 13835 | heptanoic acid | 0.0176 |
| 409 | 31102 | gamma-hexalactone | 0.0397 |
| 415 | 19338 | p-cresol | 0.0247 |
| 425 | 4470 | hexanal, diethyl acetal | 0.0057 |
| 443 | 287479 | guiaicol | 0.3666 |
| 453 | 5947 | nonanal | 0.0076 |
| 477 | 10000 | phenylethyl alcohol | 0.0128 |
| 496 | 112067 | ? | 0.1429 |
| 505 | 44668 | benzoic acid + octanoic acid | 0.0570 |
| 522 | 4551 | diethyl succinate | 0.0058 |
| 536 | 2461 | ethyl benzoate | 0.0031 |
| 544 | 11769 | 1,2-benzenediol | 0.0150 |
| 555 | 145356 | 2-methoxy-4-methylphenol | 0.1854 |
| 567 | 2537 | methyl salicylate | 0.0032 |
| 587 | 8552 | hydroxy methyl furfural (HMF) | 0.0109 |
| 594 | 5555 | benzeneacetic acid | 0.0071 |
| 605 | 101562 | nonanoic acid | 0.1295 |
| 624 | 6802 | hydroquinone | 0.0087 |
| 631 | 3864 | 4-methoxybenzaldehyde (p-anisaldehyde) | 0.0049 |
| 642 | 6356 | ethyl nonanoate | 0.0081 |
| 653 | 53264 | 4-methoxybenzyl alcohol (p-anisyl alcohol) | 0.0679 |
| 676 | 14481 | cinnamyl alcohol | 0.0185 |
| 685 | 16094 | 3-hydroxybenzyl alcohol | 0.0205 |
| 718 | 12188570 | 3-hydroxybenzaldehyde + 4-ethoxymethylphenol | 15.5440 |
| 751 | 122634 | methyl cinnamte | 0.1564 |
| 759 | 60715743 | vanillin | 77.4301 |
| 796 | 90669 | methyl-p-methoxybenzoate (methyl paraben) | 0.1156 |
| 809 | 2228588 | vanillyl ethyl ether + trace of 4-hydroxy-3-methoxybenzyl alcohol | 2.8421 |
| 832 | 224829 | p-hydroxybenzoic acid | 0.2867 |
| 839 | 37335 | acetovanillone | 0.0476 |
| 892 | 950342 | vanillic acid | 1.2120 |
| 909 | 405589 | 3,4-dihydroxybenzaldehyde | 0.5172 |
| 935 | 82429 | 3,4-dihydroxy-5-methoxybenzaldehyde | 0.1051 |
| 954 | 6212 | ethyl homovanillate | 0.0079 |
| 975 | 78148 | syringealdehyde | 0.0997 |
| 1266 | 14130 | ethyl palmitate | 0.0180 |
| 1518 | 21477 | ethyl linoleate | 0.0274 |
| | 78413588 | Total | 100.0000 |

9.   While vanillin (MS Scan # 759, 77.4301 Peak Area %) plays a significant role, it contributes between one-quarter and one-third of the overall flavor/aroma impact of vanilla.

10.   P-cresol (MS Scan # 415, 0.0247) provides woody and spicy notes.

11.   Acetovanillone (MS Scan # 839, 0.0476) provides a sweet, honey taste.

12.   P-hydroxybenzoic acid (MS Scan # 832, 0.2867) and vanillic acid (MS Scan # 892, 1.2120) are significant phenolic compounds which contribute to vanilla's aroma.

13.   Buttery notes in vanilla come from compounds like butanal, diethyl acetal (MS Scan # 141, 0.035).

14. Vanillyl ethyl ether (MS Scan # 809, 2.8421) is highly correlated with the rummy and resinous notes of vanilla.

15. 4-methoxybenzaldehyde (p-anisaldehyde) (MS Scan # 631, 0.0049) provides creamy flavor notes to vanilla.

16. The popularity of vanilla in the 19th century led to the isolation of the most predominant flavor component, vanillin.

17. However, vanillin separated from the rest of the vanilla bean does not constitute vanilla flavor.

18. Sensory evaluation of vanillin is mainly sweet, with a lackluster "chemical-like" taste and odor because it lacks the other molecules in vanilla.

19. Vanillin must be accompanied by other compounds to produce the familiar flavor and aroma consumers know as vanilla.

20. The availability of low-cost vanillin resulted in foods purporting to contain vanilla, which either contained no vanilla or a trace or de minimis amount, boosted by synthetic vanillin.

21. Consumer and industry groups have long sought to prevent this deception, where consumers are sold a food labeled as "vanilla" only to discover too late it lacks the richness and layered taste only provided by vanilla beans.

22. The earliest effort to prevent fraud in vanilla products was the U.S. Pharmacopeia standard, which required a specific weight of vanilla beans as the source for vanilla extract.

23. The focus was on the weight of actual vanilla beans, because this would prevent the addition of vanillin to a small amount of vanilla beans.

24. Consumer deception continued through the first half of the 20th century, with companies labeling their foods as "vanilla" which were little more than vanillin with caramel

coloring.

25. Congress authorized regulations to prevent such deceptive labeling of foods flavored with vanilla, and for over fifty (50) years, most companies adhered to these industry standards.

26. This meant consumers were told where a product purported to be flavored as "vanilla" but contained a trace or de minimis amount of vanilla, boosted by vanillin, because it was labeled as imitation vanilla or artificially flavored.

27. In 2018, in response to a surge in fraudulently labeled vanilla flavored foods, The Flavor and Extract Manufacturers Association of the United States ("FEMA") urged companies to return to truthfully labeling vanilla foods so consumers would not be misled by artificial vanilla flavors.[1]

28. One of the misleading practices highlighted by the flavor industry was labeling a food, such as Defendant's almondmilk yogurt, as "Vanilla with other natural flavors" when the amount of vanilla was de minimis, and vanillin was used to provide a product's taste.

29. As FEMA indicated, consumers are especially misled where a food purports to be flavored with vanilla and "other natural flavors" because ingredient lists designate non-vanilla flavors containing vanillin as "Natural Flavors," as seen on Defendant's Product below.

---

[1] John B. Hallagan and Joanna Drake, FEMA, "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," Perfumer & Flavorist, Vol. 43 at p. 46, Apr. 25, 2018 ("Hallagan & Drake"); FEMA is the trade group for the flavor industry.



**INGREDIENTS:** ALMONDMILK (FILTERED WATER, ALMONDS), SUGAR, TAPIOCA STARCH, PECTIN, NATURAL FLAVORS, VANILLA EXTRACT, AGAR, CALCIUM PHOSPHATE, SALT, LOCUST BEAN GUM, SODIUM CITRATE, CALCIUM LACTATE AND CULTURES.

30. In fact, the Product contains more non-vanilla flavor (predominantly vanillin) than flavor from vanilla beans, because "Natural Flavors" is ahead of "Vanilla Extract" on the ingredients list.

31. That these "Natural Flavors" consist mainly of vanillin from non-vanilla sources is shown through the flavor compounds extracted from the Product.

| MS Scan # | Area Integration | Peak Assignment | Conc. PPM w/w |
|---|---|---|---|
| 6 | 980306 | diacetyl | 4.811 |
| 80 | 297403 | acetic acid | 1.460 |
| 155 | 183367 | acetol | 0.900 |
| 178 | 111948 | 2,3-pentanedione | 0.549 |
| 192 | 13558 | propanoic acid | 0.067 |
| 221 | 20026956 | acetoin | 98.292 |
| 239 | 56887 | 3-methyl-1-butanol | 0.279 |
| 244 | 57333 | 2-methyl-1-butanol | 0.281 |
| 264 | 12144350 | 1,2-propylene glycol | 59.604 |
| 320 | 1478366 | butyric acid | 7.256 |
| 325 | 39370 | ethyl butyrate | 0.193 |
| 335 | 889898 | 2-methyl-2,3-pentanediol | 4.368 |
| 343 | 1138468 | ethyl lactate | 5.588 |
| 370 | 64714 | 3-methylbutyric acid + methyl pyrazine | 0.318 |
| 374 | 46433 | furfural | 0.228 |
| 383 | 39153 | 2-methylbutyric acid | 0.192 |
| 398 | 487114 | furfuryl alcohol | 2.391 |
| 410 | 202924 | lactic acid | 0.996 |
| 416 | 146242 | hexyl alcohol | 0.718 |
| 478 | 121429 | gamma-butyrolactone | 0.596 |
| 482 | 108064 | 2,5-dimethylpyrazine | 0.530 |
| 490 | 11835 | 2,3-dimethylpyrazine | 0.058 |
| 495 | 190427 | cyclohexanone | 0.935 |
| 537 | 398244 | hexanoic acid + trace of methyl furfural | 1.955 |
| 548 | 114843 | benzaldehyde | 0.564 |
| 554 | 54396 | 3-methyl-2(5H)-furanone | 0.267 |
| 567 | 15034 | 2-pentylfuran | 0.074 |
| 589 | 60855 | trimethylpyrazine | 0.299 |
| 596 | 30215 | 1H-pyrrole-2-carboxaldehyde | 0.148 |
| 616 | 335256 | cyclotene | 1.645 |
| 627 | 378690 | benzyl alcohol | 1.859 |
| 643 | 326083 | furaneol | 1.600 |
| 656 | 83219 | 2-acetyl pyrrole | 0.408 |
| 670 | 60896 | 3-ethyl-2,5-dimethylpyrazine | 0.299 |
| 686 | 390967 | guiaicol | 1.919 |
| 695 | 55534 | nonanal | 0.273 |
| 716 | 297224 | maltol | 1.459 |
| 719 | 306022 | phenylethyl alcohol | 1.502 |
| 748 | 349282 | octanoic acid | 1.714 |
| 753 | 385996 | benzoic acid | 1.894 |
| 762 | 16820 | trans-2-nonenal | 0.083 |
| 795 | 72056 | 2-methoxy-4-methylphenol | 0.354 |
| 800 | 23950 | decanal | 0.118 |
| 811 | 203750 | naphthalene-d8 (internal standard) | 1.000 |
| 825 | 29255 | hydroxymethyl furfural (HMF) | 0.144 |
| 846 | 375353 | nonanoic acid | 1.842 |
| 892 | 258505 | p-methoxybenzyl alcohol (anisyl alcohol) | 1.269 |
| 904 | 8705 | cinnamic aldehyde | 0.043 |
| 916 | 79873 | 2,4-decadienal + cinnamyl alcohol | 0.392 |
| 939 | 51181 | decanoic acid | 0.251 |
| 961 | 33295324 | piperonal | 163.413 |
| 991 | 741171 | 1,3-benzodioxole-5-methanol (piperonol) | 3.638 |
| 1010 | 31210564 | vanillin | 153.181 |
| 1043 | 505001 | 4-hydroxy-3-methoxybenzyl alcohol + trace of vanillyl ether ether | 2.479 |
| 1057 | 220725 | gamma-decalactone | 1.083 |
| 1077 | 10205 | acetovanillone | 0.050 |
| 1189 | 263048 | triethyl citrate | 1.291 |
| | 109641037 | Total (excluding internal standard) | 538.116 |

32. The abnormal excess of vanillin (153.181 PPM) relative to the odor-active compounds in authentic vanilla is a strong indicator it contains artificial vanillin.

33. Though the Product contains several compounds associated with vanilla, they are overwhelmed by added vanillin, often sourced from wood pulp or petroleum derivatives.

7

34. For instance, the Product's flavoring fails to reveal detectable levels of methyl cinnamate, cinnamyl alcohol, p-cresol, p-hydroxybenzoic acid, 4-methoxybenzaldehyde (p-anisaldehyde) and vanillic acid, even though these compounds were analyzed for.

35. The Product also contains several artificial flavors not disclosed to consumers – vanillin, maltol and piperonal. 21 C.F.R. § 172.515(b) ("Synthetic flavoring substances and adjuvants.").

36. Consumers seek to avoid artificial flavors for health and nutrition purposes, because they are highly processed with chemical additives in laboratories instead of made through simple techniques like alcohol extraction.

37. Maltol (1.459 PPM) is used to increase sweetness, yet vanilla's mild sweetness is appreciated on its own and added sweetness detracts from the vanilla taste desired by consumers.

38. Piperonal (163.413 PPM) adds creaminess, but also contributes a bitter-almond flavor not associated with vanilla.

39. Vanillin (153.181 PPM) by itself has a harsh taste when separated from the rest of the vanilla flavor compounds.

40. Because vanillin is responsible for between one-quarter (25%) and one-third (33%) of the overall flavor/aroma impact of vanilla, the added vanillin skews the balance of flavor compounds which consumers associate with vanilla from vanilla beans.

41. The front label statement of "Vanilla With Other Natural Flavors" is misleading because even though the Product contains some vanilla, its taste is mainly from added vanillin.

42. According to FEMA, it is misleading to label a food such as Defendant's almondmilk yogurt as "Vanilla with other natural flavors" because it contains some vanilla yet mostly vanillin from non-vanilla. *See* 21 C.F.R. § 101.22(i).

43. Foods containing some flavor from a characterizing flavor, and simulating flavor from other natural sources, are typically labeled as "_____ with other natural flavors." 21 C.F.R. § 101.22(i)(1)(iii) ("WONF" flavors).

44. However, according to FEMA, this does not apply to vanilla flavors since any non-vanilla flavor compounds "that simulate vanilla but are not derived from vanilla beans [are treated] as artificial flavors that simulate the natural characterizing flavor."

45. This is consistent with the vanilla standards, which require vanillin to be designated as an artificial flavor when used with vanilla extract. 21 C.F.R. § 169.180(b).

46. This means that the Product is required to disclose the added vanillin as an artificial flavor because the characterizing flavor of the almondmilk yogurt is "vanilla."[2]

47. By omitting "artificially flavored" from the front label, consumers are not told that the taste is from added vanillin.

48. The label statement of "Vanilla with other natural flavors" fails to disclose that the Product's taste is mostly provided by added vanillin, an artificial flavor.

49. The ingredient listing of "Natural Flavors" is also misleading because it does not identify vanillin as an ingredient nor discloses it as an artificial flavor.

50. Vanillin, on its own, cannot provide vanilla flavor because it lacks the above-described odor-active compounds present in vanilla.

51. Even though the Product purports to contain vanilla, the amount of vanillin relative to the other compounds results in a taste dissimilar to vanilla.

52. The Product's flavoring lacks the complexity and flavor notes associated with vanilla because vanillin has never been synonymous with vanilla.

---

[2] Hallagan at 48.

53. Defendant knows consumers will pay more for the Product because the front label states "vanilla with other natural flavors" instead of "artificially flavored" or "does not taste like real vanilla."

54. Consumers are unable to know that the "other natural flavors" include vanillin.

55. Defendant's omission and failure to disclose these facts is deceptive and misleading to consumers who want a vanilla flavored product that contains flavoring mainly from vanilla beans and tastes like vanilla.

56. Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiff and consumers.

57. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

58. The value of the Product that plaintiffs purchased and consumed was materially less than its value as represented by defendant.

59. Had plaintiffs and class members known the truth, they would not have bought the Product or would have paid less for them.

60. As a result of the false and misleading labeling, the Product are sold at a premium price, approximately no less than $5.29 per 24 OZ compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

## Jurisdiction and Venue

61. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

62. Under CAFA, district courts have "original federal jurisdiction over class actions

involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

63. Plaintiff Lauren Biegel is a citizen of New York.

64. Defendant Blue Diamond Growers is a California corporation with a principal place of business in Sacramento, Sacramento County, California and is a citizen of California.

65. "Minimal diversity" exists because plaintiff Biegel and defendant are citizens of different states.

66. Upon information and belief, sales of the Product in New York exceed $5 million per year, exclusive of interest and costs, and the aggregate amount in controversy exceeds $5 million per year.

67. Venue is proper in this because Plaintiff Biegel resides in this District and a substantial part of the events or omissions giving rise to the claim occurred here.

68. Venue is further supported because many class members reside in this District.

Parties

69. Plaintiff Lauren Biegel is a citizen of Campbell Hall, Orange County, New York.

70. Plaintiff Greg Maroney is a citizen of Wurtsboro, Sullivan County, New York.

71. Defendant Blue Diamond Growers is a California corporation with a principal place of business in Sacramento, California, Sacramento County.

72. During the relevant statutes of limitations for each cause of action alleged, plaintiffs purchased the Product within their district and/or State for personal and household consumption and/or use in reliance on the representations of the Product.

73. Plaintiff Biegel purchased the Product on more than one occasion, including on or around January 25, 2020, at stores including Walmart, 470 NY-211 E, Middletown, NY 10940.

74. Plaintiff Maroney purchased the Product on more than one occasion between March

11

2019 and March 2020, at stores including Hannaford Supermarket, 30 Tower Dr, Middletown, NY 10941.

75. Plaintiff bought the Product at or exceeding the above-referenced price because he liked the product for its intended use and relied upon the front label claims, expected a vanilla taste, and that such taste would come exclusively and/or predominantly from vanilla beans and did not expect a taste of vanillin, provided by artificial vanilla flavors.

76. Plaintiffs bought the Product at or exceeding the above-referenced price because they liked the product for its intended use and relied upon the front label claims, expected a vanilla taste, and that such taste would come exclusively and/or predominantly from vanilla beans and did not expect a taste of vanillin, provided by artificial vanilla flavors.

77. Plaintiffs were deceived by and relied upon the Product's deceptive labeling.

78. Plaintiffs would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

79. The Product was worth less than what Plaintiffs paid for it and they would not have paid as much absent Defendant's false and misleading statements and omissions.

80. Plaintiffs intends to, seeks to, and will purchase the Product again when they can do so with the assurance that Product's labels are consistent with the Product's components.

## Class Allegations

81. The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

82. Plaintiffs seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

83. Common questions of law or fact predominate and include whether defendant's

representations were and are misleading and if plaintiffs and class members are entitled to damages.

84. Plaintiffs' claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

85. Plaintiffs are adequate representative because their interests do not conflict with other members.

86. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

87. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

88. Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

89. Plaintiffs seek class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350
(Consumer Protection Statutes)

90. Plaintiffs incorporate by reference all preceding paragraphs.

91. Plaintiffs and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

92. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

93. Defendant misrepresented the substantive, quantitative, qualitative, compositional and/or organoleptic attributes of the Product.

94. The amount and proportion of the characterizing component, vanilla, has a material

bearing on price and consumer acceptance of the Product.

95. Plaintiffs expected the Product to have more vanilla than it did and did not expect added vanillin.

96. Plaintiffs expected a vanilla tasting product which they did not receive.

97. Plaintiffs were not told that the "other natural flavors" included vanillin.

98. Plaintiffs relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

99. Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

100. Plaintiffs incorporate by reference all preceding paragraphs.

101. Defendant misrepresented the substantive, quantitative, qualitative, compositional and/or organoleptic attributes of the Product.

102. The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product.

103. Plaintiffs expected the Product to have more vanilla than it did and did not expect added vanillin.

104. Plaintiffs expected a vanilla tasting product which they did not receive.

105. Plaintiffs were not told that the "other natural flavors" included vanillin.

106. Defendant had a duty to disclose the non-vanilla, artificial flavors and tell consumers the Product did not taste like vanilla because it lacked sufficient amounts of the compounds which provide the characteristic vanilla taste.

107. This duty is based on defendant's position as an entity which has held itself out as

having special knowledge and experience in the production, service and/or sale of the product type.

108. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

109. Plaintiffs and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

110. Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and<br>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

111. Plaintiffs incorporate by reference all preceding paragraphs.

112. The Product was manufactured, labeled and sold by defendant or at its express directions and instructions, and warranted to plaintiffs and class members that they possessed substantive, quality, organoleptic, and/or compositional attributes it did not.

113. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

114. This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

115. Plaintiffs provided or will provide notice to defendant, its agents, representatives, and their employees.

116. Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

117. The Product did not conform to its affirmations of fact and promises due to

defendant's actions and were not merchantable because plaintiffs expected a product that contained enough vanilla relative to any other flavorings in the Product to taste like vanilla.

118.   Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

119.   Plaintiffs incorporate by reference all preceding paragraphs.

120.   Defendant misrepresented the substantive, quality, compositional and/or organoleptic attributes of the Product.

121.   The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product.

122.   Plaintiffs expected the Product to have more vanilla than it did and did not expect added vanillin.

123.   Plaintiffs expected a vanilla tasting product which they did not receive.

124.   Plaintiffs were not told that the "other natural flavors" included vanillin.

125.   Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers.

126.   Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Unjust Enrichment

127.   Plaintiffs incorporate by reference all preceding paragraphs.

128.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiffs and class members, who seek

restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiffs demand a jury trial on all issues.

**WHEREFORE**, Plaintiffs pray for judgment:

1. Declaring this a proper class action, certifying plaintiffs as representatives and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   November 20, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

7:20-cv-03032-CS
United States District Court
Southern District of New York

Lauren Biegel, Greg Maroney, individually and on behalf of all others similarly situated,

            Plaintiffs,

 - against -

Blue Diamond Growers,

            Defendant

## First Amended Class Action Complaint

```
Sheehan & Associates, P.C.
 60 Cuttermill Rd Ste 409
 Great Neck NY 11021-3104
    Tel: (516) 268-7080
    Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: November 20, 2020

                    /s/ Spencer Sheehan
                    Spencer Sheehan