**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | : | |
| LAUREN BIEGEL, GREG MARONEY, | : | Case No.: 7:20-cv-03032-CS |
| *individually and on behalf of all others* | : | |
| *similarly situated*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | ECF Case |
| | : | |
| BLUE DIAMOND GROWERS, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BLUE DIAMOND
GROWERS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**DLA Piper LLP (US)**

Colleen Carey Gulliver
Rachael C. Kessler
Negin Hadaghian
1251 Avenue of the Americas
New York, New York 10020-1104
Phone: (212) 335-4500
Fax: (212) 335-4501
Email: colleen.gulliver@us.dlapiper.com
         rachael.kessler@us.dlapiper.com
         negin.hadaghian@us.dlapiper.com

Stefanie J. Fogel*
33 Arch Street, 26th Floor
Boston, Massachusetts 02110-1447
Phone: (617) 406-6053
Fax: (215) 606-3364
Email: stefanie.fogel@dlapiper.com

**pro hac vice* application to be filed

Date of Service: December 18, 2020          *Attorneys for Defendant*
                                            *Blue Diamond Growers*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

FACTUAL BACKGROUND ..................................................................................2

    A.    The Product. ..................................................................................2

    B.    The Plaintiffs. ................................................................................3

STANDARD OF REVIEW .....................................................................................3

ARGUMENT ..........................................................................................................4

I.      The Plaintiffs Cannot Enforce The FDCA ...............................................4

II.     The Plaintiffs' Claims Are Pre-empted by the FDCA. ..............................5

III.    BDG Did Not Make a Misstatement. .........................................................6

    A.    The Plaintiffs' Allegation That the Product Does Not Taste Like Vanilla Is Implausible. ................................................................7

    B.    "Vanilla with Other Natural Flavors" Is Not Misleading. ...................8

    C.    The Front Label Imagery Is Not Misleading. .......................................9

    D.    The Purported Testing Is Irrelevant. ...................................................11

    E.    The Alleged Misstatements Are Not Material. ...................................11

IV.    The Plaintiffs Have Not Pled Injury. ......................................................12

    A.    The Plaintiffs Have Not Adequately Pled A Purchase. ......................12

    B.    The Plaintiffs Have Not Adequately Pled A Premium Price Injury. ...................13

V.     The Plaintiffs Do Not Have Standing. ....................................................14

    A.    The Plaintiffs Have Not Pled a Concrete And Particularized Injury. ...................14

    B.    The Plaintiffs Do Not Have Standing to Seek Injunctive Relief. ...........................15

VI.    The Plaintiffs' GBL Claims Cannot Be Brought on Behalf of the Proposed Class. .........16

VII.   The Plaintiffs' Fraud and Negligent Misrepresentation Claims Fail. ...............................16

    A.    The Plaintiffs Did Not Comply with Rule 9(b). .................................17

    B.    The Plaintiffs Have Not Pled Justifiable Reliance. .............................18

    C.    The Plaintiffs Have Not Pled Fraudulent Intent. ................................18

    D.    The Economic Loss Rule Bars the Plaintiffs' Negligent Misrepresentation Claim. ...................19

    E.    BDG Did Not Owe the Plaintiffs a Duty of Care. ..............................19

VIII.  The Breach of Express Warranty and Implied Warranty Claims Fail. .............................20

    A.    The Plaintiffs Did Not Plead Privity. .................................................20

**<u>TABLE OF CONTENTS</u>**
**(continued)**

**<u>Page</u>**

B. BDG Did Not Make Any Affirmation Regarding the Product. ............................21

C. The Plaintiffs Have Not Provided Pre-Suit Notice. ................................22

D. The Product Was Fit for Human Consumption. ...................................23

IX. The MMWA Claim Fails. ..............................................................23

A. The Plaintiffs Have Not Pled a Breach of Warranty Under State Law. ...............23

B. BDG Did Not Issue a Written Warranty Under the MMWA. .............................23

X. The Unjust Enrichment Claim Fails. ..............................................24

A. BDG Was Not Unjustly Enriched. ...............................................24

B. The Unjust Enrichment Claim Is Merely Duplicative. ...........................25

CONCLUSION ................................................................................25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alce v. Wise Foods, Inc.*,
　　2018 WL 1737750 (S.D.N.Y. Mar. 27, 2018) .....................................................5, 16

*Ashcroft v. Iqbal*,
　　556 U.S. 662 (2009)...........................................................................................4, 14

*Avazpour Networking Servs., Inc. v. Falconstor Software, Inc.*,
　　937 F. Supp. 2d 355 (E.D.N.Y. 2013) ...................................................................19

*Axon v. Fla's Nat. Growers, Inc.*,
　　813 F. App'x 701 (2d. Cir. 2020) .........................................................................14

*Bautista v. CytoSport, Inc.*,
　　223 F. Supp. 3d 182 (S.D.N.Y. 2016)......................................................17, 20, 25

*Boshnack v. Widow Jane Distilleries LLC*,
　　2020 WL 3000358 (S.D.N.Y. June 4, 2020) ............................................11, 18, 22

*Brumfield v. Trader Joe's Co.*,
　　2018 WL 4168956 (S.D.N.Y. Aug. 30, 2018)............................................................6

*Cali v. Chrysler Grp. LLC*,
　　2011 WL 383952 (S.D.N.Y. Jan. 18, 2011) ............................................................23

*Chang v. Fage USA Dairy Indus., Inc.*,
　　2016 WL 5415678 (E.D.N.Y. Sept. 28, 2016) ........................................................15

*Cohen v. JP Morgan Chase & Co.*,
　　498 F.3d 111 (2d Cir. 2007)..................................................................................6

*Colella v. Atkins Nutritionals, Inc.*,
　　348 F. Supp. 3d 120 (E.D.N.Y. 2018) .......................................................... *passim*

*Conboy v. AT&T Corp.*,
　　241 F.3d 242 (2d Cir. 2001)..................................................................................4

*Cosgrove v. Blue Diamond Growers*,
　　2020 WL 7211218 (S.D.N.Y. Dec. 7, 2020)  .....................................................7, 8, 9

*Dash v. Seagate Tech. (US) Holdings, Inc.*,
　　2015 WL 1537543 (E.D.N.Y. Apr. 1, 2015) ..........................................................19

*Davis v. Hain Celestial Grp., Inc.*,
　　297 F. Supp. 3d 327 (E.D.N.Y. 2018) .................................................................8, 19

**Page(s)**

*Davis v. Yeroushalmi*,
  985 F. Supp. 2d 349 (E.D.N.Y. 2013) ................................................................18

*Donahue v. Ferolito, Vultaggio & Sons*,
  13 A.D.3d 77 (1st Dep't 2004) ..............................................................18, 21, 22, 23

*Ebin v. Kangadis Food Inc.*,
  2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013) ...............................................20, 21

*F.D.I.C. v. Murex LLC*,
  2018 WL 2694431 (S.D.N.Y. June 5, 2018) ........................................................19

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013) ..............................................................................6, 7, 24

*Fink v. Time Warner Cable*,
  837 F. Supp. 2d 279 (S.D.N.Y. 2011), *aff'd*, 714 F.3d 739 (2d Cir. 2013) ...........24

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
  2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013).......................................................24

*Geffner v. Coca-Cola Co.*,
  928 F.3d 198 (2d Cir. 2019) ...................................................................................7

*Hubbard v. Gen. Motors Corp.*,
  1996 WL 274018 (S.D.N.Y. May 22, 1996) .........................................................21

*Iconix Brand Grp. Inc. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
  505 F. App'x 14 (2d Cir. 2012) ............................................................................18

*Izquierdo v. Mondelez Int'l, Inc.*,
  2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ................................................. *passim*

*Jessani v. Monini N. Am., Inc.*,
  744 F. App'x 18 (2d Cir. 2018) ...........................................................................6, 7

*Kaufman v. Sirius XM Radio, Inc.*,
  751 F. Supp. 2d 681 (S.D.N.Y. 2010), *aff'd*, 474 F. App'x 5 (2d Cir. 2012)..........16

*Kennedy v. Mondelez Glob. LLC*,
  2020 WL 4006197 (E.D.N.Y. July 10, 2020)....................................................8, 16

*Kilgore v. Ocwen Loan Servicing, LLC*,
  89 F. Supp. 3d 526 (E.D.N.Y. 2015) ....................................................................24

*Koenig v. Boulder Brands, Inc.*,
  995 F. Supp. 2d 274 (S.D.N.Y. 2014)....................................................................21

*Kommer v. Bayer Consumer Health*,
  710 F. App'x 43 (2d Cir. 2018) ............................................................................15

**Page(s)**

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)........................................................................................15

*Mandarin Trading Ltd. v. Wildenstein*,
  16 N.Y.3d 173 (2011) ...................................................................................20

*Marcum, LLP v. Silva*,
  117 A.D.3d 917 (2d Dep't 2014) .................................................................18

*Marino v. Coach, Inc.*,
  264 F. Supp. 3d 558 (S.D.N.Y. 2017)...........................................................12

*McCrory v. Adm'r of Fed. Emergency Mgmt. Agency of U.S. Dep't of Homeland Sec.*,
  22 F. Supp. 3d 279 (S.D.N.Y. 2014) *aff'd*, 600 F. App'x 807 (2d Cir. 2015).........................15

*Melendez v. ONE Brands LLC*,
  2020 WL 1283793 (E.D.N.Y. Mar. 16, 2020) ........................................... *passim*

*Meserole v. Sony Corp. of Am., Inc.*,
  2009 WL 1403933 (S.D.N.Y. May 19, 2009) ...............................................23

*Mills v. Polar Molecular Corp.*,
  12 F.3d 1170 (2d Cir. 1993)...........................................................................17

*Mizrahi v. Taic*,
  266 A.D.2d 59 (1st Dep't 1999) ....................................................................12

*N.A. Olive Oil Ass'n v. Kangadis Food Inc.*,
  962 F. Supp. 2d 514 (S.D.N.Y. 2013).............................................................8

*Nelson v. MillerCoors, LLC*,
  246 F. Supp. 3d 666 (E.D.N.Y. 2017) ...................................................... *passim*

*Newton v. Kraft Heinz Foods Co.*
  2018 WL 11235517 (E.D.N.Y. Dec. 18, 2018) ............................................24

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016)...........................................................................15

*Oden v. Boston Sci. Corp.*,
  330 F. Supp. 3d 877 (E.D.N.Y. 2018) *adhered to on reconsideration*,
  2019 WL 1118052 (E.D.N.Y. Mar. 11, 2019) .............................................12

*Orlander v. Staples, Inc.*,
  802 F.3d 289 (2d Cir. 2015)...........................................................................14

*Parks v. Ainsworth Pet Nutrition, LLC*,
  377 F. Supp. 3d 241 (S.D.N.Y. 2019)...........................................................12

**Page(s)**

*PDK Labs, Inc. v. Friedlander*,
  103 F.3d 1105 (2d Cir. 1997) ...................................................................................4

*In re Pepsico, Inc., Bottled Water Mktg. & Sales Practices Litig.*,
  588 F. Supp. 2d 527 (S.D.N.Y. 2008) ......................................................................5

*Pichardo v. Only What You Need, Inc.*,
  2020 WL 6323775 (S.D.N.Y. Oct. 27, 2020) .................................................. *passim*

*Sarr v. BEF Foods, Inc.*,
  2020 WL 729883 (E.D.N.Y. Feb. 13, 2020) ............................................................24

*Silva v. Smucker Nat. Foods, Inc.*,
  2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) .........................................21, 23, 25

*Singleton v. Fifth Generation, Inc.*,
  2016 WL 406295 (N.D.N.Y. Jan. 12, 2016) ...........................................................22

*Solak v. Hain Celestial Group, Inc.*,
  2018 WL 1870474 (N.D.N.Y. Apr. 17, 2018) ........................................................10

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016), *as revised* (May 24, 2016) .............................................15

*Steele v. Wegmans Food Mkts., Inc.*,
  2020 WL 3975461 (S.D.N.Y. July 14, 2020) ................................................. *passim*

*Stoltz v. Fage Dairy Processing Indus.*
  2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ............................................... *passim*

*Vasquez v. Soto*,
  61 A.D.3d 968 (2d Dep't 2009) ............................................................................ 18

*Verzani v. Costco Wholesale Corp.*,
  2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010),
  *aff'd*, 432 F. App'x 29 (2d Cir. 2011) .....................................................................4

*Viggiano v. Hansen Nat. Corp.*,
  944 F. Supp. 2d 877 (C.D. Cal. 2013) .....................................................................5

*Weir v. Cenlar FSB*,
  2018 WL 3443173 (S.D.N.Y. July 17, 2018) ...........................................................6

*Wick v. Wabash Holding Corp.*,
  801 F. Supp. 2d 93 (W.D.N.Y. 2011) .....................................................................20

**Statutes**

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* .................................... *passim*

**Page(s)**

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A)....................................................23

Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d) ......................................................12

Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ............................1, 4, 5

Nutrition Labeling and Education Act, 21 U.S.C. § 343 *et. seq* ......................................5

New York Gen. Bus. Law §§ 349, 350........................................................... *passim*

New York Uniform Commercial Code § 2-313(1)........................................................21

**Other Authorities**

21 C.F.R. § 101.22(i)(1)(iii)..............................................................................5

21 C.F.R. § 169.180(b) .................................................................................4

Fed. R. Civ. P. 9(b) ...............................................................................2, 17, 18

Fed. R. Civ. P. 12(b)(6)...................................................................................3

## PRELIMINARY STATEMENT

Blue Diamond Growers ("BDG") sells many varieties of almondmilk yogurt alternatives, certain of which it labels as "Vanilla with other natural flavors" to describe their vanilla taste (the "Product").  In their Amended Complaint ("AC"), Lauren Biegel and Greg Maroney allege that they made some unspecified Product purchases and paid unspecified prices.  They claim they paid an unspecified premium for the Product based on their supposed belief that the front panel label "Vanilla with other natural flavors" meant the Product derived its vanilla flavor primarily or exclusively from vanilla beans.  And now in their AC, the plaintiffs claim, contrary to common sense and their prior allegations, that the Product does not taste like vanilla.  The plaintiffs continue to assert seven claims based on this faulty premise: (1) violations of Sections 349 and 350 of the New York General Business Law ("GBL"); (2) fraud; (3) negligent misrepresentation; (4) breach of express warranty; (5) breach of implied warranty; (6) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* ("MMWA"); and (7) unjust enrichment.

Even though BDG previously outlined the numerous deficiencies with the plaintiffs' claims, the AC fails to fix them, and warrants dismissal with prejudice because:

- The plaintiffs cannot enforce the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* (the "FDCA") (*see* Section I);

- The plaintiffs' claims are pre-empted by the FDCA (*see* Section II);

- The plaintiffs' claims for violations of the GBL, fraud, and negligent misrepresentation fail because BDG did not make a material misstatement as a matter of law (*see* Section III);

- All of the plaintiffs' claims except for unjust enrichment fail because they have not adequately pled an injury (*see* Section IV);

- The plaintiffs lack standing because they fail to plead a concrete and particularized injury (*see* Section V.A);

- The plaintiffs do not have standing to seek injunctive relief (*see* Section V.B);

- The plaintiffs' GBL claims cannot be brought on behalf of the proposed class, which is overbroad (*see* Section VI);

- The fraud and negligent misrepresentation claims fail because: (1) they are not pled with particularity as required under Fed. R. Civ. P. 9(b); and (2) the plaintiffs cannot plead justifiable reliance (*see* Sections VII.A, VII.B);

- The fraud claim also fails because the plaintiffs did not plead fraudulent intent (*see* Section VII.C);

- The negligent misrepresentation claim also fails because: (1) it is barred by the economic loss doctrine; and (2) BDG did not owe the plaintiffs a duty (*see* Sections VII.D, VII.E);

- The breach of express and implied warranty claims fail because the plaintiffs failed to plead privity with BDG (*see* Section VIII.A);

- The breach of express warranty claim also fails because: (1) BDG did not promise that the Product derived its flavor primarily from vanilla beans; and (2) the plaintiffs do not allege that they provided pre-suit notice to BDG (*see* Sections VIII.B, VIII.C);

- The breach of implied warranty claim also fails because the Product was fit for human consumption (*see* Section VIII.D);

- The MMWA claim fails because: (1) the plaintiffs did not plead a cause of action for breach of warranty under state law; and (2) BDG did not issue a written warranty (*see* Sections IX.A, IX.B); and

- The unjust enrichment claim fails because: (1) the plaintiffs have not pled that BDG was unjustly enriched; and (2) this claim is merely duplicative (*see* Sections X.A, X.B).

Accordingly, this Court should grant BDG's motion to dismiss the AC in its entirety.

## FACTUAL BACKGROUND

**A.    The Product.**

BDG is a California almond grower cooperative that manufactures and sells many varieties of almondmilk yogurt products, including the Product.[1]  (AC ¶¶ 1, 71).  Both the front label and the ingredient list explicitly disclose that the Product is not exclusively flavored by vanilla extract.

---

[1] For purposes of this motion, BDG accepts the plaintiffs' allegations as true except to the extent that they are not otherwise contradicted.  BDG reserves the right to dispute the accuracy of any factual allegation if the case proceeds past this motion (which it should not).

The front label states "Vanilla with other natural flavors" and the ingredient list discloses both "natural flavors" and "vanilla extract."  (*Id.* ¶¶ 3, 30).

**B.      The Plaintiffs.**

Lauren Biegel claims that she purchased non-specific quantities of the Product "on more than one occasion," including around January 25, 2020, at stores "including Walmart, 470 NY-211 E. Middletown, NY."  (AC ¶ 73).  Ms. Biegel does not specify how much she paid for the Product. Greg Maroney claims that he purchased non-specific quantities of the Product "on more than one occasion," at unspecified times "between March 2019 and March 2020," at stores "including Hannaford Supermarket, 30 Tower Dr., Middletown, NY."  (*Id.* ¶ 74).  Mr. Maroney similarly does not allege how much he paid for the Product.  The plaintiffs claim that they purchased the Product based on the "vanilla with other natural flavors" statement and believed that the Product would have "a vanilla taste, and that such taste would come exclusively and/or predominantly from vanilla beans."  (*Id.* ¶¶ 1, 75-76).  While the plaintiffs claim that the Product is sold at a "premium price," neither alleges how much they actually paid for the Product nor identifies any comparable products or their prices.  (*Id.* ¶¶ 60, 75-76).

Ms. Biegel filed the original complaint on April 15, 2020.  (Dkt. No. 1).  BDG sought a pre-motion conference on September 18, 2020.  (Dkt. No. 11).  On October 7, 2020, the Court held a pre-motion conference and described the original complaint as the "weakest" and "least comprehensible" of those brought by plaintiffs' counsel here.  *See* Ex. 1 to the Declaration of Colleen Michelle Gulliver ("Gulliver Decl.") at 2:19-22.  Accordingly, the Court agreed that it would be a "good idea" for the plaintiff to amend the complaint.  *Id.*  Ms. Biegel, now joined by Mr. Maroney, filed the AC on November 20, 2020.  (Dkt. No. 18).  This briefing followed.

## STANDARD OF REVIEW

In deciding Rule 12(b)(6) motions to dismiss, courts apply a "plausibility standard," which

is guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, although the Court must accept a complaint's well-pled allegations as true, this "tenet" is "inapplicable to legal conclusions"; thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Second, only complaints that state a "plausible claim for relief" may survive a motion to dismiss. *Id.* at 679.

## ARGUMENT

### I.   The Plaintiffs Cannot Enforce The FDCA.

The plaintiffs argue repeatedly that the Product does not comply with their interpretation of Food and Drug Administration ("FDA") regulations promulgated under the FDCA. (*See, e.g.*, AC ¶¶ 45-46 (BDG is "required to disclose the added vanillin as an artificial flavor") (citing 21 C.F.R. § 169.180(b)); *id.* ¶ 42 (citing the FDCA for the proposition that the "'Vanilla with other natural flavors'" label is misleading). As individuals, however, the plaintiffs cannot "privately enforce alleged violations of the FDCA" because "no such private right of action exists." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997) (affirming dismissal); *see also Steele v. Wegmans Food Mkts., Inc.*, 2020 WL 3975461, at *1-2 (S.D.N.Y. July 14, 2020) (plaintiffs' reliance on FDA regulations was "without consequence" because the issue was "not conformity with this or that standard … but whether the marketing presentation was deceptive").

In addition, because "[t]he FDCA lacks a private right of action … [the plaintiffs] cannot rely on it for purposes of asserting a state-law consumer claim under" the GBL. *Verzani v. Costco Wholesale Corp.*, 2010 WL 3911499, at *3 (S.D.N.Y. Sept. 28, 2010), *aff'd*, 432 F. App'x 29 (2d Cir. 2011) (amendment futile); *see also Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (a plaintiff cannot "thwart legislative intent by couching" a statutory violation without a private right of action as a GBL claim). Accordingly, the plaintiffs' claims for GBL violations premised on a purported violation of the FDCA must be dismissed.

II.     **The Plaintiffs' Claims Are Pre-empted by the FDCA.**

The plaintiffs' claims are pre-empted by the Nutrition Labeling and Education Act, 21 U.S.C. § 343 *et. seq.* ("NLEA").  The NLEA pre-empts "any requirement for the labeling of food of the type required by section … 343(k) … that is not identical to the requirement of such section. 21 U.S.C. § 343-1(a)(3); *see also In re Pepsico, Inc., Bottled Water Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008) (Seibel, J.) (state cannot impose labeling standards that go "beyond, or [are] different from" federal standards); *Alce v. Wise Foods, Inc.*, 2018 WL 1737750, at *4 (S.D.N.Y. Mar. 27, 2018) ("State laws that impose affirmatively different labeling requirements from federal law … are preempted.") (citation omitted).  An "action is preempted" where a product label "meets the federal standards."  *Pepsico*, 588 F. Supp. 2d at 539.

The plaintiffs contend that the Product label is misleading because the amount of vanilla contained in the Product is less than that of the "non-vanilla" "natural flavors."  (AC ¶ 30).  The applicable FDA regulation does not require that the named flavor provide a greater proportion of the primary recognizable taste than "other natural flavors," only that the flavor derived from "the product whose flavor is simulated" – i.e., vanilla – is "characterizing."  21 C.F.R. § 101.22(i)(1)(iii).  Flavor characterization is not dictated by volume or comparative proportions. *See* 21 C.F.R. § 101.22(i).  The plaintiffs have not alleged that vanilla is not the characterizing flavor in the Product.  Thus, they seek to create a requirement that is inconsistent with FDA regulations and is pre-empted.  *See, e.g.*, *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 129 (E.D.N.Y. 2018) (certain claims were pre-empted by the FDCA); *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 891 (C.D. Cal. 2013) ("Courts have repeatedly found that state law claims challenging 'natural flavors' labels, accompanied by images or names of fruit, are preempted, because such labeling references the characterizing flavor of the food and is permitted by § 101.22."); *see also Pepsico*, 588 F. Supp. 2d at 538-39 (claim pre-empted).

### III.     __BDG Did Not Make a Misstatement__.

The plaintiffs' GBL, fraud, and negligent misrepresentation claims assert that the Product being labeled as "Vanilla with natural flavors" misled them into believing the Product derived its vanilla flavor "exclusively and/or predominantly from vanilla beans," and that they "did not expect a taste of vanillin, provided by artificial vanilla flavors."  (AC ¶¶ 75-76; *see id.* ¶¶ 95-96, 103-04, 117, 122-23).  To state these claims, however, the plaintiffs must demonstrate that BDG's conduct was "'misleading in a material way.'"  *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 673-74 (E.D.N.Y. 2017) (citation omitted); *see also Brumfield v. Trader Joe's Co.*, 2018 WL 4168956, at *5 (S.D.N.Y. Aug. 30, 2018) ("[A] claim for negligent misrepresentation or fraud must plead facts sufficient to show that a defendant made a 'false representation.'") (citation omitted).[2]

This is an objective test and cannot be satisfied by the plaintiffs' subjective point of view.  *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) ("objective definition of 'misleading'").  To determine whether a practice is materially deceptive or misleading, courts assess whether the practice would be "'likely to mislead a reasonable consumer acting reasonably under the circumstances.'"  *Nelson,* 246 F. Supp. 3d at 673-74 (dismissing complaint) (citation omitted); *see also Weir v. Cenlar FSB*, 2018 WL 3443173, at *14 (S.D.N.Y. July 17, 2018) (Seibel, J.) (finding the plaintiffs failed to plead deception); *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) (affirming dismissal).  The plaintiff "must plausibly allege 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'"  *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (citation omitted).  "[I]t is 'well settled that a court may determine as a matter of law that an allegedly

---

[2] As this discussion demonstrates, many of the plaintiffs' claims require them to prove similar elements (for example, injury or a misrepresentation).  To avoid repetition, BDG discusses the deficiencies in various elements across the causes of action.

deceptive advertisement would not have misled a reasonable consumer.'"  *Id.* (quoting *Fink*, 714 F.3d at 741); *see also Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200-01 (2d Cir. 2019) (affirming dismissal of GBL claim because the product label did not mislead as a matter of law).

### A.     The Plaintiffs' Allegation That the Product Does Not Taste Like Vanilla Is Implausible.

For the first time, in their AC, the plaintiffs claim that the Product "does not taste like vanilla," because of the alleged presence of vanillin.  (AC ¶ 4; *see id.* ¶ 51 ("vanillin … results in a taste dissimilar to vanilla").  These allegations defy common sense.  As the plaintiffs admit, vanillin is "the most predominant flavor component" of vanilla.  (*Id.* ¶ 16).  Vanillin is also defined as "[a] fragrant compound which is the essential constituent of vanilla."[3]  Moreover, these allegations directly contradict the original complaint, which admitted that vanillin "*simulates the taste of real vanilla*" and in fact is "used to give the impression of *more* vanilla being present." (*Compare* AC ¶¶ 51, 53, 75-76 *with* Dkt. No. 1, ¶¶ 16-17) (emphases added).

The Court in *Cosgrove v. Blue Diamond Growers* recently rejected this claim where, as here, the plaintiffs already had alleged that "the Product uses vanillin 'to achieve the *same vanilla taste.*'"  2020 WL 7211218, at *4 (S.D.N.Y. Dec. 7, 2020); *see also Pichardo v. Only What You Need, Inc*., 2020 WL 6323775, at *6 (S.D.N.Y. Oct. 27, 2020) (rejecting the argument; taking judicial notice of allegation in original complaint, which demonstrated consumers routinely purchase vanilla-flavored beverages).

Finally, as in *Cosgrove*, the plaintiffs also do not allege anything to support their understanding of the purported taste of "'authentic' vanilla is anything but a subjective one, not

---

[3]"Vanillin." Lexico Oxford English Dictionary, https://www.lexico.com/en/definition/vanillin; *see also* "Vanillin." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/vanillin ("a crystalline phenolic aldehyde $C_8H_8O_3$ that is extracted from vanilla beans or prepared synthetically . . . ").

shared by the reasonable consumer." *Cosgrove*, 2020 WL 7211218, at *4 (citation omitted).

Accordingly, such allegations are implausible.

   B.   **"Vanilla with Other Natural Flavors" Is Not Misleading.**

No reasonable consumer could conclude from the "Vanilla with other natural flavors"

statement that the Product derives its taste "exclusively and/or predominantly from vanilla beans."

(AC ¶¶ 1, 3, 75, 76).  Such a conclusion is unreasonable as a matter of law given the express

statement that the Product contains other natural flavors in addition to vanilla.  *See, e.g.*, *Pichardo*,

2020 WL 6323775, at *5 ("[T]he use of the term vanilla [does not] imply that there are no other

flavoring ingredients."); *Wegmans*, 2020 WL 3975461, at *2 (rejecting "assum[ption] that buyers

take it for granted that natural vanilla flavor is wholly or largely derived from vanilla beans …");

*Cosgrove*, 2020 WL 7211218, at *3 ("[The] association[] of 'Vanilla' as a flavor and not an

ingredient, is borne out by consumers' practical use of the representation."); *Davis v. Hain

Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 337 (E.D.N.Y. 2018) (dismissing claim; "A reasonable

consumer … would not understand the front label to be listing the ingredients from most to least

predominant."); *Kennedy v. Mondelez Glob. LLC*, 2020 WL 4006197, at *13 (E.D.N.Y. July 10,

2020), *report and recommendation adopted*, 1:19-cv-302-ENV-SJB (E.D.N.Y. Sept. 17, 2020)

(dismissing claim; "Reasonable consumers would not expect … that the honey is present in a

particular form or not mixed with other ingredients.").  And the plaintiffs have not alleged that a

reasonable consumer would have detailed knowledge of the FDA's labeling regulations and

necessarily interpret them as the plaintiffs have here.  *N.A. Olive Oil Ass'n v. Kangadis Food Inc.*,

962 F. Supp. 2d 514, 519-21 (S.D.N.Y. 2013) (plaintiffs have not demonstrated "the perceptions

of ordinary consumers align with [the] labeling standards … ").  Rather, the reasonable consumer

would simply expect what they actually received: an almondmilk yogurt alternative that has a

vanilla taste.

At least three analogous "Vanilla" labeling cases have recently been dismissed in this district and compel dismissal here, too.  In *Wegmans*, the plaintiffs alleged that the "Vanilla" labeling of Wegmans' vanilla ice cream mislead them into believing that "[the] ice cream … got its vanilla flavor from vanilla beans or vanilla bean extract," when it rather "got most of its vanilla flavor from some non-vanilla source."  2020 WL 3975461, at *1.  In rejecting the plaintiffs' claims, the Court observed, "[w]hat is misrepresented?  The ice cream is vanilla flavored."  *Id.* at *2. Similarly, in *Pichardo*, the plaintiffs alleged that the "Smooth Vanilla" labeling of the defendant's vanilla-flavored beverage was misleading because its "vanilla flavor [was] not derived exclusively from the vanilla plant" and relied on the results of a consumer survey purporting to show that consumers believed the flavor in the product "came 'only from vanilla beans.'"  2020 WL 6323775, at *1, *4.  Finding the case "indistinguishable" from *Wegmans*, the Court explained: "When consumers read vanilla on a product label, they understand it to mean the product has a certain taste," and thus "[i]t is difficult to comprehend what is misleading when the [product] tastes like vanilla."  *Id.* at *5.  And, most recently, in *Cosgrove*, the plaintiffs alleged that BDG's labeling of its "Vanilla" almondmilk was misleading because "'it has less vanilla than the label represents, contains non-vanilla flavors which provide its vanilla taste and contains artificial flavors, not disclosed to consumers on the front label … '"  2020 WL 7211218, at *1.  Dismissing the plaintiffs' claims, the court found that "a reasonable consumer would associate the representation of 'Vanilla' – with no additional language modifiers – to refer to a flavor and not to vanilla beans or vanilla extract as an ingredient."  *Id.* at *3.

### C.    The Front Label Imagery Is Not Misleading.

The plaintiffs also allege that the Product's front label imagery renders the label misleading.  (AC ¶ 3).  In determining whether a reasonable consumer is likely to be misled, a Court must "consider representations in their 'surrounding context based on the content of the

entire label or advertisement at issue'" because "the idea that consumers purchase products based on certain of a label's statements or images … but are blind to others … in close proximity on the label strains credibility."  *Nelson*, 246 F. Supp. 3d at 674, n.4 (citation omitted).  For example, in *Solak v. Hain Celestial Group, Inc.*, the plaintiffs alleged that pictures of whole vegetables on Garden Veggie Straws deceived them into believing that the product contained "significant amounts of whole vegetables."  2018 WL 1870474, at *4 (N.D.N.Y. Apr. 17, 2018).  The Court disagreed and dismissed the plaintiffs' claims after considering the packaging as a whole because the plaintiffs' interpretation would "strain[] credulity."  *Id.* at *5.



Here, the Product's front panel label contains images of whole almonds, almond flowers, vanilla beans, and a vanilla flower.  (AC ¶ 3).  No reasonable consumer would view this imagery and conclude that the Product derives its flavor predominantly or exclusively from vanilla beans. *See, e.g.*, *Wegmans*, 2020 WL 3975461, at *2 (consumer purchasing vanilla ice cream "is not looking for a bowl of vanilla").  Such a proposition is even more implausible when viewing the

10

surrounding context, since directly above that imagery is the statement "Vanilla with other natural flavors."  (AC ¶ 1); *see Nelson*, 246 F. Supp. 3d at 674 (imagery could not mislead reasonable consumer to believe beer was brewed in Australia when label disclosed it was brewed in the U.S.).[4]

### D.     The Purported Testing Is Irrelevant.

The AC now alleges the existence of purported results of some type of testing of the Product (the "Testing").  (AC ¶¶ 31-40).  But the AC does not provide: the date of the Testing, the source of Testing, what exactly was tested, or the Testing methodology.  And, the plaintiffs concede that the Product "contains several compounds associated with vanilla."  (*Id.* ¶ 33).

Courts have dismissed analogous claims even in the face of such vague allegations.  In *Wegmans*, the Court concluded that the Testing was fundamentally flawed because it did not test "*specifically* for the presence of the particular [vanilla] chemical markers," but rather for "the universe of the [product's] contents."  2020 WL 3975461, at *3 (emphasis added).  Therefore, the plaintiffs' speculation here that the purported "abnormal excess of vanillin" is "a strong indicator [that the Product] contains artificial vanillin" is unsupported and implausible.  (AC ¶ 32).

### E.     The Alleged Misstatements Are Not Material.

In any event, the plaintiffs fail to sufficiently allege that a "reasonable consumer would find the amount of vanilla flavor that comes from vanilla extract (as opposed to other sources of vanillin) material."  *Pichardo*, 2020 WL 6323775, at *5; *Boshnack v. Widow Jane Distilleries LLC*, 2020 WL 3000358, at *3 (S.D.N.Y. June 4, 2020) (dismissing claims; product's label "was

---

[4] To the extent the plaintiffs contend that this imagery and the front label statements create ambiguity regarding the composition of the flavoring (and they do not), a reasonable consumer could review the ingredients list – "where 'consumers are trained to look' for such information" – and see that the Product derives its flavor from "natural flavors," in addition to "vanilla extract." (*Compare* AC ¶ 30 *with Melendez v. ONE BRANDS LLC*, 2020 WL 1283793, at *6-7 (E.D.N.Y. Mar. 16, 2020) (dismissing complaint; "any potential ambiguity created by the front label ... is readily clarified by the back panel ... ") (citation omitted)).

not misleading 'in a material way'").  Indeed, the plaintiffs' conclusory speculation that consumers "want a vanilla flavored product that contains flavoring mainly from vanilla beans" and "seek to avoid artificial flavors" were made and rejected in *Pichardo*.  *Compare* AC ¶¶ 36, 55 *with Pichardo* Am. Compl. (Gulliver Decl., Ex. 2) ¶¶ 9-10 (consumers "'want real vanilla, not imitation [vanilla] flavoring,'" and "'try to avoid artificial flavors'") (citation omitted) (alteration in original).  Therefore, BDG did not make a misstatement.

## IV.    The Plaintiffs Have Not Pled Injury.

In any event, the claims the plaintiffs assert, other than unjust enrichment, must also be dismissed because the plaintiffs have not adequately pled that they were injured.  Under the GBL, a plaintiff must allege an "injury as [a] result of the deceptive act."  *Colella*, 348 F. Supp. 3d at 142 (citation omitted).  "To sufficiently plead injury, a plaintiff must allege that, 'on account of a materially misleading practice, [he] purchased a product and did not receive the full value of h[is] purchase.'"  *Id.* at 143 (quoting *Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at \*7 (S.D.N.Y. Oct. 26, 2016)); *see also* 15 U.S.C. § 2310(d) (damages required for MMWA claim); *Mizrahi v. Taic*, 266 A.D.2d 59, 59-60 (1st Dep't 1999) ("[A]ctual damages are an essential aspect of a negligence claim … "); *Marino v. Coach, Inc.*, 264 F. Supp. 3d 558, 572 (S.D.N.Y. 2017) (dismissing fraud claim); *Oden v. Boston Sci. Corp.*, 330 F. Supp. 3d 877, 895-96 (E.D.N.Y. 2018), *adhered to on reconsideration*, 2019 WL 1118052 (E.D.N.Y. Mar. 11, 2019) (dismissing implied warranty claim); *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 248 (S.D.N.Y. 2019) (express breach of warranty requires plaintiff to allege "detriment") (citation omitted).

### A.    The Plaintiffs Have Not Adequately Pled A Purchase.

The plaintiffs fail to allege an injury because their respective purchase allegations are insufficient.  For example, in *Colella*, the court held that the GBL claims failed in part because the plaintiff failed to adequately allege an injury.  The court explained, "Plaintiff provide[d] limited

detail regarding the purchases of the three … products that form[ed] the basis of the complaint. He fail[ed] to allege with specificity … what he paid for the products." 348 F. Supp. 3d at 142.

So too here.  Ms. Biegel alleges that she purchased unspecified quantities of the Product "on more than one occasion" but does not allege the specific price she paid on any occasion. (AC ¶ 73).  The same is true for Mr. Maroney.  (*Id.* ¶ 74).  Without knowing what the plaintiffs actually paid for the Product, they cannot plausibly plead that they were injured.

### B.      The Plaintiffs Have Not Adequately Pled A Premium Price Injury.

The plaintiffs also fail to allege facts to support their entirely conclusory allegation that they suffered a "premium price" injury.  "A well pleaded allegation that a plaintiff paid a premium may be sufficient to allege injury."  *Colella*, 348 F. Supp. 3d at 143.  However, "[s]imply … recit[ing] the word 'premium' multiple times in [the] Complaint does not make Plaintiffs' injury any more cognizable."  *Izquierdo*, 2016 WL 6459832 at *7.  The plaintiffs must set forth allegations supported by facts, such as identifying the competitors and how the Product's price was inflated compared thereto.  *Id.*[5]

In *Colella*, the plaintiff "only conclusorily assert[ed] that [defendant] charge[d] a premium for its products and provide[d] no facts regarding what the premium was, what price he paid for the products, or the price of non-premium products."  348 F. Supp. 3d at 143.  The court held that this was insufficient.  *Id.*  In *Izquierdo*, the Court held that a plaintiff must "'allege that, on account

---

[5] Although the Court in *Stoltz v. Fage Dairy Processing Indus.* held that the plaintiff had "sufficient[ly]" alleged a premium price injury, 2015 WL 5579872, at *23 (E.D.N.Y. Sept. 22, 2015), the plaintiff's allegations were particularized, containing *specific facts* about specific competitor's prices, which are entirely absent here.  *Compare Stoltz* Am. Compl. (Gulliver Decl., Ex. 3) ¶ 58 (providing tables of prices of defendant's product as compared to two different comparable competitors) *with* AC ¶ 60 (only stating "the Product are sold at a premium price, approximately no less than $5.29 per 24 OZ compared to other similar products represented in a non-misleading way … ").

of a materially misleading practice, she purchased a product and did not receive the full value of her purchase.'" 2016 WL 6459832, at *7 (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015)). To do so, a plaintiff must demonstrate "that they paid a *higher* price for the [product] than they otherwise would have, absent deceptive acts." *Id.* The plaintiff there had only alleged a premium price by comparing the price of the candy with other non-comparable types of candy. *Id.* The Court held that the "[p]laintiffs[] have impermissibly set up the deception as both act and injury, a theory specifically disallowed by our courts." *Id.*[6]

The same conclusion follows here. The plaintiffs assert in an entirely conclusory manner that the Product was "sold at a premium price, approximately no less than $5.29 per 24 OZ, compared to other similar products represented in a non-misleading way ..." (AC ¶ 60). As in *Izquierdo* and *Colella* (and unlike *Stoltz*), they do not allege or identify: (a) the specific price they paid; (b) any specific competitor's product (or price); or (c) how those products are purportedly comparable to the Product. As such, the plaintiffs have failed sufficiently to allege injury.

## V.   The Plaintiffs Do Not Have Standing.

### A.   The Plaintiffs Have Not Pled a Concrete And Particularized Injury.

As set forth above, the plaintiffs have not adequately alleged a purchase or a price premium injury, which prevents them from establishing standing. "The 'irreducible constitutional minimum' of standing consists of three elements. The plaintiffs must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely

---

[6] The Second Circuit, in a summary order, determined that a plaintiff sufficiently pled a premium price injury without identifying the identities or prices of competitor products. *Axon v. Fla's Nat. Growers, Inc.*, 813 F. App'x 701, 704 (2d Cir. 2020). This decision should not apply here because: (1) respectfully, it was wrongly decided because the holding conflicts with Supreme Court precedent by permitting a plaintiff to plead a GBL claim simply by relying on a "[t]hreadbare recital" of the phrase "premium price," which as a "mere conclusory statement[], do[es] not suffice," *Iqbal*, 556 U.S. at 678; and (2) as it is summary order, it does not have precedential effect.

to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). Because the plaintiffs cannot demonstrate a "concrete and particularized" injury in fact, they do not have standing to assert claims relating to their purported purchases of the Product. *See supra*, Section IV; *see also McCrory v. Adm'r of Fed. Emergency Mgmt. Agency of U.S. Dep't of Homeland Sec.*, 22 F. Supp. 3d 279, 292 (S.D.N.Y. 2014) (Seibel, J.), *aff'd*, 600 F. App'x 807 (2d Cir. 2015) (granting motion to dismiss because the plaintiff failed to establish an injury in fact to establish standing).

**B.      The Plaintiffs Do Not Have Standing to Seek Injunctive Relief.**

The plaintiffs do not have standing to seek injunctive relief because they have no risk of future harm. "Past injuries … do not confer standing … unless the plaintiff can demonstrate that []he is likely to be harmed again in the future in a similar way." *Kommer v. Bayer Consumer Health*, 710 F. App'x 43, 44 (2d Cir. 2018) (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 238 (2d Cir. 2016)). "[T]he requirement that a plaintiff allege a risk of future injury in order to obtain injunctive relief is a constitutional requirement that all plaintiffs must satisfy." *Chang v. Fage USA Dairy Indus., Inc.*, 2016 WL 5415678, at *5 (E.D.N.Y. Sept. 28, 2016).

In *Izquierdo*, the plaintiff alleged that he "would still be willing to purchase the current formulation … so long as [the defendant] engages in corrective advertising." 2016 WL 6459832, at *5 (quotations omitted). The Court held that the plaintiff had not established standing for injunctive relief: "The Court interprets [the plaintiff's] conditional statement to mean that Izquierdo will not purchase the Candy unless Mōndelez changes the Candy packaging. If the condition goes unfulfilled – that is, if Mōndelez does not change the Candy packaging – Izquierdo

will not purchase the Candy again.  Therefore, he will not be injured."  *Id.*; *see also Alce*, 2018 WL 1737750, at *6 (allegation that "[the plaintiff] is ready to make such a purchase immediately, provided only that the price paid correspond[s] to the chips within the container" insufficient); *Kennedy*, 2020 WL 4006197, at *5 ("All Plaintiffs allege is that they *would* consider purchasing the Products again *if* there were assurances that the Products' representations were no longer misleading … As such, there is no likelihood that they would be continued to be harmed by the current allegedly misleading labelling.") (alteration in original)

Here, the plaintiffs claim that they will purchase the Product again "when they can do so with the assurance that [the] Product's labels are consistent with the Product's components."  (AC ¶ 80).  Thus, they admit they will not buy the Product again with its existing label.  They do not have standing to seek injunctive relief.

## VI.    <u>The Plaintiffs' GBL Claims Cannot Be Brought on Behalf of the Proposed Class</u>.

The plaintiffs' GBL claims cannot be brought on behalf of a proposed class of "all purchasers of the Product who reside in New York during the applicable statutes of limitations." (AC ¶ 81).  Under New York law, "'*the deception of a consumer must occur in New York*.'" *Kaufman v. Sirius XM Radio, Inc.*, 751 F. Supp. 2d 681, 687 (S.D.N.Y. 2010), *aff'd*, 474 F. App'x 5 (2d Cir. 2012) (alteration in original) (citation omitted).  Therefore, a "class suing under GBL § 349 would have to be limited to those who engaged in a transaction that deceived them in New York."  *Id.* at 686, 688 (S.D.N.Y. 2010) (dismissing GBL claim as to plaintiff and those similarly situated that failed to allege a deception in New York).

## VII.   <u>The Plaintiffs' Fraud and Negligent Misrepresentation Claims Fail</u>.

The plaintiffs' fraud and negligent misrepresentation claims fail because there was no misrepresentation and they have no injury.  These claims also fail because they (A) are not pled with particularity and (B) have not pled justifiable reliance.  Moreover, the plaintiffs' fraud claim

also fails because (C) they did not plead fraudulent intent.  Their negligent misrepresentation claim

also fails because (D) it is barred by the economic loss rule and (E) BDG did not owe them a duty.

### A.      The Plaintiffs Did Not Comply with Rule 9(b).

Rule 9(b)'s heightened pleading standard requires pleadings to "state with particularity"

the "circumstances constituting" the alleged fraud.  Fed R. Civ. P. 9(b); *see also Bautista v.*

*CytoSport, Inc.*, 223 F. Supp. 3d 182, 191-92 (S.D.N.Y. 2016) (Seibel, J.) (dismissing claim).  This

standard also applies to negligent misrepresentation claims.  *Stoltz*, 2015 WL 5579872, at *24

("Negligent misrepresentation claims are subject to … Rule 9(b).").  The plaintiffs must: "(1)

specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state

where and when the statements were made, and (4) explain why the statements were fraudulent."

*Nelson*, 246 F. Supp. 3d at 672 (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d

Cir. 1993)).  In *Izquierdo*, for example, the Court dismissed the plaintiff's fraud claim where the

complaint failed "to state *when* Izquierdo purchased the Candy, *where* precisely he purchased the

Candy, and … how much Izquierdo paid for the Candy," only that Izquierdo purchased the Candy

for "$4.29 (or more)."  2016 WL 6459832, at *9 (alterations in original) (citation omitted).

So too here.  The plaintiffs do not allege how much they paid for the Product and include

only general allegations about where and when they purchased the Product.  Like the plaintiff in

*Izquierdo*, the plaintiffs here only allege that their purchases were "at or exceeding" $5.29 per 24

ounces.  (AC ¶ 76).  Ms. Biegel, moreover, alleges that she purchased the Product multiple times

at multiple stores, yet references only one date with particularity and names the location of only

one purchase.  (*Id.* ¶ 73).  The allegations are so unspecific that one cannot determine if Ms.

Biegel's purchase on the date referenced was even made at the store named.  (*See id.*).  Mr.

Maroney, similarly, merely alleges that he purchased the product multiple times "between March

2019 and March 2020" at multiple stores.  (*Id.* ¶ 74).  He does not allege with particularity any dates and names only one store.  In sum, the plaintiffs' allegations do not comport with Rule 9(b).

### B.     The Plaintiffs Have Not Pled Justifiable Reliance.

The plaintiffs' fraud and negligent misrepresentation claims must also be dismissed because they cannot demonstrate justifiable reliance.  *Donahue v. Ferolito, Vultaggio & Sons*, 13 A.D.3d 77, 78 (1st Dep't 2004) (dismissing fraud claim); *see also Marcum, LLP v. Silva*, 117 A.D.3d 917, 918 (2d Dep't 2014) (negligent misrepresentation claim must "sufficiently plead the required element of justifiable reliance").  An alleged misrepresentation cannot "give rise to liability if the true facts could have been ascertained by the plaintiffs 'by means available to them through the exercise of ordinary intelligence.'"  *Vasquez v. Soto*, 61 A.D.3d 968, 969 (2d Dep't 2009) (vacating decision; finding a lack of justifiable reliance) (citation omitted).

Here, the plaintiffs cannot demonstrate justifiable reliance on their belief that the Product was flavored solely or predominantly by vanilla because a person of ordinary intelligence would not understand "the term vanilla [to] imply that there are no other flavoring ingredients." *Pichardo*, 2020 WL 6323775, at *5.  Even more so here, where the front of the packaging expressly states "Vanilla with other natural flavors" and the ingredient list discloses both "natural flavors" and "vanilla extract."  (AC ¶¶ 3, 30).  Any purported reliance by the plaintiffs is not justified as a matter of law.  *See*, *e.g.*, *Iconix Brand Grp. Inc. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 505 F. App'x 14, 17-18 (2d Cir. 2012) (dismissing claim as a matter of law); *Vasquez*, 61 A.D.3d at 969-70 (same); *Boshnack*, 2020 WL 3000358, at *4 (dismissing claim; plaintiff did not adequately plead justifiable reliance where he did "not plausibly plead[]" a misstatement).

### C.     The Plaintiffs Have Not Pled Fraudulent Intent.

To prevail on their fraud claim, the plaintiffs are required to allege sufficient facts that would "give rise to a *strong* inference of fraudulent intent."  *Davis v. Yeroushalmi*, 985 F. Supp.

2d 349, 359 (E.D.N.Y. 2013) (emphasis in original) (citation omitted).  This "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Dash v. Seagate Tech. (US) Holdings, Inc.*, 2015 WL 1537543, at *2 (E.D.N.Y. Apr. 1, 2015) (citation and internal quotation marks omitted).   "The simple knowledge that a statement is false is not sufficient …"  *Hain Celestial.*, 297 F. Supp. 3d at 337.

The plaintiffs have not pled fraudulent intent.  They assert only that it is purportedly "evinced by [BDG's] failure to accurately identify the Product … when it knew its statements were neither true nor accurate and misled consumers."  (AC ¶ 125).  These allegations are entirely conclusory, and, at most, amount to "[t]he simple knowledge that a statement is false."  *Hain Celestial*, 297 F. Supp. 3d at 337.  The fraud claim must be dismissed.

### D.    The Economic Loss Rule Bars the Plaintiffs' Negligent Misrepresentation Claim.

The plaintiffs' negligent misrepresentation claim also fails because it is barred by the economic loss rule, which "'applies to claims for negligent misrepresentation.'"  *F.D.I.C. v. Murex LLC*, 2018 WL 2694431, at *8 (S.D.N.Y. June 5, 2018) (dismissing claim) (citation omitted).  A negligence claim alleging purely economic injury fails unless there is an independent duty to protect a plaintiff from purely economic losses.  *See, e.g.*, *Avazpour Networking Servs., Inc. v. Falconstor Software, Inc.*, 937 F. Supp. 2d 355, 364 (E.D.N.Y. 2013) (dismissing tort claims).

Here, the plaintiffs allege purely economic losses, not personal injuries.  (*See* AC ¶¶ 59-60, 110).  And BDG had no independent duty to them based on its purported "special knowledge and expertise."  (*Id.* ¶¶ 106-07).

### E.    BDG Did Not Owe the Plaintiffs a Duty of Care.

The plaintiffs' negligent misrepresentation claim also fails because BDG did not owe them

"a duty of care due to a special relationship." *Nelson*, 246 F. Supp. 3d at 677 (citation and internal quotation marks omitted). "[A] closer degree of trust between the parties than that of the ordinary buyer and seller is required to establish the 'existence of … a special relationship.'" *Stoltz*, 2015 WL 5579872, at *24 (citation omitted). In *Stoltz*, the plaintiffs asserted that the defendant owed a duty to them "on the basis of Defendants' unique expertise as the manufacturer." *Id.* at *25. The Court disagreed. "[I]f this alone were sufficient, a special relationship would necessarily always exist for purposes of misbranded food claims, which is not the case." *Id.* at *25-26 (citation omitted); *see also Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 181 (2011) (dismissing claim; "expertise alone cannot create a special relationship …").

The same result follows here. The plaintiffs claim that BDG owed them a duty because it holds "itself out as having special knowledge and experience in the production, service and/or sale of the product type." (AC ¶ 107). This does not create a duty. *See, e.g.*, *Bautista*, 223 F. Supp. 3d at 193 (dismissing claim against protein powder manufacturer due to lack of a special relationship). The negligent misrepresentation claim must be dismissed.

## VIII.   The Breach of Express Warranty and Implied Warranty Claims Fail.

The plaintiffs' warranty claims fail because they have not alleged injury. These claims also fail because (A) they did not allege privity. Their express warranty claim also fails because (B) BDG did not make a false affirmation about the Product and (C) they did not allege pre-suit notice. Finally, the implied warranty claim fails because (D) the Product was merchantable.

### A.     The Plaintiffs Did Not Plead Privity.

The plaintiffs do not allege the required privity under New York law for either their express or implied warranty claims. "'[P]rivity is normally an essential element of a cause of action for express warranty.'" *Ebin v. Kangadis Food Inc.*, 2013 WL 6504547, at *6 (S.D.N.Y. Dec. 11, 2013) (citation omitted). The same holds true for a claim of breach of implied warranty. *Wick v.*

*Wabash Holding Corp.*, 801 F. Supp. 2d 93, 108 (W.D.N.Y. 2011) (privity required for implied warranty claim "except to recover for personal injuries"). For example, in *Ebin*, the Court dismissed the plaintiff's express and implied warranty claims because the plaintiff failed to establish any facts to support privity with the food manufacturer. 2013 WL 6504547, at *6; *see also Donahue*, 13 A.D.3d at 78 (dismissing implied warranty claim); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014) (dismissing breach of warranty claim because plaintiffs failed to allege privity with defendants); *Melendez*, 2020 WL 1283793, at *8 (same).

Likewise, here, the plaintiffs have not alleged privity with BDG. They admit they purchased the Product at grocery stores and that the Product "is available to consumers from retail and online stores of *third-parties*." (AC ¶¶ 2, 73-74 (emphasis added)). Thus, these claims fail.

### B. BDG Did Not Make Any Affirmation Regarding the Product.

The plaintiffs' breach of express warranty claim also fails because they do not allege any false "affirmation of fact or promise." *Nelson*, 246 F. Supp. 3d at 678-79 (citation omitted). "Under Section 2-313(1) of the New York Uniform Commercial Code, a seller creates an express warranty by making 'any affirmation of fact or promise … to the buyer which relates to the goods and becomes part of the basis of the bargain.'" *Silva v. Smucker Nat. Foods, Inc.*, 2015 WL 5360022, at *10 (E.D.N.Y. Sept. 14, 2015). "Generalized statements by the defendant, however, do not support an express warranty claim if they are 'such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely.'" *Id.* (quoting *Hubbard v. Gen. Motors Corp.*, 1996 WL 274018, at *6 (S.D.N.Y. May 22, 1996)).

Here, the plaintiffs premise their breach of express warranty claim on their allegation that the Product was marketed as containing "enough vanilla relative to any other flavorings in the Product to taste like vanilla." (AC ¶ 117). Nowhere on the label, however, does BDG make any representations that the Product necessarily derives its flavor exclusively or predominantly from

vanilla.  On the contrary, BDG expressly disclosed twice that the Product derives its flavor from

both vanilla extract and "other natural flavors."  *See supra*, Section III.C; *see also Boshnack*, 2020

WL 3000358, at *4 ("bald assertion" that plaintiff "would not have purchased [the product] but

for the representation … [was] insufficient").  Therefore, the plaintiffs' breach of express warranty

claims must fail.  *See, e.g.*, *Nelson*, 246 F. Supp. 3d at 678-79; *Donahue*, 13 A.D.3d at 79.

   **C.   The Plaintiffs Have Not Provided Pre-Suit Notice.**

   The plaintiffs' breach of express warranty claim also fails because they do not allege that

they provided pre-suit notice to BDG, nor a physical injury to warrant a potential exception to the

notice requirement.[7]  "To successfully state a claim for breach of warranty, 'a buyer must provide

the seller with timely notice of an alleged breach of warranty.'"  *Colella*, 348 F. Supp. 3d at 143

(quoting *Singleton v. Fifth Generation, Inc.*, 2016 WL 406295, at *12 (N.D.N.Y. Jan. 12, 2016)).

   The plaintiffs assert that they satisfied the notice requirement through BDG's purported

receipt of unspecified customer complaints and because they "provided or will provide notice to

defendant."  (AC ¶¶ 115-16).  This is insufficient.  First, the plaintiffs' conclusory allegation that

they "provided or will provide" notice fails as a matter of law.  Second, the AC lacks any allegation

that any consumer complained that they thought the labeling of the Product as "vanilla with other

natural flavors" was misleading.  In any event, customer complaints still would not satisfy notice.

In *Singleton*, the plaintiff argued that even though he had not provided notice, the defendant was

on notice because of "similar suits."  2016 WL 406295, at *12.  The Court disagreed: "[T]he fact

that Defendant may have been aware of similar claims … did not put Defendant on notice …"  *Id.*

   So too here.  At bottom, the plaintiffs have not alleged facts that they provided notice of

---

[7] "[S]ome New York cases permit an exception to the notice requirement in retail sales ... where a
party alleges physical ... injury."  *Melendez*, 2020 WL 1283793 at *7 (citation omitted).  But the
plaintiffs make no such allegation here.  (AC ¶¶ 111-18).

the alleged breach to BDG and their express warranty claim fails.

### D.    The Product Was Fit for Human Consumption.

The plaintiffs' breach of implied warranty claim must also be dismissed because the Product was merchantable.  The "warranty does not mean that the product will fulfill a buyer's every expectation but simply provides for a minimum level of quality."  *Silva*, 2015 WL 5360022, at *11 (citation and internal quotation marks omitted).  A product is merchantable *unless* it causes "ill effects" or is not fit for human consumption.  *Donahue*, 13 A.D.3d at 79 (dismissing claim; beverages "caused no ill effects and were fit for their intended purposes, namely, liquid refreshment"); *see also Silva*, 2015 WL 5360022, at *11 (same).

Although the plaintiffs allege in an entirely conclusory fashion that the Product "[was] not merchantable," they do not allege that the Product made them sick or was not fit for human consumption.  (*See* AC ¶ 117).  Therefore, the implied warranty claim fails.

### IX.    <u>The MMWA Claim Fails</u>.

### A.    The Plaintiffs Have Not Pled a Breach of Warranty Under State Law.

To state a violation of the MMWA, the plaintiffs must adequately plead "a state law violation of either an express or implied warranty."  *Meserole v. Sony Corp. of Am., Inc.*, 2009 WL 1403933, at *10 (S.D.N.Y. May 19, 2009); *see also Cali v. Chrysler Grp. LLC*, 2011 WL 383952, at *4 (S.D.N.Y. Jan. 18, 2011) (dismissing claim; "[C]laims under the Magnuson-Moss Act stand or fall with the express and implied warranty claims under state law …") (citation omitted).  As stated above, the plaintiffs have not adequately pled a cause of action for breach of warranty under New York law, so their MMWA claim fails.  *See supra*, Section VIII.

### B.    BDG Did Not Issue a Written Warranty Under the MMWA.

The plaintiffs' MMWA claim also fails because BDG did not provide a written warranty that the Product's "material or workmanship [would be] defect free."  15 U.S.C. § 2301(6)(A).

A "written warranty," is only an "affirmation of fact or written promise," which "relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free …" *Id*. The plaintiffs have not alleged that BDG promised that the Product "[was] defect free or [would] meet a specified level of performance," nor could they, because BDG did not. *Sarr v. BEF Foods, Inc.*, 2020 WL 729883, at *8-9 (E.D.N.Y. Feb. 13, 2020) (dismissing claim). Instead, their claims are premised on a mere product description of the Product as "vanilla with other natural flavors." *See In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *17 (E.D.N.Y. Aug. 29, 2013) (dismissing claim; "All Natural" claim on product label did not constitute a written warranty because it was "at most, [a] product description[]") (citations omitted); *see also Newton v. Kraft Heinz Foods Co.*, 2018 WL 11235517, at *6 (E.D.N.Y. Dec. 18, 2018) (dismissing claim; "Mere product descriptions do not fall within the ambit of the MMWA."). Therefore, the plaintiffs' claim for violation of the MMWA must be dismissed.

**X.    The Unjust Enrichment Claim Fails.**

**A.    BDG Was Not Unjustly Enriched.**

The plaintiffs' unjust enrichment claim fails because they have not pled that BDG was unjustly enriched. "'[A] plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution.'" *Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 537 (E.D.N.Y. 2015) (citation omitted). New York courts have held that equitable relief is not warranted if the product was used as intended. *See, e.g.*, *Fink v. Time Warner Cable*, 837 F. Supp. 2d 279 (S.D.N.Y. 2011), *aff'd*, 714 F.3d 739 (2d Cir. 2013). In *Fink*, the district court dismissed such a claim because "allegations [of high-speed internet service] are insufficient to state plausibly a claim that Defendant's allegedly deceptive advertisements make it unjust for Defendant to retain Plaintiffs' internet subscription fees." 837 F. Supp. 2d at 286. The Second Circuit affirmed. Similarly, in *Melendez*, the Court dismissed a

plaintiff's unjust enrichment claim against a food manufacturer because "other than the conclusory assertion that [defendant] obtained 'benefits and monies,' … [plaintiff] neither explain[ed] how nor to what extent [defendant] benefited at [plaintiff's] expense.  Nor is it clear why 'equity and good conscience' would require restitution …"  2020 WL 1283793, at *8 (citation omitted).

So too here.  The plaintiffs merely claim that BDG "obtained benefits and monies."  (AC ¶ 128).  But they presumably used the Product as intended, so they have not alleged that equity and good conscience require the return of their payments.

### B.      The Unjust Enrichment Claim Is Merely Duplicative.

The plaintiffs' unjust enrichment claim also must be dismissed for the independent reason that it is duplicative.  An unjust enrichment claim must be dismissed where the plaintiffs "fail[] to explain how the … claim is not merely duplicative of [the] other causes of action."  *Bautista*, 223 F. Supp. 3d at 194 (citation and internal quotation marks omitted); *see also Nelson*, 246 F. Supp. 3d at 679 (claim duplicative because it "relie[d] on the same facts as [the plaintiff's] other causes of action in tort"); *Silva*, 2015 WL 5360022, at *12 (dismissing claim as duplicative); *Stoltz*, 2015 WL 5579872, at *27 (same); *Melendez*, 2020 WL 1283793, at *8 (same).

So too here.  The plaintiffs' unjust enrichment claim is entirely duplicative.  Indeed, they regurgitate their prior allegations by incorporating all preceding paragraphs and add one cursory statement that BDG allegedly obtained some "benefits and monies."  (*See* AC ¶ 128).  Therefore, their unjust enrichment claim must be dismissed.

### <u>CONCLUSION</u>

BDG respectfully requests that this Court dismiss the AC in its entirety and with prejudice.

Dated: December 18, 2020

**DLA Piper LLP (US)**

*/s/ Colleen Carey Gulliver*
Colleen Carey Gulliver
Rachael C. Kessler
Negin Hadaghian
1251 Avenue of the Americas
New York, New York 10020-1104
Phone: (212) 335-4500
Fax: (212) 335-4501
Email: colleen.gulliver@us.dlapiper.com
        rachael.kessler@us.dlapiper.com
        negin.hadaghian@us.dlapiper.com

Stefanie J. Fogel*
33 Arch Street, 26th Floor
Boston, Massachusetts 02110-1447
Phone: (617) 406-6053
Fax: (215) 606-3364
Email: stefanie.fogel@us.dlapiper.com

* *pro hac vice* application to be filed