## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Lauren Biegel, Greg Maroney, Ryan Cosgrove, Clive Rhoden, Stephen Bradshaw, Angela Farve and Christina Henderson, individually and on behalf of all others similarly situated, | 7:20-cv-03032-CS |
| Plaintiffs, | |
| - against - | Second Amended Class Action Complaint |
| Blue Diamond Growers, | |
| Defendant | Jury Trial Demanded |

Plaintiffs by attorneys allege upon information and belief, except for allegations pertaining to Plaintiffs, which are based on personal knowledge:

1.      Blue Diamond Growers ("Defendant") manufactures, distributes, markets, labels and sells vanilla almondmilk, vanilla almondmilk coconutmilk blend, and vanilla almondmilk yogurt purporting to be flavored with more than a negligible amount of extracts of vanilla beans – "Vanilla" – under its Almond Breeze brand (the "Products").

2.      Demand for real vanilla "has been steadily increasing…due to consumer demand for natural foods that are free of artificial ingredients."[1]

3.      According to one flavor supplier, today's consumers "want real vanilla, not imitation [vanilla] flavoring."

4.      Vanilla (*Vanilla planifolia Andrews* and *Vanilla tahitenis Moore*) comes from an orchid plant that originated in Mexico where it was first cultivated.

---

[1] Chagrin Valley Soap & Salve Company, FAQs, Why Are The Prices of Vanilla Bean Products Always Increasing?

5.      The vanilla orchid produces a fruit pod, the vanilla bean, which is the raw material for vanilla flavorings.

6.      The vanilla bean is heated in the sun for weeks, soaked in alcohol and its flavor constituents extracted (vanilla extract).

7.      Vanillin (3-methoxy-4-hydroxybenzaldehyde) is the major component of natural vanilla extract and is responsible for roughly one-third of vanilla's flavor and aroma.

8.      Vanillin is found in the form of its β-D-glucoside (glucovanillin) in green vanilla beans.

9.      The curing process, including the hydrolysis of its β-D-glucoside, leads to the release of vanillin from glucovanillin, at concentrations of 1-4% of dry weight of cured beans.

10.     Vanilla's unique flavor is due to the hundreds of odor-active compounds besides vanillin, such as acids, ethers, alcohols, acetals, heterocyclics, phenolics, hydrocarbons, esters and carbonyls.

11.     Methyl cinnamate and cinnamyl alcohol provide cinnamon and creamy notes.

12.     P-cresol contributes flavor notes described as woody and spicy.

13.     Acetovanillone provides a sweet, honey taste.

14.     P-hydroxybenzoic acid and vanillic acid are significant phenolic compounds which contribute to vanilla's aroma.

15.     4-methoxybenzaldehyde (p-anisaldehyde) and 4-methoxybenzyl alcohol (p-anisyl alcohol) provide creamy and floral flavor notes.

16.     The isolation of vanillin from vanilla in the late 19th century resulted in foods purporting to contain vanilla, which either contained no vanilla or a trace or *de minimis* amount, boosted by low cost, synthetic vanillin.

17.     Natural flavors are the extractives or essences from a fruit or vegetable, made through natural processes, such as distillation, roasting, heating, enzymolysis or fermentation. *See* 21 C.F.R. § 101.22(a)(3).

18.     Artificial flavors are made from synthetic sources or through non-natural processes, such as chemical reactions, high heat and high pressure. *See* 21 C.F.R. § 101.22(a)(1).

19.     At least seven out of ten consumers avoid artificial flavors because they have been linked to detrimental health effects, contain synthetic ingredients and are highly processed.

20.     All demographics of consumers, from Generation Z to Baby Boomers – say they would pay more for foods with no artificial flavors because they are perceived as more natural.

21.     Federal regulations, which have been adopted by every state, require companies to truthfully disclose the source of a product's flavor. 21 C.F.R. § 101.22.

22.     For example, foods labeled vanilla and strawberry yogurt will get their flavor from vanilla and strawberry ingredients.

23.     Where those same yogurts are represented as "Artificially Flavored," consumers will not expect real vanilla or real strawberries. *See* 21 C.F.R. § 101.22(i)(2) (requiring a food with artificial flavor that simulates the characterizing flavor be labeled as "Artificially Flavored").

24.     Consumers are accustomed to such truthful labeling, present across all food and beverages.

25.     For example, the milk protein drinks below are represented as "vanilla," but they disclose they are "Artificially Flavored," so consumers will know their vanilla taste is not from real vanilla.



26.    When consumers see other "vanilla" products, like U-bet Vanilla Syrup, Vanilla

Wafers or Vanilla Almond Bark, they are told that the taste is not from real, but artificial vanilla,

because their labels state, "Artificially Flavored."





27.    For coffee and pie filling, consumers will not be misled to expect real vanilla because the labels clearly state, "Artificially Flavored."

 

28.     However, defendant markets its Products as being flavored with, and by vanilla, from extracts of vanilla beans, and its front labels fail to tell consumers they are actually artificially flavored.

<u>Vanilla Almondmilk</u>
<u>(32 and 64 OZ)</u>

 

Vanilla Almondmilk Coconutmilk Blend
(Unsweetened) (32 and 64 OZ)

 

Vanilla Almondmilk Yogurt
(5.3 and 24 OZ)



29. Defendant knows that the Products' most appealing features to consumers is that they are milk alternatives flavored with vanilla.

30.    Vanilla is the main flavor used for milk alternative products, since their flavor is often described as "chalky."

31.    While consumers know the Products are dairy alternatives, they will have no reason to expect they are not labeled consistently with all other foods and beverages they see every day.

32.    Since the Products omit any reference to being "Artificially Flavored," they will reasonably expect a non-de minimis amount of vanilla ingredients.

33.    A non-de minimis amount of vanilla ingredients is an amount sufficient such that the Product's vanilla taste does not need to be boosted by synthetic vanillin.

I.    Contrary to Representations, the Products Contain a de minimis amount of Vanilla, if Any

34.    The conclusion that the Products contain a *de minimis* amount of vanilla is evident from a careful reading of the ingredient lists.

Vanilla Almondmilk



**INGREDIENTS:** ALMONDMILK (FILTERED WATER, ALMONDS), CANE SUGAR, CALCIUM CARBONATE, NATURAL FLAVORS, SEA SALT, POTASSIUM CITRATE, SUNFLOWER LECITHIN, GELLAN GUM, VITAMIN A PALMITATE, VITAMIN D2, D-ALPHA-TOCOPHEROL (NATURAL VITAMIN E).

Vanilla Almondmilk Coconutmilk Blend



**INGREDIENTS:** ALMONDMILK (FILTERED WATER, ALMONDS), COCONUTMILK (FILTERED WATER, COCONUT CREAM), CALCIUM CARBONATE, NATURAL FLAVORS, POTASSIUM CITRATE, SEA SALT, SUNFLOWER LECITHIN, GELLAN GUM, VITAMIN A PALMITATE, VITAMIN D2, D-ALPHA-TOCOPHEROL (NATURAL VITAMIN E).

Vanilla Almondmilk Yogurt

**INGREDIENTS:** ALMONDMILK (FILTERED WATER, ALMONDS), SUGAR, TAPIOCA STARCH, PECTIN, NATURAL FLAVORS, VANILLA EXTRACT, AGAR, CALCIUM PHOSPHATE, SALT, LOCUST BEAN GUM, SODIUM CITRATE, CALCIUM LACTATE AND CULTURES.

35.    According to Professor Scott Rankin, a food labeling expert and professor at the University of Wisconsin-Madison, "the different wordings on the labels amount to an industry shorthand for specific kinds of natural or artificial flavorings."

36.    For instance, "Natural flavor…(with no mention of vanilla at all) indicates just a trace of natural vanilla (there's no required level) and other flavorings such as nutmeg that merely trigger an association" with vanilla.

37.    While the Almondmilk Yogurt lists "Vanilla Extract," this amount is de minimis.

38. This is concluded in part because vanilla extract is at least 35 percent alcohol by weight.

39. The "Natural Flavors" is a highly concentrated ingredient, without alcohol, yet it is listed before "Vanilla Extract," which means there is *more* of it in the Vanilla Almondmilk Yogurt than extracts from vanilla beans.

40. The "Natural Flavors" listed in the ingredients of the Almondmilk and Almondmilk Coconutmilk Blend may contain a trace or de minimis amount of vanilla but is mainly comprised of synthetic vanillin, incorrectly identified as part of "Natural Flavors."

41. The ingredient lists of the Products are misleading because they are required to state "Vanillin" and/or "Artificial Flavor," in addition to "Natural Flavors" and/or "Vanilla Extract" (yogurt), and consumers cannot learn of these facts at the point of sale without advanced laboratory equipment.

42. Second, analytical testing of the Products from 2019-2021 confirmed de minimis amounts of extracts from vanilla beans in the Products.

43. While the laboratory results revealed vanillin, this was unaccompanied by expected amounts of other aromatic compounds from the vanilla plant – methyl cinnamate, cinnamyl alcohol, p-cresol, acetovanillone, p-hydroxybenzoic acid, vanillic acid, 4-methoxybenzaldehyde (p-anisaldehyde) and/or 4-methoxybenzyl alcohol (p-anisyl alcohol).

44. Third, the amount of vanillin detected was significantly greater than it would be if it were only present as part of real vanilla, which means the flavoring source is synthetic vanillin – not from vanilla beans.

45. Fourth, the source of the Product's synthetic vanillin is guaiacol, based on its detection at abnormally high levels.

46. Guaiacol is a petrochemical precursor, obtained from synthetic benzene and propylene, whose industrial source is petroleum.

47. Guaiacol is the main source of synthetic vanillin.

48. Converting guaiacol to vanillin requires chemical reactions, such as condensation with glyoxylic acid, decarboxylation and aromatic substitution.

49. Vanillin from guaiacol is an artificial flavor because it is from an artificial source and made through artificial processes.

50. Although the ingredients used to provide the Products' vanilla taste is (1) not from vanilla beans, (2) from an artificial petrochemical source and (3) made through artificial processes, Defendant pretends otherwise, conflating the natural and artificial flavoring and deceiving consumers.

51. The use of the term "Natural Flavors" on the ingredient lists is deceptive because consumers will wrongly assume that the Products contain only natural vanilla flavor, and certainly not conclude they contain artificial flavorings.

52. Additionally, the Products lack an authentic vanilla taste because of the absence of the critical odor-active compounds in vanilla.

53. Defendant adds artificial vanillin to the Products to give it a "sweet, creamy" taste, even though vanillin is known to have a "chemical-like" taste because it lacks the other flavor compounds in vanilla.

54. Because the Products contain artificial flavor that "simulates, resembles or reinforces the characterizing flavor," the front labels are required to, but do not, state, "Artificially Flavored." 21 C.F.R. § 101.22(i)(2).

55.     Defendant knows consumers will pay more for the Products because the front labels only state "Vanilla" and or "Natural Flavors" instead of "Artificially Flavored" or "Added Artificial Flavor."

VI.     Conclusion

56.     Defendant misrepresented the Products through affirmative statements, half-truths, and omissions.

57.     Defendant's omissions and failures to disclose these facts is deceptive and misleading to consumers who want a vanilla flavored product that contains flavoring with more than a negligible amount of extracts from vanilla beans, does not contain artificial flavoring such as synthetic vanillin and tastes like vanilla.

58.     Defendant's branding and packaging of the Products are designed to – and do – deceive, mislead, and defraud Plaintiffs and consumers.

59.     Defendant sold more of the Products and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

60.     The value of the Products that Plaintiffs purchased and consumed were materially less than their value as represented by Defendant.

61.     Had Plaintiffs and class members known the truth, they would not have bought the Products or would have paid less for them.

62.     Due to the false and misleading labeling, the Products are sold at premium prices.

63.     For example, the cost of the 32-ounce of Almond Breeze Vanilla Almond Milk is $2.19 (or 6.8 cents per ounce) at Target.

64.     The cost of the 32-ounce Good & Gather Vanilla Almond Milk is $1.79 (or 5.5 cents per ounce) at Target.

65.     This amounts to a premium of 1.3 cents per ounce, which equates to 42 cents for the 32-ounce example above:

66. The prices are higher than similar products represented in a non-misleading way, and more than they would be sold for if they were labeled in a truthful and non-misleading way.

## Jurisdiction and Venue

67. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

68. Plaintiff Lauren Biegel is a citizen of New York.

69. Plaintiff Greg Maroney is a citizen of New York.

70. Plaintiff Ryan Cosgrove is a citizen of New York.

71. Plaintiff Clive Rhoden is a citizen of New York.

72. Plaintiff Stephen Bradshaw is a citizen of New York.[2]

73. Defendant Blue Diamond Growers is a California cooperative corporation with a principal place of business in Sacramento, Sacramento County, California and is a citizen of California.

74. "Minimal diversity" exists because at least one plaintiff and defendant are citizens of different states.

75. Sales of the Products exceed $5 million per year, exclusive of interest and costs, and the aggregate amount in controversy exceeds $5 million per year.

76. Venue is proper because Plaintiff Biegel resides in this district and a substantial part of the events or omissions giving rise to the claims occurred here.

77. Venue is further supported because many class members reside in this District.

---

[2] Plaintiffs Farve and Henderson are citizen of California which is not relevant for purposes of diversity.

## Parties

78.     Plaintiff Lauren Biegel is a resident of Campbell Hall, Orange County and a citizen of New York.

79.     Plaintiff Greg Maroney is a resident of Wurtsboro, Sullivan County and a citizen of New York.

80.     Plaintiff Ryan Cosgrove is a resident of Bronx, Bronx County and a citizen of New York.

81.     Plaintiff Clive Rhoden is a resident of Mount Vernon, Westchester County and a citizen of New York.

82.     Plaintiff Stephen Bradshaw is a citizen of Staten Island, Richmond County, and a citizen of New York.

83.     Plaintiff Angela Farve is a resident of San Francisco, San Francisco County, and a citizen of California.

84.     Plaintiff Christina Henderson is a resident of Hayward, Alameda County, and a citizen of California.

85.     Defendant Blue Diamond Growers is a California cooperative corporation with a principal place of business in Sacramento, California, Sacramento County.

86.     Plaintiff Lauren Biegel purchased the Vanilla Almondmilk Yogurt multiple times, including but not limited to on or around June 17, 2019, September 6, 2019, September 30, 2019 and January 24, 2020, at stores including Walmart, 470 NY-211 E, Middletown, NY 10940.

87.     Plaintiff Greg Maroney purchased the Vanilla Almondmilk Yogurt on more than one occasion between March 2019 and March 2020, at stores including Hannaford Supermarket, 30 Tower Dr, Middletown, NY 10941.

88.     Plaintiff Ryan Cosgrove purchased the Vanilla Almondmilk at Stop & Shop

Supermarket, 5716 Broadway, Bronx, New York 10463, on multiple occasions in the summer of 2019.

89. Plaintiff Clive Rhoden purchased the Vanilla Almondmilk at locations including Stop & Shop Supermarket, 240 E Sandford Blvd, Mt Vernon, NY 10550 and Foodtown of Mount Vernon 31 E Prospect Ave, Mt Vernon, NY 10550, in September 2019.

90. Plaintiff Stephen Bradshaw purchased the Vanilla Almondmilk Coconutmilk Blend on numerous occasions during 2019, including several times during the spring and summer of 2019, at stores including ShopRite, 985 Richmond Ave, Staten Island, NY 10314.[3]

91. Plaintiff Angela Farve purchased the Vanilla Almondmilk at locations including Safeway, 699 Lewelling Blvd, San Leandro, CA 94579 in March 2019 and during 2019 and 2020.

92. Plaintiff Christina Henderson purchased the Vanilla Almondmilk on numerous occasions, at locations including Walmart, 15555 Hesperian Blvd, San Leandro, CA 94579, on or around March 18, 2020.

93. Plaintiffs bought the Products at or exceeding the above-referenced prices because they relied upon the front label representations regarding the vanilla flavoring, and expected a non-negligible amount of extracts from vanilla beans, because they expected that if the Products contained synthetic flavor ingredients, the Products would truthfully disclose this on the front label with statements they were "Artificially Flavored."

94. Plaintiffs Biegel and Maroney did not just rely on the word "Vanilla" but relied on the pictures of the vanilla beans and vanilla flowers.

95. These images conveyed to Plaintiffs Biegel and Maroney that the Vanilla Almondmilk Yogurt would contain a non-negligible amount of extracts from vanilla beans.

---

[3] Plaintiffs Biegel, Maroney, Bradshaw, Cosgrove and Rhoden are referred to as the "New York Plaintiffs." Plaintiffs Farve and Henderson are referred to as the "California Plaintiffs."

96. The ingredient list for the Vanilla Almondmilk Yogurt even promised "Vanilla Extract," but the amount of this ingredient was *de minimis*.

97. The vanilla taste in the Vanilla Almondmilk Yogurt was mainly provided by synthetic vanillin.

98. Plaintiffs were deceived by and relied upon the Products' deceptive labeling.

99. Plaintiffs would not have purchased the Products in the absence of Defendant's misrepresentations and omissions.

100. The Products were worth less than what Plaintiffs paid for them and they would not have paid as much absent Defendant's false and misleading statements and omissions.

101. Competitor vanilla almondmilk-based products cost substantially less than defendant's similar products.

## Class Allegations

102. The class consists of a nationwide class of all consumers in the United States, including states and territories, who purchased (1) Vanilla Almondmilk; (2) Vanilla Almondmilk Coconutmilk Blend and (3) Vanilla Almondmilk Yogurt under the Almond Breeze brand from April 15, 2015 to the present. ("Nationwide Class").

103. Common questions of law or fact predominate and include whether Defendant's representations were and are misleading and if Plaintiffs and class members are entitled to damages.

104. Plaintiffs' claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

105. Plaintiffs are adequate representative because their interests do not conflict with other members.

106. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

107. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

108. Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

109. Plaintiffs seek class-wide injunctive relief because the practices continue.

## COUNT I
### Violation Of California's Unfair Competition Law,
### California Business & Professions Code §§ 17200, et seq.
### (On Behalf of the Nationwide Class)

110. Plaintiffs incorporate by reference all preceding paragraphs.

111. Defendant's practices were unlawful and fraudulent under the UCL because they violated, inter alia, 21 U.S.C. 343(a), 21 U.S.C. 343(g), of the FDCA, California Health & Safety Code § 110670, the CLRA, the FAL and other applicable law.

112. Defendant's business practices were unfair because they are substantially injurious to consumers, offends public policy, and is detrimental to the public.

113. Defendant's advertising is of no benefit to consumers, and is inconsistent with FDA recommendations, regulations and advisories with respect to the challenged statements and designations.

114. Plaintiffs and Class believed the statements with respect to the ingredients on the front labels were accurate and lawful when this was not true and was misleading.

115. Plaintiffs and the Class lost money or property because they would not have purchased the Products without Defendant's representations and paid more for the Products.

**COUNT II**
**Violation Of California's False Advertising Law,**
**California Business & Professions Code §§ 17500, et seq.**
**(On Behalf of the Nationwide Class)**

116. Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs.

117. California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq., makes it unlawful to disseminate statements which are untrue and/or misleading and which a party could determine to be same, through the exercise of reasonable care.

118. Defendant engaged in a scheme of offering misbranded units of the Products for sale to Plaintiffs and the Class members by way of product packaging, labeling, and other promotional materials.

119. These materials misrepresented and/or omitted the true content and nature of the misbranded Products.

120. Defendant's advertisements and inducements were made in and originated from California and are advertising as contained in Bus. & Prof. Code § 17500, et seq. because the packaging, labeling, and promotional statements were intended as inducements for purchase.

121. The Products, and the statements appearing on them, were disseminated by Defendant to Plaintiffs and Class members. Defendant knew that these statements were unauthorized, inaccurate, and misleading.

122. Defendant violated § 17500, et seq. by misleading Plaintiffs and the Class to believe that the ingredient designations were truthful and consistent with the legal requirements for such representations.

123. Defendant knew or should have known, through reasonable care that the Products were and continues to be misbranded, and that their representations about the ingredients were

inconsistent with law, inaccurate, and misleading.

124. Plaintiffs and the Class lost money or property because they would not have purchased the Products without Defendant's representations and paid more for the Products than they otherwise would have.

## COUNT III
### Violation Of California's Consumers Legal Remedies Act,
### California Civil Code §§ 1750, et seq.
### (On Behalf of the Nationwide Class)

125. Plaintiffs incorporate the allegations contained in all preceding paragraphs.

126. Plaintiffs and Class members are consumers who purchased the Products for personal, family or household purposes. Cal. Civ. Code § 1761(d).

127. Defendant's actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

128. The Products' front labels are not qualified with respect to the ingredients and/or components prominently promoted and rendered false and misleading due to the presence or absence of same.

129. Defendant's conduct violated and continues to violate CLRA § 1770(a)(5) of the because its representations are unfair in that it misrepresents the characteristics, attributes and qualities of the Products.

130. Defendant's conduct is prohibited by Cal. Civ. Code §§ 1770(a)(7), 1770(a)(9), because it advertises the Products' ingredients in a manner that is consistent with the truth.

131. On October 28, 2020, Plaintiff Angela Farve, via her counsel, sent a Consumer Legal Remedies Notice via certified mail, return receipt requested, pursuant to Cal. Civ. Code § 1782, to Defendant's registered agent within the state of California and Defendant's headquarters.

132. Defendant received both CLRA Notices on November 2, 2020.

133. The CLRA Notices provided Defendant notice of the misconduct – including undisclosed artificial flavors and a negligible amount of vanilla – and requested that Defendant cure its misconduct pursuant to Cal. Civ. Code. § 1782 within 30 days.

134. Defendant failed to do so.

135. Plaintiffs and the Class lost money or property because they would not have purchased the Products without Defendant's representations, or they paid more for the Products than they otherwise would have.

136. Plaintiffs seek damages, restitution, and injunctive relief for these violations.

**COUNT IV**
**Negligent Misrepresentation**
**(On Behalf of the Nationwide Class)**

137. Plaintiffs incorporate by reference all preceding paragraphs.

138. Defendant misrepresented the ingredients of the Products on the front of the labels of its Product.

139. Defendant had a duty to disclose and/or provide non-deceptive labeling of the Products and knew or should have known same were false or misleading.

140. This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or service type.

141. The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in Defendant, a well-known and respected brand in this sector.

142. Plaintiffs and other Class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

143.   Plaintiffs and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

**COUNT V**
**Unjust Enrichment**
**(On Behalf of the Nationwide Class)**

144.   Plaintiffs incorporate by references all preceding paragraphs.

145.   Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiffs demand a jury trial on all issues.

   **WHEREFORE**, Plaintiffs pray for judgment:

1.   Declaring this a proper class action, certifying Plaintiffs as representatives of the national class, New York Plaintiffs as representatives of the New York subclass, and the undersigned attorneys as counsel for the national and New York subclass.

2.   Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3.   Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4.   Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5.   Awarding costs and expenses, including reasonable fees for Plaintiffs' attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   April 19, 2021

                          Respectfully submitted,

                          Sheehan & Associates, P.C.
                          /s/Spencer Sheehan
                          Spencer Sheehan
                          Christopher Patalano
                          60 Cuttermill Rd Ste 409
                          Great Neck NY 11021-3104
                          Tel: (516) 268-7080
                          Fax: (516) 234-7800
                          spencer@spencersheehan.com
                          cpatalano@spencersheehan.com

                          Shub Law Firm LLC
                          Jonathan Shub
                          Kevin Laukaitis
                          134 Kings Highway E Fl 2
                          Haddonfield, NJ 08033
                          Tel: (856) 772-7200
                          jshub@shublawyers.com
                          klaukaitis@shublawyers.com

                          Reese LLP
                          Michael R. Reese
                          100 W 93rd St Fl 16
                          New York NY 10025-7524
                          Telephone: (212) 643-0500
                          Fax: (212) 253-4272
                          *mreese@reesellp.com*