**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Lauren Biegel, Greg Maroney, Ryan Cosgrove, Clive Rhoden, Stephen Bradshaw, Angela Farve and Christina Henderson, individually and on behalf of all others similarly situated,<br><br>                     Plaintiffs,<br><br>        - against -<br><br>Blue Diamond Growers,<br><br>                Defendant | 7:20-cv-03032-CS |

**DECLARATION IN SUPPORT OF MOTION FOR PRELIMINARY**
**APPROVAL OF SETTLEMENT AND CERTIFICATION OF**
**SETTLEMENT CLASS AND APPROVAL OF NOTICE PLAN**

Pursuant to 28 U.S.C. § 1746, the undersigned declares as follows:

1.    I am an attorney with Sheehan & Associates, P.C., and together with Shub Law Firm LLC and Reese LLP, co-counsel for Plaintiffs in this action.

2.    I am a member in good standing of the bar of New York, as well as the bars of numerous federal courts, including, but not limited to, the U.S. District Courts for the Southern, Eastern, Western and Northern Districts of New York; the Eastern and Western Districts of Wisconsin; the District of Colorado; the Northern District of Indiana; and, the Southern and Northern Districts of Illinois, and Court of Appeals for the Second Circuit.

3.    I submit this declaration in support of Plaintiffs' Motion for Preliminary Approval of Settlement, Preliminary Certification of Settlement Class, and Approval of Notice Plan.

4.    The facts in this declaration are based upon my personal knowledge and I would competently testify to them if called to do so.

## I.  INTRODUCTION

5.     Sheehan & Associates, P.C., Shub Law Firm LLC and Reese LLP ("Plaintiffs' Counsel") are the attorneys representing Plaintiffs Lauren Biegel, Greg Maroney, Ryan Cosgrove, Clive Rhoden, Stephen Bradshaw, Angela Farve and Christina Henderson ("Plaintiffs") in this action.[1]

6.     Plaintiffs' Counsel has been responsible for prosecution of the Action and for the negotiation of the Settlement Agreement.

7.     We have vigorously represented the interests of the Settlement Class Members throughout the course of the litigation and settlement negotiations.

## II.  COMMENCEMENT OF ACTIONS, NEGOTIATIONS, AND SETTLEMENT

8.     Plaintiffs' Counsel has performed extensive work identifying and investigating potential claims, drafting and filing the complaint and subsequent amended complaints.

9.     Plaintiffs' Counsel continued to analyze Plaintiffs' claims throughout the pendency of the case.

10.     Plaintiffs allege defendant Blue Diamond Growers ("Defendant") falsely and deceptively labels certain of its almondmilk-based dairy alternative products regarding the presence, or lack thereof, of vanilla flavoring and ingredients.

11.     My office, with Shub Law Firm LLC and Reese LLP, filed various actions against defendant asserting that the representations on its vanilla almondmilk, vanilla almondmilk coconutmilk blend and vanilla almondmilk yogurt, were false, deceptive and mileading.

12.     On April 15, 2020, my office filed this complaint.

---

[1] Plaintiffs filed a second amended complaint to add plaintiffs Ryan Cosgrove, Clive Rhoden, Stephen Bradshaw, Angela Farve and Christina Henderson, who are parties to other actions regarding similar Blue Diamond products. *See* ECF No. 46.

13.    On October 28, 2020, Shub Law Firm LLC and my office filed the action Angela Farve, individually and on behalf of all others similarly situated, v. Blue Diamond Growers, Northern District of California, 3:20-cv-07570-JSW.

14.    On October 25, 2020, my office filed the action Stephen Bradshaw, individually and on behalf of all others similarly situated, v. Blue Diamond Growers, Eastern District of New York, 1:20-cv-05125-ENV-LB.

15.    In late December 2020, counsel for the parties commenced negotiations to resolve the above-referenced actions.

16.    The parties engaged in discovery of sales data regarding the sales of defendant's vanilla almondmilk, vanilla almondmilk coconutmilk blend and vanilla almondmilk yogurt.

17.    The parties participated in meaningful, arms-length negotiations before mediator Randall W. Wulff, with Wulff Quinby Sochynsky.

18.    The outcome of the mediation was an agreement in principle to settle the case and, ultimately, the finalized Settlement Agreement, attached as Exhibit 1.

## III. SETTLEMENT AGREEMENT AND RECOGNITION OF THE DIFFICULTIES ASSOCIATED WITH LITIGATION

19.    In early April 2021, the parties entered into a Settlement Agreement regarding a proposed nationwide settlement.

20.    Before entering into the Settlement Agreement, Class Counsel evaluated the relevant law, facts, and allegations to assess the merits of the claims, potential claims, and potential defenses asserted in the Action.

21.    Based on this assessment, Plaintiffs believe they could obtain class certification, defeat any dispositive motions Defendant may file, and proceed to a trial on the merits.

22.     Plaintiffs and Class Counsel recognize, however, the costs and risks involved, including the expense and length of continued proceedings necessary to prosecute the claims through trial and any appeals and the uncertainty of the ultimate outcome of the case.

23.     Litigation to date has been costly and complicated; certainly, further litigation would be yet more costly, complex, and time-consuming.

24.     Such litigation would include contested class certification (and possibly decertification) proceedings and appeals, including competing expert testimony and contested Daubert motions; costly nationwide discovery, including depositions, interrogatories, and requests for admission, and document production; costly merits and class expert reports; and trial.

25.     Each step would likely be subject to Defendant's vigorous opposition and appeal.

26.     Even if the case were to proceed to judgment on the merits, any final judgment would likely be appealed, which would take significant time and resources.

27.     These litigation efforts would be costly to all Parties and would require significant judicial oversight.

28.     Class Counsel took into account these factors, as well as the difficulties and delays inherent in complex class action litigation, when negotiating and evaluating the Settlement and entering into the Settlement Agreement.

29.     Additionally, in the process of investigating and litigating the Action, Class Counsel conducted significant research on the consumer protection statutes at issue, as well as the overall legal landscape, to determine the likelihood of success and reasonable parameters under which courts have approved settlements in comparable cases.

30.     In light of the foregoing, Class Counsel believes the Settlement confers substantial benefits upon the Settlement Class Members.

31.    Class Counsel has evaluated the Settlement and determined it is fair, reasonable, and adequate to resolve Plaintiffs' grievances and is in the best interest of the Settlement Class.

32.    Defendant has denied, and continues to deny, that its marketing, advertising, and/or labeling of the Almond Breeze vanilla almondmilk, vanilla almondmilk coconutmilk blend and vanilla almondmilk yogurt, is false, deceptive, or misleading to consumers or violates any legal requirement.

33.    Furthermore, Defendant has stated that but for the Settlement, it would vigorously oppose class certification.

## IV. CLASS COUNSEL AND PLAINTIFFS HAVE INVESTED SIGNIFICANT TIME IN THE PROSECUTION OF THE ACTION AND ARE ADEQUATE REPRESENTATIVES OF THE CLASS

34.    Class Counsel has devoted significant time and resources to the investigation, development, and resolution of the Action.

35.    Each Plaintiff performed an important and valuable service for the benefit of the Settlement Class.

36.    Each met, conferred, and corresponded with Class Counsel as needed for the efficient process of the litigation.

37.    Each Plaintiff has participated in interviews with Class Counsel, provided relevant personal information, and remained intimately involved in the mediation and litigation processes.

38.    Each Plaintiff actively participated in discussions with Class Counsel related to the Settlement.

39.    Class Counsel has substantial experience with consumer class actions in general and with consumer fraud and false advertising, specifically, and they have substantial experience negotiating class settlements.

40.     Class Counsel are not representing clients with interests at odds with the interests of the Settlement Class Members.

41.     Sheehan & Associates, P.C., has been appointed as class counsel for the prosecution of class actions in the following cases:

   a.   *Cicciarella v. Califia Farms, LLC*, 7:19-cv-08785-CS, U.S. District Court, Southern District of New York (with co-counsel Reese LLP and Aegis Law Firm, P.C.); and

   b.   *Liberski, et al v. Rhapsody International Inc*., No. CGC-12- 517061, San Francisco County, California Superior Court (with Bramson, Plutzik, Mahler & Birkhaeuser, LLP).

42.     Attached hereto as Exhibit 2 is the resume of Sheehan & Associates, P.C.

43.     Attached hereto as Exhibit 3 is the resume of Reese LLP.

44.     Attached hereto as Exhibit 4 is the resume of Shub Law Firm, LLC.

45.     Apart from the Settlement Agreement, there are no additional agreements between the Partis or with others made in connection with the Settlement.

46.     I declare under penalty of perjury that the foregoing is true and correct.


Executed on Monday, April 19, 2021 at Great Neck, New York.

                                                           */s/Spencer Sheehan*
                                                           Spencer Sheehan

# EXHIBIT 1

**Execution Copy**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LAUREN BIEGEL and GREG MARONEY,
on behalf of themselves and all others
similarly situated,

               Plaintiffs,

              -against-

BLUE DIAMOND GROWERS,

               Defendant.

Case No. 7:20-cv-03032-CS

## SETTLEMENT AGREEMENT

Subject to the approval of the Court and pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Class Action Settlement Agreement and Release, including the attached Exhibits ("Settlement Agreement"), is entered into between Plaintiffs Lauren Biegel ("Biegel"), Greg Maroney ("Maroney"), Stephen Bradshaw ("Bradshaw"), Angela Farve ("Farve"), Ryan Cosgrove ("Cosgrove"), Clive Rhoden ("Rhoden"), and Christina Henderson ("Henderson") (collectively, the "Plaintiffs"), on behalf of themselves and on behalf of those similarly situated, hereinafter the Settlement Class Members, and Defendant Blue Diamond Growers ("BDG" or the "Company"). Plaintiffs and BDG are collectively referred to as "the Parties."

## I. RECITALS

1.1    WHEREAS, on April 15, 2020, Plaintiff Biegel filed a putative class action complaint in the United States District Court for the Southern District of New York, *Biegel v. Blue Diamond Growers*, Case No. 7:20-cv-03032-CS (the "Complaint"), against BDG on behalf of herself and all others similarly situated. Plaintiff Biegel alleged claims for: (1) violations of the New York General Business Law ("GBL") §§ 349 & 350; (2) negligent representation; (3) breach of express warranty; (4) breach of implied warranty of merchantability; (5) breach of the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301 *et. seq* ("MMWA"); (6) fraud; and (7) unjust enrichment, based on her allegation that the front label statement "vanilla with other natural

1

flavors" on BDG's Almond Breeze almondmilk yogurt alternative product (the "Yogurt Alternative") was allegedly misleading.

1.2     WHEREAS, on November 20, 2020, Plaintiff Biegel filed an amended complaint in the United States District Court for the Southern District of New York (the "Amended Complaint") asserting the same causes of action and adding Plaintiff Maroney as an additional named plaintiff.

1.3     WHEREAS, Plaintiffs Biegel and Maroney will file a Second Amended Complaint in the United States District Court for the Southern District of New York (the "Second Amended Complaint") asserting the same causes of action and expanding the class definition to assert a nationwide class in accordance with the terms set forth in this Settlement Agreement.

1.4     WHEREAS plaintiffs' counsel Sheehan & Associates, PC, Shub Law Firm LLC and Reese LLP ("Class Counsel") are experienced food consumer class action counsel.  Plaintiffs' counsel have investigated and assessed all Labeling Claims, including through informal discovery.

1.5     WHEREAS, BDG has denied all claims asserted in the Litigation and further denies that anyone, including putative Class members, has suffered damage or harm as a direct and proximate result of the alleged mislabeling set forth in the Litigation.

1.6     WHEREAS, BDG further denies that its products, including but not limited to, its almondmilk, almondmilk coconutmilk blend, or almondmilk yogurt products, were mislabeled or falsely marketed in any respect including without limitation those certain Products specifically identified in the Litigation.

1.7     WHEREAS, BDG desires to resolve all outstanding and purported Labeling Claims relating to BDG Products, including without limitation the labeling claims asserted in the Litigation.

1.8     WHEREAS, the Parties have engaged in extensive arm's length, good-faith negotiations in an effort to reach an amicable resolution of the Labeling Claims in the Litigation and identified herein.  Such negotiations culminated in an all-day in-person mediation conducted by Randall W. Wulff on February 1, 2021, where, at the conclusion of the mediation, the basic terms of this settlement were achieved subject to appropriate authorization and final documentation.

1.9     WHEREAS, the mediation resulted in the Parties' agreement to settle the Labeling Claims pursuant to the terms set forth in this Settlement Agreement. The Parties and their respective counsel believe that the Settlement Agreement provides meaningful benefits to the Settlement Class, which is fair, reasonable, and adequate, and is in the best interests of the Parties, including Plaintiffs and the Settlement Class Members.

1.10     WHEREAS, BDG denies all of the allegations in the Litigation and all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged against it, in the Litigation.  BDG also denies that the Litigation meets the requirements for certification as a class action, except for purposes of settlement, or that the evidence supports a finding of liability or monetary or equitable relief to Plaintiffs, any additional putative class representative, or any member of the Settlement Class, with respect to any of the Labeling Claims or other allegations in the Litigation or Amended Complaint.

1.11     WHEREAS, the undersigned Parties agree, subject to approval by the Court, that the Litigation between the Parties shall be fully and finally compromised, settled and released on the terms and conditions set forth in this Agreement.

1.12     WHEREAS, Plaintiffs' Counsel has analyzed and evaluated the merits of all Parties' contentions and this settlement as it affects all Parties and the Settlement Class Members. Among the risks and uncertainties of the Litigation are the possibility that Plaintiffs will be unable to prove liability or damages (individually or on a class wide basis) at trial on a class wide or individual basis.  Plaintiffs and their Counsel, after taking into account the foregoing, along with

3

the risks, uncertainties and costs of further prosecution of the Litigation, are satisfied that the terms and conditions of this Agreement are fair, reasonable, adequate, and equitable, and that a settlement and the prompt provision of meaningful benefits to the Settlement Class are in the best interests of the Settlement Class Members.

1.13    WHEREAS, Plaintiffs have conducted informal discovery on BDG in the Litigation relating to sales of BDG Products and have been provided with information and documents.

1.14    WHEREAS, BDG, while continuing to deny all allegations of, and disclaiming any liability with respect to any and all Labeling Claims asserted in the Litigation, desires to resolve the Labeling Claims on the terms stated herein, in order to avoid further expense, inconvenience, and interference with ongoing business operations, and to dispose of burdensome litigation. Therefore, BDG has determined that settlement of the Litigation on the terms set forth herein is in its best interests.

1.15    WHEREAS, BDG denies that the Litigation meets the standards for certification of the Settlement Class. BDG hereby consents, solely for the purposes of the settlement set forth herein, to the certification of the Settlement Class and appointment of Plaintiffs' Counsel as counsel for the Settlement Class and Plaintiffs as representatives of the Settlement Class; provided, however, that if this Agreement fails to receive Court approval or the Effective Date (defined below) does not occur, then BDG retains all rights it had immediately preceding the execution of this Agreement, and the Litigation will continue as if the Settlement Class had never been certified and Plaintiffs had not been appointed representatives of the Settlement Class.  BDG's conditional consent herein to certification of the Settlement Class or information or discovery provided to Plaintiffs' Counsel for purposes of the settlement shall not be used against BDG by any Party or non-party for any purpose in the Litigation or any other litigation, lawsuit, or proceeding of any kind whatsoever.

1.16    WHEREAS, Plaintiffs Bradshaw, Farve, Cosgrove, and Rhoden have brought similar putative class actions alleging similar claims against BDG in federal courts in California and New York regarding the labels on several of BDG's vanilla flavored products, namely, *Bradshaw v. Blue Diamond Growers*, Case No. 1:20-cv-05125-ENV-LB (E.D.N.Y.) ("*Bradshaw* Litigation") (Almond Breeze almondmilk coconutmilk blend); *Farve v. Blue Diamond Growers*, Case No. 4:20-cv-07570-JSW (N.D. Cal.) ("*Farve* Litigation") (Almond Breeze almondmilk); and *Cosgrove et al. v. Blue Diamond Growers*, Case No. 1:19-cv-08993-VM (S.D.N.Y.), 20-04090 (2d. Cir) ("*Cosgrove* Litigation") (Almond Breeze almondmilk).  Plaintiff Henderson sent BDG a similar putative class demand letter issued under the California Consumer Legal Remedies Act alleging similar claims regarding BDG's vanilla Almond Breeze almondmilk ("*Henderson* Demand").  Plaintiffs Bradshaw, Farve, Cosgrove, Rhoden, and Henderson will submit to the jurisdiction of this Court in the Southern District of New York for enforcement of this Agreement. Plaintiffs Bradshaw, Farve, Cosgrove, Rhoden, and Henderson have reviewed this Settlement Agreement and agree that they support this Settlement Agreement because of the substantial relief it provides class members and have signed the Agreement below.  BDG and Plaintiffs Bradshaw and Farve agree to stay the *Bradshaw* Litigation and the *Farve* Litigation pending Final Approval of this Settlement, and, if Final Approval is granted, dismiss the *Bradshaw* Litigation and the *Farve* Litigation with prejudice.  BDG and Plaintiff Henderson agree that Plaintiff Henderson will not file a putative class action against BDG pertaining to the labeling of its vanilla products unless and until either party terminates this Settlement Agreement in accordance with Section 8.3 below.  The Parties intend that this Agreement and settlement will fully and finally resolve all class claims asserted in the *Bradshaw* Litigation, the *Farve* Litigation, the *Cosgrove* Litigation, and the *Henderson* Demand.

1.17    WHEREAS, this Agreement is contingent upon the issuance by the Court of both Preliminary Approval and Final Approval.  Should the Court not issue Preliminary Approval and Final Approval, BDG does not waive, and instead expressly reserves, all rights to defend the

Litigation, the *Bradshaw* Litigation, the *Farve* Litigation, the *Cosgrove* Litigation, and/or the *Henderson* Demand.

1.18    WHEREAS, this Agreement reflects a compromise between the Parties, and shall in no event be construed as or be deemed an admission or concession by any Party of the truth, or lack thereof, of any allegation or the validity, or lack thereof, of any purported claim or defense asserted in any of the pleadings or filings in the Litigation, or of any fault on the part of BDG, and all such allegations are expressly denied.  Nothing in this Agreement shall constitute an admission of liability or be used as evidence of liability, by or against any Party hereto.

NOW, THEREFORE, without (a) any admission or concession on the  part of Plaintiffs about the likelihood of success at trial, on appeal, or in other motions practice, or (b) any admission or concession of the merit of this  Litigation or of liability or wrongdoing or the lack of merit of any defense  whatsoever by BDG, it is hereby stipulated and agreed by the undersigned, on  behalf of Plaintiffs, the Settlement Class and BDG, that this Litigation and all  Claims of the Settlement Class be settled, compromised, and dismissed on the  merits and with prejudice as to BDG, subject to Court approval as required by  Federal Rule of Civil Procedure 23, on the terms and conditions set forth  herein.

The recitals stated above are true and accurate and are hereby made a  part of this Settlement Agreement.

## II.    DEFINITIONS

Capitalized terms in this Agreement shall be defined as follows:

2.1     "Agreement" or "Settlement Agreement" means this Settlement Agreement, including all exhibits hereto.

2.2     "Allegations" means the allegations as asserted in the Litigation and Amended Complaint as set forth in Sections 1.1 and 1.2 above.

2.3     "Attorneys' Fees and Costs" means such funds as may be awarded by the Court to Plaintiffs' Counsel for their work, efforts, and expenditures in connection with the Litigation and settlement, including fees, costs, and expenses of any co-counsel, local counsel, experts, consultants, or other individuals retained by, or who assisted Plaintiffs' Counsel in connection with the Litigation and settlement, as described more particularly in Section V of this Agreement.

2.4     "*Bradshaw* Litigation" means *Bradshaw v. Blue Diamond Growers*, Case No. 1:20-cv-05125-ENV-LB (E.D.N.Y.).

2.5     "Claim" means a claim for Settlement Benefits submitted under Section III of this Agreement.

2.6     "Claim Administrator" means, subject to Court approval, Angeion Group, unless another third-party administrator is later agreed to by the Parties in writing and approved by the Court.

2.7     "Claim Filing Deadline" means ninety (90) days after the hearing date on Final Approval.

2.8     "Claim Form" means a form in substantially the same form as Exhibit B hereto to be used by Class Member to make a Claim under the Settlement.

2.9     "Class Period" means the period of time from April 15, 2014 through Preliminary Approval.

2.10    "Class Representative(s)" means Plaintiffs Lauren Biegel; Greg Maroney; Stephen Bradshaw; Angela Farve; Ryan Cosgrove; Clive Rhoden; and, Christina Henderson.

2.11    "*Cosgrove* Litigation" means *Cosgrove et al. v. Blue Diamond Growers*, Case No. 1:19-cv-08993-VM (S.D.N.Y.), Case No. 20-04090 (2d. Cir).

2.12    "Court" means the United States District Court, Southern District of New York.

2.13    "Defendant" means Blue Diamond Growers.

2.14    "Effective Date" means the later of:  (i) the expiration of the time to appeal the Final Approval with no appeal having been filed; or (ii) if such appeal is filed, (a) the dismissal, abandonment or settlement of the appeal with no material modification to the Final Approval, or (b) the date upon which the Court of Appeal issues its remittitur following an appeal in which the Final Approval is affirmed.

2.15    "*Farve* Litigation" means *Farve v. Blue Diamond Growers*, Case No. 4:20-cv-07570-JSW (N.D. Cal.).

2.16    "Final Approval" means the order and judgment entered by the Court giving approval to the terms of this Settlement Agreement as fair, reasonable, and adequate, certifying a class for settlement purposes, providing for the orderly performance and enforcement of the terms of this Settlement Agreement, discharging the Released Parties of and from all further liability for the Released Claims to the Releasing Parties, and permanently barring and enjoining the Releasing Parties from instituting, filing, commencing, prosecuting, maintaining, continuing to prosecute, directly or indirectly, as an individual or collectively, representatively, derivatively, or in any other capacity of any kind whatsoever, any action in any state court, federal court, or any other tribunal, forum, or proceeding of any kind, against the Released Parties that asserts any Released Claims.

2.17    "*Henderson* Demand" means the June 23, 2020 putative class demand letter issued under the California Consumer Legal Remedies Act sent to BDG by Plaintiff Henderson.

2.18    "Household" means any number of natural persons who currently or during the class period occupied the same dwelling unit.

2.19    "Incentive Award" means any award sought by application to and approval by the Court that is payable to the Class Representatives to compensate them for their efforts in bringing this Litigation and achieving the benefits of this settlement on behalf of the Settlement Class.

2.20    "Labeling Claims" means all outstanding and purported claims, including without limitation the labeling or other claims asserted in the Amended Complaint in the Litigation, the labeling or other claims asserted in the *Bradshaw* Litigation, the labeling or other claims asserted in the *Farve* Litigation, the labeling or other claims asserted in the *Cosgrove* Litigation, and the labeling or other claims asserted in the *Henderson* Demand, relating to any aspect of labeling of BDG Products (as defined in Section 2.34) that were, or could have been, alleged in the Litigation to be false, misleading, or non-compliant with federal or state laws or regulations, including without limitation labeling or other claims regarding labeling of products as "vanilla" or "vanilla with other natural flavors."

2.21    "Long Form Notice" means notice to Settlement Class Members in substantially the same form as Exhibit C1.

2.22    "Litigation" means *Biegel et al. v. Blue Diamond Growers*, Case No. 7:20-cv-03032-CD (S.D.N.Y.).

2.23    "Notice Date" means the day on which the Claim Administrator initiates the Online Notice.

2.24    "Notice Plan" means the Parties and Claim Administrator's plan to provide the Settlement Class with notice of Settlement.

2.25    "Online Notice" means notice to Settlement Class Members in substantially the same form as described herein.

2.26    "Opt-Out and Objection Deadline" means twenty-one (21) days prior to the initially scheduled hearing date on Final Approval.

2.27    "Parties" means Plaintiffs Lauren Biegel, Greg Maroney, Stephen Bradshaw, Angela Farve, Ryan Cosgrove, Clive Rhoden, and Christina Henderson and Defendant Blue Diamond Growers, collectively.

2.28    "Party" means any one of Plaintiffs or Defendant.

2.29    "Person(s)" means any natural person.

2.30    "Plaintiffs" means Lauren Biegel, Greg Maroney, Stephen Bradshaw, Angela Farve, Ryan Cosgrove, Clive Rhoden, and Christina Henderson.

2.31    "Plaintiffs' Counsel" means Sheehan & Associates, P.C.; and Shub Law Firm LLC, and Reese LLP.  "Class Counsel" means the law firms of Sheehan & Associates, P.C. and Shub Law Firm LLC and Reese LLP.

2.32    "Preliminary Approval" means issuance of an order, granting preliminary approval to this Agreement as within the range of possible Final Approval; approving Class Notice to the Settlement Class Members as described in Part V below; and setting a hearing to consider Final Approval of the settlement and any objections thereto.

2.33    "Print Publication Notice" means notice to Settlement Class Members in substantially the same form as Exhibit C2.

2.33    "Product" and/or "Products" means and includes almondmilk, almondmilk blend, and almondmilk yogurt alternative products manufactured and labeled by BDG during the Class Period that include reference to vanilla, including but not limited to, the word "vanilla" or the phrase "vanilla with other natural flavors," on the front pack or in the ingredient statement, including, without limitation, those certain products listed in the Amended Complaint, the pleadings in the *Bradshaw* Litigation, the *Farve* Litigation, and/or the *Cosgrove* Litigation, and in the *Henderson* Demand letter, and in Exhibit A hereto.

2.34    "Proof of Purchase" means a printed contemporaneous point of purchase receipt from a third-party retail source that reasonably establishes the fact and date of the purchase of the Product during the Class Period in the United States.

2.35    "Released Claims" means any and all claims, whether known or unknown, arising from the purchase of BDG products that include reference to Vanilla, including but not limited to the word "vanilla" or the phrase "vanilla with other natural flavors," on the front pack or in the ingredient statement during the Class Period against the Released Parties under federal, state, or any other law or regulation.  For sake of clarity Released Claims do not cover claims, if any, for personal injury.

2.36    "Released Parties" means BDG and each and all of its respective present or former parents, subsidiaries, affiliates, successors and assigns, and each and all of the respective present or former officers, directors, employees, employers, attorneys, accountants, financial advisors, commercial bank landers, insurers, investment bankers, representatives, general and limited partners and partnerships, co-manufacturers, distributors, any trust of which BDG is a settlor, trustee, or beneficiary, heirs, executors, administrators, successors, affiliates, and assigns of each of them.

2.37    "Releasing Parties" means Plaintiffs Lauren Biegel, Greg Maroney, Stephen Bradshaw, Angela Farve, Ryan Cosgrove, Clive Rhoden, and Christina Henderson, and all Settlement Class Members who have not validly and timely opted out of the Settlement Class, and all their respective spouses, children, executors, representatives, guardians, wards, heirs, estates, successors, bankruptcy estates, bankruptcy trustees, predecessors, agents, and assigns, and all those who claim through them or who assert or could assert claims on their behalf.

2.38    "Settlement" means the settlement embodied in this Agreement.

2.39    "Settlement Benefit(s)" means the benefits provided to Settlement Class Members as set forth in Sections 3.4 through 3.6 of this Agreement.

2.40    "Settlement Class," "Settlement Class Members," "Class" or "Class Members" means all consumers in the United States who purchased the Products during the Class Period. Excluded from this definition are the Released Parties, any government entities, persons who made

such purchase for the purpose of resale, persons who made a valid, timely request for exclusion, and Hon. Cathy Seibel and Randall W. Wulff, and any members of their immediate family.

      2.41    "Settlement Website" means an internet website created and maintained by the Claim Administrator, the URL of which shall be specified in the Notice Plan.

      2.42    "Termination Date" means the date that the Agreement is terminated as set forth in Section 8.3.

      2.43    "Valid Claim" means a claim submitted in compliance with Section III of this Agreement and determined to be valid by the Claim Administrator, and as further described in that Section.

## III.   SETTLEMENT BENEFITS AND CLAIMS ADMINISTRATION

3.1     Subject to the rights and limitations set forth in this Agreement, every Settlement Class Member shall have the right to submit a Claim for Settlement Benefits.  A Claim shall be a Valid Claim only if submitted on the Claim Form pursuant to, and in compliance with, the procedures set forth in this Section III.   Submission of a Claim, regardless of whether it is determined to be a Valid Claim, shall confer no rights or obligations on any Party, any Settlement Class Member, or any other Person, except as expressly provided herein.

3.2     At the election of the Settlement Class Member, Claim Forms may be submitted in paper via first class mail or online at the Settlement Website.  Claim Forms must be received by the Claim Administrator (not just postmarked) or submitted online no later than the Claim Filing Deadline.  Claim Forms received or submitted online after that date will not be Valid Claims.  For Claim Forms that are submitted online, the Class Member shall have the opportunity to upload Proof of Purchase image files (e.g., jpg, tif, pdf); to preview and confirm information entered in the Claim Form prior to submitting the claim; and to print a page immediately after the Claim Form has been submitted showing the information entered, the names of image files uploaded, and the date and time the Claim Form was received.

3.3     On the Claim Form, the Settlement Class Member, or a Person with authority to sign and bind the Settlement Class Member, must provide and certify the truth and accuracy of the following information under the penalty of perjury, including by signing the Claim Form physically or by e-signature, to be considered a Valid Claim:

(a)     The Settlement Class Member's name and mailing address;

(b)     The Settlement Class Member's email address (unless the Settlement Class Member submits a claim form by mail, in which case an email address is optional);

(c)     That the claimed purchases were direct retail purchases by the claimant;

(d)     That the claimed purchases were not made for purposes of resale, commercial use or for any other purpose; and

13

(e)     For all claimed purchases that are not supported by Proof of Purchase:  the Product name(s), the approximate date(s) of purchase, the approximate price(s), the name of the retail store and the store location of each purchase.

3.4     Subject to the total dollar value cap in Settlement Benefits as provided in Section 3.6, each Settlement Class Member who submits one (1) Valid Claim per household, as determined by the Claim Administrator, shall receive a Settlement Benefit as follows:

(a)     A Settlement Class Member who submits a Valid Claim, with a Proof of Purchase, shall receive cash payment of $1.00 for each Product purchased by the Settlement Class Member, up to a maximum of twenty (20) Products for which a Proof of Purchase is submitted.

(b)     A Settlement Class Member who submits a Valid Claim, without a Proof of Purchase, shall receive a cash payment of $0.50 for each Product purchased by the Settlement Class Member, up to a maximum of ten (10) Products.

(c)     The total cash payment due to the Settlement Class Member shall be provided electronically or in a single check payable to the Settlement Class Member.

3.5     Each Household is limited to and may only submit a single claim.

3.6     The total dollar value of Valid Claims submitted with a Proof of Purchase will be capped at $1,250,000.  If the total dollar value of Valid Claims submitted with a Proof of Purchase exceeds $1,250,000, the Settlement Benefit payable for each Valid Claim shall be reduced on a pro rata basis.  The total dollar value of Valid Claims submitted without a Proof of Purchase will be capped at $750,000.  If the total dollar value of Valid Claims submitted without a Proof of Purchase exceeds $750,000, the Settlement Benefit payable for each Valid Claim shall be reduced on a pro rata basis.

3.7     The Claim Administrator alone is responsible for administering this Agreement. The Claim Administrator shall be responsible for, among other things, providing notice as set forth in the Notice Plan, processing Claim Forms and administering the Settlement Website, exclusion process, and Settlement Benefit claims process described herein (including receiving and

maintaining on behalf of the Court and the Parties any Settlement Class Member correspondence regarding requests for exclusion from the Settlement Class).  The Claim Administrator shall not approve duplicate or multiple claims for the same purchase but shall deem valid only one claimant for that purchase.  The Claim Administrator will use adequate and customary procedures and standards to prevent the payment of fraudulent claims and to pay only Valid Claims.  The Claim Administrator and Parties shall have the right to audit claims, and the Claim Administrator may request additional information from Claimants.  If any fraud is detected or reasonably suspected, the Claim Administrator and Parties can require further information from the Settlement Class Member or deny claims, subject to the supervision of the Parties and ultimate oversight by the Court.

3.8    The determination of validity of claims shall occur within a reasonable time.  The Claim Administrator shall have discretion to reasonably approve or deny all claims.  Plaintiffs' Counsel and Defendant shall have the right to audit claims and to challenge the Claim Administrator's decision by motion to the Court.  Plaintiffs' Counsel's or Defendant's choice not to audit the validity of any one or more Claim Forms shall not constitute or be construed as a waiver or relinquishment of any audit or other rights as to any other Claim Forms, individually or as a group, and similarly shall not be construed as a waiver or relinquishment by such Party as to any of its audit and other rights under this Agreement.  No Person shall have any claim against Plaintiffs, Defendant, Plaintiffs' Counsel, Defendant's counsel or the Claim Administrator based on any determination of a Valid Claim, distributions or awards made in accordance with this Agreement and the Exhibits hereto.  Neither Plaintiffs nor Defendant, nor their respective counsel, shall have any liability whatsoever for any act or omission of the Claim Administrator.

3.9    Within thirty (30) days after the Claim Filing Deadline, the Claim Administrator shall notify by email all Settlement Class Members whose claims are denied the reason(s) for denial, using the email address or physical address (if any) provided by the Settlement Class Member on the Claim Form.  If no email address or physical address is provided by the Settlement

Class Member on the Claim Form, the Administrator shall not have an obligation to provide the Settlement Class Member any notification of the denial of the claim or the reasons for denial.

3.10    Valid Claims shall be paid electronically or by check to the Settlement Class Member and mailed to the address provided on the Claim Form, as updated in the National Change of Address Database, within thirty (30) days after the Effective Date except that, in the event of an appeal from Final Approval that challenges only the award of Attorneys' Fees and Costs and/or the Incentive Award and does not challenge any other aspect of the settlement and does not raise an issue that could result in the reversal of Final Approval or modification of other terms of the settlement, then all Valid Claims shall be paid within sixty (60) days after Final Approval, unless otherwise ordered by the Court.  If the appeal challenges any other aspect of the Settlement, Valid Claims shall be paid sixty (60) days after the Effective Date.

3.11    All settlement payments shall be subject to a ninety (90) day void period, after which the payments shall no longer be negotiable.  If a settlement payment is not negotiated, the Settlement Class Member shall not be entitled to any further payment under this Agreement.  If the check is returned as undeliverable, the Claim Administrator shall send an email to the claimant, if one was provided with the claim, to attempt to obtain a better address, and if obtained, shall mail the check to the new address, but shall have no other obligation to skip-trace or obtain an updated address.  The return or failure to cash checks shall have no effect on a Settlement Class Member's release of claims, obligations, representations, or warranties as provided herein, which shall remain in full effect.

3.12    No deductions for taxes will be taken from any Settlement Benefit at the time of distribution.  Settlement Class Members are responsible for paying all taxes due on such Settlement Benefits.  All Settlement Benefit payments shall be deemed to be paid solely in the year in which such payments are actually issued.  Counsel and the Parties do not purport to provide legal advice on tax matters to each other or Settlement Class Members.  To the extent this Agreement, or any of its exhibits or related materials, is interpreted to contain or constitute advice regarding any U.S.

Federal or any state tax issue, such advice is not intended or written to be used, and cannot be used, by any Person for the purpose of avoiding penalties under the Internal Revenue Code or any state's tax laws.

3.13    Defendant shall be responsible for paying all fees and expenses incurred by the Claim Administrator in administering claims and performing the other tasks set forth in this Section III.

3.14    Defendant shall be responsible for paying all costs of Valid Claims.

## IV.    NOTICE

4.1    The Claim Administrator will facilitate the notice process by assisting the Parties, including by providing notice of this settlement to the appropriate federal and state officials in the United States, as provided by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA Notice").   The Claim Administrator shall serve notice of the Agreement that meets the requirements of 28 U.S.C. § 1715, on the appropriate federal and state officials no later than ten (10) days after the filing of the Motion for Preliminary Approval.   The Claim Administrator will file a certification with the Court stating the date or dates on which the CAFA Notice was sent. Defendant will provide Class Counsel with any substantive responses received in response to any CAFA Notice.

4.2    Notice to Settlement Class Members shall conform to all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clauses), and any other applicable law, and shall otherwise be in the manner and form agreed upon by the Parties and approved by the Court.

4.3    Prior to the Notice Date, the Claim Administrator shall establish the Settlement Website, which shall contain the Long Form Notice in both downloadable PDF format and HTML format with a clickable table of contents; answers to frequently asked questions; a Contact Information page that includes the address for the Claim Administrator and addresses and telephone numbers for Plaintiffs' Counsel and Defendant's Counsel; the Agreement; the signed

order of Preliminary Approval; a downloadable and online version of the Claim Form; a downloadable and online version of the form by which Settlement Class Members may exclude themselves from the Settlement Class; and (when they become available) the motion for final approval and Plaintiffs' application(s) for Attorneys' Fees, Costs and an Incentive Award. The Settlement Website may not include any of BDG's logos or trademarks. BDG will not display ads or otherwise make reference to this Settlement on any of its or its affiliates' websites.

4.4     The Claim Administrator will terminate the Settlement Website forty-five (45) dates after either (1) the Effective Date, or (2) the date on which the settlement is terminated or otherwise not approved by a court. The Claim Administrator will then promptly transfer ownership of the URL to BDG.

4.5     A black and white version of the Print Publication Notice, attached hereto as Exhibit C2, will be published once per week for four consecutive weeks in a newspaper of general circulation in California.

4.6     Additional online notice shall be provided on websites and/or social media platforms chosen by the Claim Administrator and accessible to desktop and mobile users, so that overall notice of the Settlement (including the Online Notice and Print Publication Notice) is reasonably calculated to apprise the Settlement Class Members of the Settlement. Such notice shall begin no later than thirty (30) days after Preliminary Approval. No later than thirty (30) days prior to the hearing on Final Approval, the Claim Administrator shall submit a declaration to the Court under penalty of perjury explaining how the media were chosen and attesting to the number of impressions delivered.

4.7     The Claim Administrator shall establish and maintain a toll-free telephone helpline, available 24 hours per day, where callers may obtain information about the class Litigation.

4.8     Class Counsel and BDG shall supervise the Claim Administrator in the performance of the notice functions set forth in this Section IV.

4.9     At least fourteen (14) days prior to the final approval hearing referenced in Section VI of this Agreement, Defendant and the Claim Administrator shall certify to the Court that it has complied with the notice requirements set forth herein.

4.10    Defendant shall be responsible for paying all costs of notice as set forth in this Section IV and all costs of the Claim Administrator in processing objections and exclusion requests as set forth in Sections 6.5 through 6.12.

## V.    ATTORNEYS' FEES, EXPENSES AND CLASS REPRESENTATIVE PAYMENT

5.1    <u>Attorneys' Fees, Costs, and Expenses</u>.  No later than thirty (30) days prior to the initially scheduled hearing on Final Approval, Plaintiffs' Counsel may apply to the Court for an award from Defendant of its Attorneys' Fees and Costs in a total amount not to exceed $550,000. Pursuant to Southern District of New York Local Rule 23.1, the following split of fees and costs are hereby disclosed:  Sheehan & Associates, P.C.: 33.33% (*i.e.* one-third); Shub Law Firm LLC: 33.33% (*i.e* one-third); and Reese LLP: 33.33% (*i.e.* one-third).  The law firms identified submit to the jurisdiction of this Court for the enforcement of this provision of the Agreement and for enforcement of all other provisions of this Agreement.  The fees and costs for Reese LLP shall be wired to the account of Reese LLP. The fees and costs for Sheehan & Associates, P.C. shall be separately wired to the account of Sheehan & Associates, P.C.  The fees and costs for Shub Law Firm LLC shall be separately wired to the account of Shub Law Firm LLC.

5.2    <u>Class Representative Payment</u>.  No later than thirty (30) days prior to the initially scheduled hearing on Final Approval, the Class Representatives may additionally apply to the Court for an Incentive Award from Defendant of $3,571.42 each (for a total of approximately $25,000) as compensation for (a) the time and effort undertaken in and risks of pursuing the Litigation, including the risk of liability for the Parties' costs of suit, and (b) the general release set forth in Section 7.1.

5.3    Defendant agrees not to oppose or to submit any evidence or argument challenging or undermining Plaintiffs' Counsel's application for Attorneys' Fees and Costs or Plaintiffs' application for Incentive Awards as set forth in Sections 5.1 and 5.2.  Defendant shall not be in violation of this term if its attorneys provide the Court with evidence, including evidence of their lodestars, that is specifically requested by the Court; however, no Party shall prompt or encourage such a request.

5.4    The Attorneys' Fees and Costs awarded by the Court as set forth under Section 5.1 shall be the total obligation of Defendant to pay attorneys' fees, costs, and expenses of any kind to

Plaintiffs' Counsel in connection with the Litigation and this settlement.  In no event shall Defendant be obligated to pay to Plaintiffs' Counsel any amount larger than the amount specified in Section 5.1.

5.5     Any payment of an Incentive Award by the Court as set forth in Section 5.2 shall be the total obligation of Defendant to pay money to Plaintiffs, in connection with the Litigation and this settlement, other than amounts due to any Plaintiffs for a Valid Claim submitted pursuant to Part III of this Agreement.  In no event shall Defendant be obligated to pay to Plaintiffs any amount larger than the amount specified in Section 5.2, other than for a Valid Claim pursuant to Part IV of this Agreement.

5.6     The Court's award of any Attorneys' Fees and Costs shall be separate from its determination of whether to approve this Agreement. In the event the Court approves the Settlement set forth in this Agreement but declines to award fees and costs in the amount requested by Plaintiffs' Counsel, the Settlement will nevertheless be binding on the Parties. Plaintiffs' Counsel and Plaintiffs agree that the denial, downward modification, failure to grant the request for Attorneys' Fees and Costs or an Incentive Award, or the reversal or modification on appeal of any such awards, shall not constitute grounds for modification or termination of the settlement.

5.7     In the event that Plaintiffs' counsel does not seek the full amount of expenses, fees or incentive awards contemplated, such action will not increase the Settlement Benefit to the Settlement Class Members.  Likewise, full payment of Plaintiffs' Counsel fees and expenses will not decrease the amount of the Settlement Benefit.

5.8     Defendant shall be responsible for paying its own attorneys' fees and expenses.

5.9     The Attorneys' Fees and Costs awarded to Plaintiffs' Counsel shall be paid to Plaintiffs' Counsel within thirty (30) days after the Effective Date.

5.10    Within thirty (30) days after the Effective Date, any Court-approved Incentive Award shall be paid by Defendant to Plaintiffs.

## VI.   CLASS SETTLEMENT PROCEDURES

6.1    Class Certification.   The Parties agree that, for settlement purposes only, this Litigation shall be certified as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) with Plaintiffs Maroney, Bradshaw, Farve, Cosgrove, and Rhoden as the Class Representatives and Plaintiffs' counsel as Class Counsel.

6.2    In the event the Settlement is terminated or for any reason the Settlement is not effectuated, the certification of the Class shall be vacated, and the Litigation shall proceed as if the Class had not been certified. BDG's conditional consent herein to certification of the Class shall not be used against BDG by any Party or non-party for any purpose in this Litigation or any other litigation, lawsuit, or proceeding of any kind whatsoever.

6.3    Settlement Approval.   On April 19, 2021, Plaintiffs shall move for an order granting Preliminary Approval to this Agreement as within the range of possible Final Approval; approving Class Notice to the Settlement Class Members as described in Part IV above; and setting a hearing to consider Final Approval of the settlement and any objections thereto.   Defendant shall have no obligation to make separate filings in support of the motion but may do so at its election after the motion has been filed.   Defendant shall appear at the hearing to confirm its agreement with the terms of the settlement as provided herein.   The Parties agree to the form and substance of the Proposed Order of Preliminary Approval, attached hereto as Exhibit D.

6.4    Final Approval Order and Judgment.   No later than thirty (30) days prior to the hearing on Final Approval, or otherwise in accordance with the court's schedule for the Final Approval Hearing, Plaintiffs shall move for entry of an order of Final Approval, granting Final Approval of this Settlement and holding this Agreement to be final, fair, reasonable, adequate, and binding on all Settlement Class Members who have not excluded themselves as provided below, and ordering that the settlement relief be provided as set forth in this Agreement, ordering the releases as set forth in Part VII, below, and entering judgment in this case.   Defendant shall have

no obligation to make separate filings in support of the motion.  Defendant shall appear at the hearing to confirm its agreement with the terms of the Settlement as provided herein.

      6.5    <u>Exclusions and Objections</u>.  The Notice shall advise prospective Settlement Class Members of their rights to forego the benefits of this Settlement and pursue an individual claim; to object to this Settlement individually or through counsel; and, if they object, to appear at the final approval hearing.

      6.6    If any Settlement Class Member wishes to object to the settlement, the Settlement Class Member must submit a written objection to the Claim Administrator.  The written objection may be submitted by mail, express mail, electronic transmission, or personal delivery, but to be timely, it must be *delivered to* the Claim Administrator (not just postmarked or sent) prior to the Opt-Out and Objection Deadline.  Each objection must include:  (i) the case name and number: *Biegel v. Blue Diamond Growers*, Case No. 7:20-cv-03032-CS; (ii) the name, address and telephone number of the objector; (iii) the name, address, and telephone number of all counsel (if any) who represent the objector, including any former or current counsel who may be entitled to compensation for any reason if the objection is successful, and legal and factual support for the right to such compensation; (iv) documents or testimony sufficient to establish membership in the Settlement Class; (v) a detailed statement of any objection asserted, including the grounds therefor; (vi) whether the objector is, and any reasons for, requesting the opportunity to appear and be heard at the final approval hearing; (vii) the identity of all counsel (if any) representing the objector who will appear at the final approval hearing and, if applicable, a list of all persons who will be called to testify in support of the objection; (viii) copies of any papers, briefs, or other documents upon which the objection is based; (ix) a detailed list of any other objections submitted by the Settlement Class Member, or his/her counsel, to any class Litigations submitted in any state or federal court in the United States in the previous five (5) years (or affirmatively stating that no such prior objection has been made); and (x) the objector's signature, in addition to the signature of the objector's attorney (if any).  Failure to include documents or testimony sufficient to establish

membership in the Settlement Class shall be grounds for overruling and/or striking the objection on grounds that the objector lacks standing to make the objection. Failure to include any of the information or documentation set forth in this paragraph also shall be grounds for overruling an objection. The Parties may respond to any objection to the Settlement with appropriate arguments and evidence.

6.7     If any Settlement Class Member wishes to be excluded from (in other words, opt out of) this Settlement, the Settlement Class Member may do so by completing the exclusion form at the Settlement Website; downloading and submitting to the Claim Administrator a completed exclusion form; or submitting a valid request to exclude themselves, as described in the Notice, to the Claim Administrator. Requests to exclude themselves must be delivered (not just postmarked) by the Opt-Out and Objection Deadline or they shall not be valid. A Settlement Class Member who elects to exclude themselves from this Settlement shall not be permitted to object to this Settlement or to intervene. Any Settlement Class Member who does not submit a timely request for exclusion shall be bound by all subsequent proceedings, orders, and the Final Approval in this Litigation relating to this Settlement Agreement, even if he or she has pending, or subsequently initiates, litigation, arbitration, or any other proceeding against BDG relating to the Released Claims.

6.8     The proposed Preliminary Approval order and Long Form Notice will provide that any Settlement Class Member wishing to object or exclude themselves who fails to properly or timely file or serve any of the requested information and/or documents will be precluded from doing so.

6.9     Immediately upon receipt of any objection, the Claim Administrator shall forward the objection and all supporting documentation to counsel for the Parties. At least fourteen (14) days prior to the hearing on Final Approval, Plaintiffs' Counsel shall file all such objections and supporting documentation with the Court along with any response to the objection made by the Parties.

6.10     At least fourteen (14) days prior to the hearing on Final Approval, the Claim Administrator shall prepare a list of the names of the Persons who, pursuant to the Long Form Notice, have excluded themselves from the Settlement Class in a valid and timely manner, and Plaintiffs' Counsel shall file that list with the Court.

6.11     If a Settlement Class Member submits both a Claim Form and an exclusion request, the Claim Form shall take precedence and be considered valid and binding, and the exclusion request shall be deemed to have been sent by mistake and rejected.

6.12     A Settlement Class Member who objects to the settlement may also submit a Claim Form on or before the Claim Filing Deadline, which shall be processed in the same way as all other Claim Forms.  A Settlement Class Member shall not be entitled to an extension to the Claim Filing Deadline merely because the Settlement Class Member has also submitted an objection.

6.13     <u>Effect if Settlement Not Approved or Agreement is Terminated</u>.  This Agreement was entered into only for purposes of settlement.  In the event that Preliminary or Final Approval of this settlement and this Agreement does not occur for any reason, or if Final Approval is reversed on appeal, then no term or condition of this Agreement, or any draft thereof, or discussion, negotiation, documentation, or other part or aspect of the Parties' settlement discussions shall have any effect, nor shall any such matter be admissible in evidence for any purpose in the Litigation, or in any other proceeding, and the Litigation shall continue as if the settlement had not occurred. The Parties agree that all drafts, discussions, negotiations, documentation or other information prepared in relation to this Agreement, and the Parties' settlement discussions, shall be treated as strictly confidential and may not, absent a court order, be disclosed to any Person other than the Parties' counsel, and only for purposes of the Litigation.

**VII.    RELEASES**

7.1     Upon the Effective Date and by operation of the judgment, the Releasing Parties shall have fully, finally, and forever released, relinquished, and discharged against the Released Parties all Released Claims (including, without limitation, any unknown claims), as well as any

claims arising out of, relating to, or in connection with, the defense, settlement or resolution of this Litigation or the Released Claims.

7.2     This release includes a release of any and all rights and benefits under Section 1542 of the California Civil Code (and any and all similar provisions, rights, and benefits conferred by any law), which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

7.3     The Releasing Parties and BDG agree that the above waiver of rights under Section 1542 is an essential term of this Settlement Agreement.  The Releasing Parties acknowledge and understand that they may later discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now believe to be true with respect to the matters released in this Settlement Agreement.  Nevertheless, it is the intention of the Releasing Parties to fully, finally, and forever settle and release the Released Claims with the Released Parties that exist, hereafter may exist, or might have existed.

7.4     <u>No Admission of Liability</u>.  This Agreement reflects, among other things, the compromise and settlement of disputed claims among the Parties hereto, and neither this Agreement nor the releases given herein, nor any consideration therefor, nor any actions taken to carry out this Agreement are intended to be, nor may they be deemed or construed to be, an admission or concession of liability, or the validity of any claim, or defense, or of any point of fact or law (including but not limited to matters respecting class certification) on the part of any Party. Defendant expressly denies the allegations of the Amended Complaint in the Litigation including all Labeling Claims.  Neither this Agreement, nor the fact of settlement, nor the settlement proceedings, nor settlement negotiations, nor any related document, shall be used as an admission of any fault or omission by the Released Parties, or be offered or received in evidence as an admission, concession, presumption, or inference of any wrongdoing by the Released Parties.  The

26

Released Parties may file the Agreement and/or the Final Approval order in any action or proceeding that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

8.6     This Agreement and all negotiations, correspondence and communications leading up to its execution will be deemed to be within the protection of Federal Rule of Evidence 408 and any analogous state or federal rules or principles.

## VIII.   ADDITIONAL PROVISIONS

8.1     <u>Best Efforts</u>.  Subject to the limitations expressed herein, the Parties' counsel shall use their best efforts to cause the Court to give Preliminary Approval to this Agreement and settlement as promptly as practicable, to take all steps contemplated by this Agreement to effectuate the settlement on the stated terms and conditions, to cooperate in addressing any objections, and to obtain Final Approval of this Agreement.  The Parties and Counsel shall not encourage anyone directly or indirectly to opt out or object; nevertheless, action by the Class Representative to object to approval of this Agreement shall not deprive the Class Representative of the right to request the incentive award as set forth in Section 5.2. If the Court requires changes to the Agreement as a prerequisite to Preliminary Approval or Final Approval, the Parties shall negotiate in good faith regarding such changes.

8.2     <u>Changes of Time Periods</u>.   The time periods and/or dates described in this Agreement with respect to the giving of notices and hearings are subject to approval and change by the Court or by the written agreement of Plaintiffs' Counsel and Defendant's Counsel, without notice to Settlement Class Members except that the Claim Administrator shall ensure that such dates are posted on the Settlement Website.

8.3     <u>Termination Rights</u>.  Either Party may unilaterally terminate this Settlement Agreement, declare it null and void, and have no further obligations under this Settlement Agreement, if any of the following conditions subsequent occurs:

27

a. The Parties fail to obtain and maintain preliminary approval of the proposed settlement;

b. Except for changes to the time periods as set forth in Section 8.2 above, and except as set forth in Section 5.6 of this Agreement, the Court alters or amends any of the terms or limitations set forth in this Agreement (including but not limited to the Long Form Notice, the Online Notice and the Claim Form) or if any federal or state authority objects to or requires modifications to the Agreement;

c. The Court refuses to certify the Settlement Class and/or modifies the definition of the class;

d. Any Court orders BDG to pay, in the aggregate, attorneys' fees, costs, and incentive awards in connection with this Litigation in excess of $575,000 - this amount does not include the costs of notice and costs of the Claims Administrator that BDG shall pay separately, or the amounts to be paid by BDG to class members as stated above in Section 3.4-3.5;

e. Any Court requires material changes to the Settlement Consideration as specifically set forth in Section III;

f. The Court fails to enter Final Approval consistent with the provisions in Section 6.4; or

g. The Settlement Agreement is not upheld on appeal, including review by the United States Supreme Court.

8.4   <u>Time for Compliance</u>.  All time periods set forth herein shall be computed in calendar days unless otherwise specified.  If the date for performance of any act required by or under this Agreement falls on a Saturday, Sunday or court holiday, that act may be performed on the next business day with the same effect as if it had been performed on the day or within the period of time specified by or under this Agreement.

8.5     Governing Law.  This Agreement is intended to and shall be governed by the laws of the State of New York, without regard to conflicts of law principles that would require the application of the laws of another jurisdiction.

8.6     Entire Agreement.  The terms and conditions set forth in this Agreement constitute the complete and exclusive statement of the agreement between the Parties hereto relating to the subject matter of this Agreement, superseding all previous negotiations and understandings, and may not be contradicted by evidence of any prior or contemporaneous agreement.  The Parties further intend that this Agreement constitutes the complete and exclusive statement of its terms as between the Parties hereto, and that no extrinsic evidence whatsoever may be introduced in any agency or judicial proceeding, if any, involving this Agreement.  Any amendment or modification of the Agreement must be in writing signed by each of the Parties and their counsel.

8.7     Advice of Counsel.  The determination of the terms of, and the drafting of, this Agreement have been by mutual agreement after negotiation, with consideration by and participation of all Parties hereto and their counsel.

8.8     Binding Agreement.  This Agreement shall be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Parties hereto.

8.9     No Waiver.  The waiver by any Party of any provision or breach of this Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

8.10    No Assignment.  Plaintiffs and Plaintiffs' Counsel represent and warrant that none of Plaintiffs' Claims referred to in this Litigation or this Settlement Agreement have been assigned, encumbered, or in any manner transferred in whole or in part.

8.11    Execution in Counterparts.  This Agreement shall become effective upon its execution by all of the undersigned.  The Parties may execute this Agreement in counterparts and/or by fax or electronic mail, and execution of counterparts shall have the same force and effect as if all Parties had signed the same instrument.

8.12   <u>Captions</u>.  Captions and section numbers herein are inserted merely for the reader's convenience, and in no way define, limit, construe, or otherwise describe the scope or intent of the provisions of this Agreement.

8.13   <u>Extensions of Time</u>.  The Parties reserve the right, by agreement and subject to the Court's approval, to grant any reasonable extension of time that might be needed to carry out any of the provisions of this Agreement.

8.14   <u>Enforcement of this Agreement</u>.  The Court shall retain jurisdiction to enforce, interpret, and implement this Agreement.  All Parties hereto submit to the jurisdiction of the Court for these purposes.

8.15   <u>Severability</u>.  In the event that any provision hereof becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable, or void, this Settlement Agreement shall continue in full force and effect without said provision.

8.16   <u>No Primary Drafter of Settlement Agreement</u>.  The determination of the terms of, and the drafting of, this Settlement Agreement has been by mutual understanding after negotiation, with consideration by and participation of, the Parties hereto and their counsel.

8.17   <u>Variance in Terms</u>.  In the event of any variance between the terms of this Settlement Agreement and any of the Exhibits hereto, the terms of this Settlement Agreement shall control and supersede the Exhibit(s).

8.18   <u>Authorization to Enter Settlement Agreement</u>.  The individual signing this Settlement Agreement on behalf of BDG  represents that he/she is fully authorized by BDG to enter into, and to execute,  this Settlement Agreement on behalf of BDG.  Plaintiffs' Counsel represent that they are fully authorized to conduct settlement negotiations with BDG's  counsel on behalf of Plaintiffs, and to enter into, and to execute, this  Settlement Agreement on behalf of the Settlement Class, subject to Court  approval pursuant to Federal Rule of Civil Procedure 23(e). Plaintiffs enter  into and execute this Settlement Agreement on behalf of themselves, and as

representatives of and on behalf of the Settlement Class, subject to Court approval pursuant to Federal Rule of Civil Procedure 23(e).

8.19    <u>Plaintiffs to be Included in Settlement Class</u>.  Plaintiffs hereby agree not to request to exclude themselves from the Settlement Class.  Any such request shall be void and of no force or effect.

8.20    <u>Notices</u>.  All notices to the Parties or counsel required by this Agreement, shall be made in writing and communicated by mail and fax or email to the following addresses:

If to Plaintiffs or Plaintiffs' Counsel:

> Michael R. Reese, Esq.
> Reese LLP
> 100 West 93rd Street, 16th Floor
> New York, New York 10025
> Telephone:  (212) 643-0500
> Facsimile:  (212) 253-4272
> Email:  mreese@reesellp.com

If to Defendant or Defendant's Counsel:

> Stefanie J. Fogel, Esq.
> DLA Piper LLP (US)
> 33 Arch Street
> 26th Floor
> Boston, Massachusetts 02110-1447
> Telephone:  (617) 406-6053
> Facsimile:  (215) 606-3364
> Email: stefanie.fogel@dlapiper.com

8.21    <u>Confidentiality and Non-Disparagement</u>.  The Parties and their counsel agree that they shall not cause any aspect of the Litigation or the terms of this Settlement not available in the public record to be reported to the public, the media, news reporting services.  The Parties agree not to participate or encourage any publication of the Settlement in class action settlement reporting and aggregation websites. Any statement to the public, the media, or news reporting services shall be limited to what is available in the public record. Neither Plaintiffs nor Defendant shall disparage the other.

8.22    Protective Orders.   All orders and designations regarding the confidentiality of documents and information ("Protective Orders") remain in effect, and all Parties and counsel remain bound to comply with the Protective Orders, including the provision to certify the destruction of "Confidential" documents.

8.18    Dismissal of the *Farve* Litigation.   BDG and Plaintiff Farve will within no less than two (2) days of the Effective Date, submit a stipulation and proposed Order in the United States District Court for the Northern District of California that will dismiss *Farve* with prejudice.

8.19    Dismissal of the *Bradshaw* Litigation.   BDG and Plaintiff Bradshaw will within no less than two (2) days of the Effective Date submit a stipulation and proposed Order in the United States District Court for the Eastern District of New York that will dismiss Bradshaw with prejudice.

IN WITNESS HEREOF the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on the last date it is executed by all of the undersigned.

**APPROVED AND AGREED:**

April 19, 2021 | 8:11:00 AM PDT

DATED:  April ___, 2021

**REESE LLP**

_____
Michael R. Reese
*Class Counsel and Plaintiffs' Counsel*

April 19, 2021 | 6:16:17 PM EDT

DATED:  April ___, 2021

**SHEEHAN & ASSOCIATES, P.C.**

_____
Spencer  Sheehan
*Class Counsel and Plaintiffs' Counsel*

April 19, 2021 | 10:26:00 AM EDT

DATED:  April ___, 2021

**SHUB LAW FIRM, LLC**

_____
Kevin Laukaitis
*Class Counsel and Plaintiffs' Counsel*

DATED: April ___, 2021

**DLA PIPER LLP (US)**

_____
Stefanie J. Fogel
*Counsel for Defendant*

April 19, 2021 | 9:13:39 AM PDT

DATED:  April ___, 2021

_____
Lauren Biegel
*Plaintiff*

**Execution Copy**

**APPROVED AND AGREED:**

DATED:  April ___, 2021                    **REESE LLP**


                                                  _____
                                                  Michael R. Reese
                                                  *Class Counsel and Plaintiffs' Counsel*

DATED:  April ___, 2021                    **SHEEHAN & ASSOCIATES, P.C.**


    _____
    Spencer  Sheehan
    *Class Counsel and Plaintiffs' Counsel*

DATED:  April ___, 2021                    **SHUB LAW FIRM, LLC**


    _____
    Kevin Laukaitis
    *Class Counsel and Plaintiffs' Counsel*

DATED: April 19, 2021                      **DLA PIPER LLP (US)**


    _____
    Stefanie J. Fogel
    *Counsel for Defendant*

DATED:  April ___, 2021


    _____
    Lauren Biegel
    *Plaintiff*

**Execution Copy**

## APPROVED AND AGREED (CONTINUED):

           April 19, 2021 | 10:58:31 AM EDT

DATED: April __, 2021

Greg Maroney
*Plaintiff and Class Representative*

           April 19, 2021 | 7:24:36 AM PDT

DATED: April __, 2021

Stephen Bradshaw
*Plaintiff and Class Representative*

           April 19, 2021 | 10:27:51 AM EDT

DATED: April __, 2021

Angela Farve
*Plaintiff and Class Representative*

           April 19, 2021 | 1:44:48 PM EDT

DATED: April __, 2021

Ryan Cosgrove
*Plaintiff and Class Representative*

           April 19, 2021 | 5:29:32 PM EDT

DATED: April __, 2021

Clive Rhoden
*Plaintiff and Class Representative*

           April 19, 2021 | 11:41:09 AM EDT

DATED: April __, 2021

Christina Henderson
*Plaintiff*

34

Execution Copy

**APPROVED AND AGREED (CONTINUED):**

DATED:  April _19_, 2021

**DEFENDANT BLUE DIAMOND GROWERS**

By: _____

Name: _Mark Jansen_

Its: _CEO & President_

35

**Execution Copy**

## <u>LIST OF EXHIBITS</u>

Exhibit A:      Product List

Exhibit B:      Claim Form

Exhibit C1:    Long Form Notice

Exhibit C2:    Print Publication Notice

Exhibit D:      Proposed Order of Preliminary Approval

# EXHIBIT A

## EXHIBIT A

## PRODUCT LIST

- Blue Diamond Almond Breeze Almond Unsweetened Vanilla, 64 oz. (Refrigerated)
- Blue Diamond Almond Breeze Almond Sweetened Vanilla, 64 oz. (Refrigerated)
- Blue Diamond Almond Breeze Almond Unsweetened Vanilla, 96 oz. (Refrigerated)
- Blue Diamond Almond Breeze Almond Lightly Sweetened Vanilla, 64 oz. (Refrigerated)
- Blue Diamond Almond Breeze Almond Sweetened Vanilla, 96 oz. (Refrigerated)
- Blue Diamond Almond Breeze Almond Blends Unsweetened Almond Coconut Vanilla, 64 oz. (Refrigerated)
- Blue Diamond Almond Breeze Almond Unsweetened Vanilla, 32 oz. (Shelf Stable)
- Blue Diamond Almond Breeze Almond Sweetened Honey Vanilla, 64 oz. (Refrigerated)
- Blue Diamond Almond Breeze Almond Blends Unsweetened Almond Cashew Vanilla, 64 oz. (Refrigerated)
- Blue Diamond Almond Breeze Almond Sweetened Vanilla, 32 oz. (Shelf Stable)
- Blue Diamond Almond Breeze Almond Unsweetened Vanilla, 64 oz. (Shelf Stable)
- Blue Diamond Almond Breeze Almond Sweetened Vanilla, 64 oz. (Shelf Stable)
- Blue Diamond Almond Breeze Almond Blends Unsweetened Almond Coconut Vanilla, 32 oz. (Shelf Stable)
- Blue Diamond Almond Breeze Almond Sweetened Vanilla, 10 oz. (Refrigerated)
- Blue Diamond Almond Breeze Almond Blends Sweetened Almond Cashew Vanilla, 64 oz. (Refrigerated)
- Blue Diamond Almond Breeze Almond Unsweetened Vanilla, 4 Ct. 8 oz. (Shelf Stable)
- Blue Diamond Almond Breeze Almond Sweetened Vanilla, 4 Ct. 8 oz. (Shelf Stable)
- Blue Diamond Almond Breeze Almond Unsweetened Vanilla, 8 oz. (Shelf Stable)
- Blue Diamond Almond Breeze Almond Sweetened Vanilla, 8 oz. (Shelf Stable)
- Blue Diamond Almond Breeze Almond Sweetened Vanilla Chai Spice Nog, 32 oz. (Refrigerated)
- Blue Diamond Almond Breeze Almond Blends Sweetened Almond Coconut Vanilla, 32 oz. (Shelf Stable)
- Blue Diamond Almond Breeze Almond Sweetened Vanilla, 32 oz. (Shelf Stable)
- Blue Diamond Almond Breeze Almond Sweetened Vanilla, 96 oz. (Refrigerated)
- Blue Diamond Almond Breeze Almond Sweetened Honey Vanilla, 32 oz. (Shelf Stable)
- Almond Breeze Almond Unsweetened Vanilla, 6 ct. 23 oz. (Shelf Stable)
- Blue Diamond Almond Breeze Almond Creamer Vanilla, 32 oz.
- Blue Diamond Almond Breeze Blended Vanilla Yogurt, 24 oz.
- Blue Diamond Almond Breeze Blended Vanilla Yogurt, 5.3 oz.

# EXHIBIT B

<table>
<tr><td>

**Your claim must be submitted online or delivered by: [DEADLINE]**

</td><td>

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

*BIEGEL, ET AL. V. BLUE DIAMOND GROWERS, CASE NO. 7:20-CV-03032*
**Claim Form**

</td><td>

**BDG**

</td></tr>
</table>

## CLAIM FORM INSTRUCTIONS

1.  You may submit your Claim Form online at [WEBSITE URL] or by U.S. Mail to the following address: *Blue Diamond Growers* Settlement, c/o Claim Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103. Please make sure to include the completed and signed Claim Form and all supporting materials in one envelope.

2.  You must complete the entire Claim Form. Please type or write your responses legibly.

3.  Please keep a copy of your Claim Form and any supporting materials you submit. Do not submit your only copy of the supporting documents. Materials submitted will not be returned. Copies of documentation submitted in support of your Claim should be clear and legible.

4.  If your Claim Form is incomplete or missing information, the Claim Administrator may contact you for additional information. If you do not respond, the Claim Administrator will be unable to process your claim, and you will waive your right to receive money under the Settlement.

5.  If you have any questions, please contact the Claim Administrator by email at [EMAIL ADDRESS] or by mail at the address listed above.

6.  Each Household is limited to and may only submit a single Claim Form.

7.  **You must notify the Claim Administrator if your address changes. If you do not, you may not receive your payment.**

8.  **DEADLINE -- Your claim must be submitted online by [DEADLINE DATE]. Claim Forms submitted by mail must be delivered to the Claim Administrator no later than [DEADLINE DATE].**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

*BIEGEL, ET AL. V. BLUE DIAMOND GROWERS, CASE NO. 7:20-CV-03032*
**Claim Form**

Your claim must be submitted online or delivered by: [DEADLINE]

BDG

---

## I. YOUR CONTACT INFORMATION AND MAILING ADDRESS

Provide your name and contact information below. You must notify the Claim Administrator if your contact information changes after you submit this form.

| | |
|---|---|
| **First Name** | **Last Name** |

**Street Address**

| | | |
|---|---|---|
| **City** | **State** | **Zip Code** |

**Email Address**

---

## II. PURCHASE INFORMATION **OR** DOCUMENTATION

Please select **one** of the following options. If you do <u>not</u> have proof of purchase, complete the chart on the next page.

☐ **I am enclosing proof of purchase** in the form of a printed point of purchase receipt from a third-party retail source that reasonably establishes the fact and date of the purchase of the Product during the Class Period in the United States. You may receive $1.00 for each Product purchased, up to a maximum of 20 Products. [1]

Please provide the number of Products purchased during the Class Period for which you are providing proof of purchase:

☐ **I do not have proof of my Product purchase.**   Provide the Product names(s), approximate price(s), approximate date(s) of purchase, store name(s) and store location(s) in the chart on the next page. You will receive $0.50 for each Product purchased, up to a maximum of 10 Products. [2]

The claimed purchases must be direct retail purchases made by you and the purchases were not made for purposes of resale or commercial use.

---

[1] Payment Amounts will be reduced on a *pro rata* basis (equally proportioned) if the total amount of money claimed with proof of purchase is more than $1,250,000.

[2] Payment amounts will be reduced on a *pro rata* basis (equally proportioned) if the total amount of money claimed without proof of purchase is more than $750,000.

2

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

*BIEGEL, ET AL. V. BLUE DIAMOND GROWERS, CASE NO. 7:20-CV-03032*
**Claim Form**

**BDG**

| | Product Name | Approximate Date of Purchase (MM/DD/YY) | Approximate Price | Name of Retail Store Product was Purchased | Store Location |
|---|---|---|---|---|---|
| 1. | | | | | |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |
| 6. | | | | | |
| 7. | | | | | |
| 8. | | | | | |
| 9. | | | | | |
| 10. | | | | | |

## III.  PAYMENT SELECTION

Please select **one** of the following payment options:

☐ **PayPal** - Enter your PayPal email address: _____

☐ **Venmo -** Enter the mobile number associated with your Venmo account: ___ ___ ___ - ___ ___ ___ - ___ ___ ___ ___

☐ **Physical Check -** Payment will be mailed to the address provided above.

## IV.  VERIFICATION AND ATTESTATION UNDER PENALTY OF PERJURY

By signing below and submitting this Claim Form, I hereby swear under penalty of perjury that I am the person identified above and the information provided in this Claim Form, including supporting documentation is true and correct, and that nobody from my household has submitted another claim in connection with this Settlement.

_____          Date: _____
Your signature                                          MM        DD        YYYY

_____
Your name

# EXHIBIT C1

## <u>NOTICE OF PROPOSED CLASS ACTION SETTLEMENT</u>

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

————————————

# If you purchased certain Blue Diamond Growers almondmilk, almondmilk blend, or yogurt alternative products, you may be eligible for a payment from a class action settlement.

————————————

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- A settlement has been reached with Blue Diamond Growers in a class action lawsuit about the marketing and labeling of certain almondmilk, almondmilk blend, and yogurt alternative products.

- You are included in this settlement as a Class Member if you purchased certain BDG almondmilk, almondmilk blend or almondmilk yogurt alternative products from April 15, 2014 through [PRELIMINARY APPROVAL DATE].

- Your rights are affected whether you act or don't act. Please read this Notice carefully.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | DEADLINE |
|---|---|---|
| SUBMIT A CLAIM | The only way to receive a payment from this Settlement. If you submit a Claim Form, you will give up the right to sue Blue Diamond Growers in a separate lawsuit about the legal claims this settlement resolves. | [DEADLINE] |
| EXCLUDE YOURSELF | Get no payment. This option allows you to sue, continue to sue, or be part of another lawsuit against Blue Diamond Growers related to the legal claims this settlement resolves. | [DEADLINE] |
| OBJECT TO THE SETTLEMENT AND/OR ATTEND A HEARING | If you do not exclude yourself from the settlement, you may object to it by writing to the Court about why you don't like the settlement. If you object, you may also file a claim for a payment. You may object to the settlement and ask the Court for permission to speak at the Final Approval Hearing about your objection. | [DEADLINE] |
| DO NOTHING | Unless you exclude yourself, you are automatically part of the settlement. If you do nothing, you will not get a payment from this settlement and you will give up the right to sue, continue to sue, or be part of another lawsuit against Blue Diamond Growers about the legal claims resolved by this settlement. | No Deadline |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the settlement.

1

| WHAT THIS NOTICE CONTAINS |
|---|

BASIC INFORMATION .................................................................................................................. 2

WHO IS IN THE SETTLEMENT ...................................................................................................... 3

THE SETTLEMENT BENEFITS ....................................................................................................... 4

HOW TO GET A PAYMENT—MAKING A CLAIM ........................................................................... 4

THE LAWYERS REPRESENTING YOU ............................................................................................ 5

EXCLUDING YOURSELF FROM THE SETTLEMENT ......................................................................... 6

COMMENTING ON OR OBJECTING TO THE SETTLEMENT .............................................................. 6

THE COURT'S FINAL APPROVAL HEARING .................................................................................. 7

IF I DO NOTHING ........................................................................................................................ 8

GETTING MORE INFORMATION .................................................................................................... 8

### BASIC INFORMATION

| 1. Why was this Notice issued? |
|---|

A court authorized this Notice because you have a right to know about the proposed settlement of this class action lawsuit and about all of your options before the Court decides whether to grant final approval to the settlement. This Notice explains the lawsuit, your legal rights, what benefits are available, and who can receive them.

The Honorable Cathy Seibel of the United States District Court for the Southern District of New York is overseeing this class action. The case is known as *Biegel, et al. v. Blue Diamond Growers*, Case No. 7:20-cv-03032-CD (S.D.N.Y.). The people that filed this lawsuit are called the "Plaintiffs" and the company they sued, Blue Diamond Growers, is called the "Defendant."

| 2. What is this lawsuit about? |
|---|

This lawsuit is about the marketing and labeling of certain Blue Diamond Growers almondmilk, almondmilk blend, and yogurt alternative products. Plaintiffs allege that the Defendant made false and misleading claims regarding the labeling of certain products as "vanilla" or "vanilla with other flavors." The Defendant denies all of the allegations in the Litigation.

2

**Questions? Call XXX-XXX-XXXX Toll-Free or Visit [Website URL]**

## 3. What is a class action?

In a class action, one or more people called Class Representatives (in this case Lauren Biegel, Greg Maroney, Stephen Bradshaw, Angela Farve, Ryan Cosgrove, Clive Rhoden, and Christina Henderson) sue on behalf of other people with similar claims. Together, the people included in the class action are called a Class or Class Members. One court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

## 4. Why is there a Settlement?

The Court did not decide in favor of Plaintiffs or Defendant. Instead, the Plaintiffs and Defendant agreed to a settlement. This way, they avoid the cost and burden of a trial and the people affected can get benefits. The Class Representatives and their attorneys think the settlement is best for all Class Members.

### WHO IS IN THE SETTLEMENT

## 5. Who is in the Settlement?

The Settlement Class includes all consumers in the United States who purchased the Products from April 15, 2014 through [PRELIMINARY APPROVAL] (the "Class Period").

The Products include almondmilk, almondmilk blend, and almondmilk yogurt alternative products manufactured and labeled by Blue Diamond Growers during the Class Period that include reference to vanilla, including but not limited to, the word "vanilla" or the phrase "vanilla with other natural flavors," on the front pack or in the ingredient statement. For a complete list of Products, please visit [WEBSITE URL].

## 6. Are there exceptions to being included?

Yes. The Settlement Class does not include: the Released Parties, any government entities, persons who made such purchase for the purpose of resale, persons who made a valid, timely request for exclusion, and Hon. Cathy Seibel and Randall W. Wulff, and any members of their immediate family.

If you are not sure whether you are included in the Settlement Class, you can ask for free help by emailing the Claim Administrator at [EMAIL ADDRESS] or calling the Claim Administrator at XXX-XXX-XXXX.  You may also view the Settlement Agreement at [WEBSITE URL].

**THE SETTLEMENT BENEFITS**

| **7. What does the Settlement provide?** |
| --- |

Blue Diamond Growers has agreed to make payments to Class Members who submit valid Claim Forms. Each Household is limited to and may only submit a single Claim Form.

| **8. How much will my payment be?** |
| --- |

If you submit a valid Claim Form with Proof of Purchase, you will receive a cash payment of $1.00 for each Product purchased, up to a maximum of twenty (20) Products. If the total dollar amount of valid claims submitted with proof of purchase is more than $1,250,000, payments will be reduced on a *pro rata* basis (equally proportioned).

If you submit a valid Claim Form without Proof of Purchase, you will receive a cash payment of $0.50 for each Product purchased, up to a maximum of ten (10) Products. If the total dollar amount of valid claims submitted without proof of purchase is more than $750,000, payments shall be reduced on a *pro rata* basis (equally proportioned).

| **9. What claims am I releasing if I stay in the Settlement Class?** |
| --- |

Unless you exclude yourself from the Settlement, you cannot sue, continue to sue, or be part of any other lawsuit against the Defendant about any of the legal claims this settlement resolves. The "Released Claims" section in the Settlement Agreement describes the legal claims that you release if you remain in the Settlement Class. The Settlement Agreement can be found at [WEBSITE URL].

**HOW TO GET A PAYMENT—MAKING A CLAIM**

| **10. How do I submit a claim and get a cash payment?** |
| --- |

You must complete and submit a Claim Form by [DEADLINE DATE]. Claim Forms may be submitted online at [WEBSITE URL] or printed from the website and mailed to the Claim Administrator at *Blue Diamond Growers* Settlement, c/o Claim Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103.

You may contact the Claim Administrator to request a claim form by telephone XXX-XXX-XXXX, email [EMAIL ADDRESS], or U.S. mail at *Blue Diamond Growers* Settlement, c/o Claim Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103.

## 11. What is the deadline for submitting a claim?

Claims must be submitted online by [DEADLINE DATE]. Claim Forms submitted by mail must be received by the Claim Administrator no later than [DEADLINE DATE].

## 12. When will I get my payment?

The Court will hold a Final Approval Hearing on [DATE], to decide whether to approve the Settlement. If the Court approves the settlement, there may be appeals. It is always uncertain whether appeals will be filed and, if so, how long it will take to resolve them. Settlement payments will be distributed as soon as possible, if and when the Court grants final approval to the settlement and after any appeals are resolved.

The date and time of the Final Approval Hearing is subject to modification by the Court so check [WEBSITE URL] for updates.

### THE LAWYERS REPRESENTING YOU

## 13. Do I have a lawyer in the case?

Yes. The Court has appointed the law firms of Sheehan & Associates, P.C., Shub Law Firm LLC, and Reese LLP to represent you and the Settlement Class. These attorneys are called Class Counsel. You will not be charged for their services.

## 14. Should I get my own lawyer?

You do not need to hire your own lawyer because Class Counsel works for you. If you want your own lawyer, you may hire one at your own expense.

## 15. How will the lawyers be paid?

Class Counsel will ask the Court for an award of attorneys' fees and costs of up to $550,000. They will also ask the Court to approve a $3,571.42 incentive award for each of the Class Representatives. The Court may award less than these amounts. If approved, these fees, costs and awards will be paid separately by the Defendant and will not reduce the amount of money available to Class Members.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

| **16. How do I opt out of the Settlement?** |
| --- |

If you do not want to receive any benefits from the Settlement, and you want to keep your right, if any, to sue the Defendant on your own about the legal issues in this case, then you must take steps to exclude yourself from the Settlement Class. This is called "opting out" of the Settlement Class. The deadline for requesting exclusion from the Settlement is **[DEADLINE DATE]**.

To exclude yourself from the settlement, you must submit a written request for exclusion online or by mail. Your request for exclusion must include: (1) your name; (2) your current address; (3) a statement that you are a Class Member and you purchased one or more of the Products during the Class Period and wish to be excluded from the settlement in *Biegel v. Blue Diamond Growers*, Case No. 7:20-cv-03032; and (4) your signature. Your request for exclusion must be submitted online or mailed to the Claim Administrator so it is received by **[DEADLINE DATE]**:

*Blue Diamond Growers* Settlement
ATTN: Exclusion Request
PO Box 58220
Philadelphia, PA 19102

If you exclude yourself, you are telling the Court you do not want to be part of the settlement. You will not be eligible to receive a payment if you exclude yourself.

## COMMENTING ON OR OBJECTING TO THE SETTLEMENT

| **17. How do I tell the Court if I do not like the Settlement?** |
| --- |

If you are a Class Member, you can object to the settlement if you do not like it or a portion of it. You can give reasons why you think the Court should not approve it. The Court will consider your views.

Your objection must include: (i) the case name and number: *Biegel v. Blue Diamond Growers*, Case No. 7:20-cv-03032-CS; (ii) the name, address and telephone number of the objector; (iii) the name, address, and telephone number of all counsel (if any) who represent the objector, including any former or current counsel who may be entitled to compensation for any reason if the objection is successful, and legal and factual support for the right to such compensation; (iv) documents or testimony sufficient to establish membership in the Settlement Class; (v) a detailed statement of any objection asserted, including the grounds therefor; (vi) whether the objector is, and any reasons for, requesting the opportunity to appear and be heard at the final approval hearing; (vii) the identity of all counsel (if any) representing the objector who will appear at the final approval hearing and, if applicable, a list of all persons who will be called to testify in support of the objection; (viii) copies of any papers, briefs, or other documents upon which the objection is based; (ix) a detailed list of any other objections submitted by the Settlement Class Member, or his/her counsel, to any class Litigations submitted in any state or federal court in the United States in the previous five (5) years (or affirmatively stating that no such

prior objection has been made); and (x) the objector's signature, in addition to the signature of the objector's attorney (if any).

Your written objection may be submitted by mail, express mail, electronic transmission, or personal delivery, but to be timely, it must be delivered to the Claim Administrator (not just postmarked or sent) by [DEADLINE DATE]:

*Blue Diamond Growers* Settlement
ATTN: Objections
PO Box 58220
Philadelphia, PA 19102

You or your attorney may speak at the Final Approval Hearing about your objection. To do so, you must include a statement in your objection indicating that you or your attorney intend to appear at the Final Approval Hearing. Remember, your objection must be delivered to the Claim Administrator by [DEADLINE DATE].

## 18. What is the difference between objecting and excluding?

Objecting is telling the Court that you do not like something about the Settlement. You can object to the Settlement only if you do not exclude yourself from the Settlement. Excluding yourself from the Settlement is opting out and telling the Court that you do not want to be part of the Settlement. If you opt out of the Settlement, you cannot object to it because it no longer affects you.

THE COURT'S FINAL APPROVAL HEARING

## 19. When is the Court's Final Approval Hearing?

The Court will hold a Final Approval Hearing at [TIME]. on [DATE], in Courtroom [X] located at The Hon. Charles L. Brieant Jr. Federal Building and United States Courthouse, 300 Quarropas St., White Plains, New York. At the Final Approval Hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. It will also consider whether to approve Class Counsel's request for an award of attorneys' fees and costs, as well as the Class Representatives' incentive awards. If there are objections, the Court will consider them. Judge Seibel will listen to people who have asked to speak at the hearing (*see* Question 17 above). After the hearing, the Court will decide whether to approve the settlement.

The date or time of the Final Approval Hearing may change. Be sure to check the Settlement Website, [WEBSITE URL], for any updates.

## 20. Do I have to come to the Final Approval Hearing?

No. Class Counsel will answer any questions the Court may have. You may attend at your own expense if you wish. If you send an objection, you do not have to come to the Final Approval Hearing to talk

about it. If you delivered your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

### IF I DO NOTHING

| 21. What happens if I do nothing at all? |
| --- |

If you are a Class Member and you do nothing, you will give up the rights explained in Question 9, including your right to start a lawsuit, continue a lawsuit, or be part of any other lawsuit against Blue Diamond Growers and the Released Parties about the legal issues resolved by this settlement. In addition, you will not receive a payment from this settlement.

### GETTING MORE INFORMATION

| 23. How do I get more information? |
| --- |

This Notice summarizes the proposed settlement. Complete details are provided in the Settlement Agreement. The Settlement Agreement and other related documents are available at [WEBSITE URL].

If you have additional questions, you may contact the Claim Administrator by email, phone, or mail:

Email: [EMAIL ADDRESS]

Toll-Free:  [XXX-XXX-XXXX]

Mail: *Blue Diamond Growers* Settlement, c/o Claim Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103

Publicly filed documents can also be obtained by visiting the office of the Clerk of the United States District Court for the Southern District of New York or reviewing the Court's online docket.

# EXHIBIT C2

**Legal Notice**

# If you purchased certain Blue Diamond Growers almondmilk, almondmilk blend, or yogurt alternative products, you may be eligible for a payment from a class action settlement.

A settlement has been reached with Blue Diamond Growers in a class action lawsuit about whether it falsely marketed and labeled certain almondmilk, almondmilk blend, and yogurt alternative products. Blue Diamond Growers denies all of the allegations in the Litigation. The Court has not decided which side is right.

**Who is Included?**  You are included in this settlement as a "Class Member" if you purchased certain Blue Diamond Growers almondmilk, almondmilk blend or almondmilk yogurt alternative products from April 15, 2014 through [PRELIMINARY APPROVAL DATE].

**What does the settlement provide?** Blue Diamond Growers has agreed to make payments to Class Members who submit valid Claim Forms.

Class Members who submit a valid Claim Form with Proof of Purchase, will receive a cash payment of $1.00 for each Product purchased, up to a maximum of twenty (20) Products. If the total dollar amount of valid claims submitted with proof of purchase is more than $1,250,000, payments will be reduced on a pro rata basis (equally proportioned).

Class Members who submit a valid Claim Form without Proof of Purchase, will receive a cash payment of $0.50 for each Product purchased, up to a maximum of ten (10) Products. If the total dollar amount of valid claims submitted without proof of purchase is more than $750,000, payments shall be reduced on a pro rata basis (equally proportioned).

**How do I get a payment?** You must submit a valid Claim Form by [DATE]. Claim Forms may be submitted online at [WEBSITE URL] or printed from the website and mailed to the address on the Claim Form. Claim Forms are also available by calling XXX-XXX-XXXX or emailing [EMAIL ADDRESS].

**Your other options**. If you are included in the settlement and do nothing, your rights will be affected and you won't get a payment. If you don't want to be legally bound by the settlement, you must exclude yourself from it by [DATE]. Unless you exclude yourself, you won't be able to sue or continue to sue Blue Diamond Growers for any claim made in this lawsuit or released by the Settlement Agreement. If you stay in the settlement (i.e., don't exclude yourself), you may object to it or ask for permission for you or your lawyer to appear and speak at the Final Approval Hearing – at your own cost – but you don't have to. Objections and requests to appear are due by [DATE]. More information about these options is available at [WEBSITE URL].

**The Court's hearing**. The Court will hold a hearing in this case *Biegel, et al. v. Blue Diamond Growers*, Case No. 7:20-cv-03032) at [TIME]. on [DATE], in Courtroom [X] located at The Hon. Charles L. Brieant Jr. Federal Building and United States Courthouse, 300 Quarropas St., White Plains, New York. At the Final Approval Hearing, the Court will decide whether to approve the settlement; Class Counsel's request for an award of attorneys' fees and costs ($550,000), and incentive awards to

the Class Representatives ($3,571.42 each). You or your lawyer may appear at the hearing at your own expense.

This notice is only a summary.
For more information visit [WEBSITE URL] or call XXX-XXX-XXXX.

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Lauren Biegel, Greg Maroney, Ryan Cosgrove, Clive Rhoden, Stephen Bradshaw, Angela Farve and Christina Henderson, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>   v.<br><br>Blue Diamond Growers,<br><br>                    Defendant. | Case No.: 7:20-cv-03032-CS<br><br>**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENT, APPROVAL OF FORM NOTICE, AND SCHEDULING OF FINAL APPROVAL HEARING** |

Upon consideration of the Motion by Plaintiffs Lauren Biegel ("Biegel"), Greg Maroney ("Maroney"), Stephen Bradshaw ("Bradshaw"), Angela Farve ("Farve"), Ryan Cosgrove ("Cosgrove"), Clive Rhoden ("Rhoden"), and Christina Henderson ("Henderson") (collectively, the "Plaintiffs") for Preliminary Approval of Settlement, Approval of Form Notice, and Scheduling of Final Approval Hearing, and the entire record herein, the Court grants preliminary approval of the Settlement contained in the Parties' Class Settlement Agreement filed on April 19, 2021 ("Settlement Agreement"), upon the terms and conditions set forth in this Order. Capitalized terms and phrases in this Order shall have the same meaning they have in the Settlement Agreement. The Court makes the following findings:

**FINDINGS OF FACT**

1.     Plaintiffs bring their Motion for Preliminary Approval of Settlement, Approval of Form Notice, and Scheduling of Final Approval Hearing before the Court, with the consent of Defendant Blue Diamond Growers ("Defendant", "BDG", or the "Company").

2.     The Parties, through their counsel, conducted an extensive and thorough examination, investigation, and evaluation of the relevant law, facts, and allegations to assess the

merits of the potential claims to determine the strength of both defenses and liability sought in the Action.

3.      The Parties engaged in discovery, where Defendant provided Class Counsel with extensive information and documents.

4.      In addition, Class Counsel evaluated the various state consumer protection laws, as well as the legal landscape, to determine the strength of the claims, the likelihood of success, and the parameters within which courts have assessed settlements similar to the proposed Settlement.

5.      The Parties entered into a Settlement Agreement pursuant to which they agreed to settle the Action, subject to the approval and determination by the Court as to the fairness, reasonableness, and adequacy of the Settlement, which, if approved, will result in dismissal of the Action with prejudice.

6.      The Court has reviewed the Settlement Agreement, including the exhibits attached thereto, and the Declarations of Spencer Sheehan and Steven Weisbrot, and exhibits attached thereto, and having found good cause based on the record,

THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED as follows:

1.      **Stay of the Action.** All non-settlement-related proceedings in the Action are hereby stayed and suspended until further order of the Court.

2.      **Preliminary Class Certification for Settlement Purposes Only.** Having made the findings set forth above, the Court hereby preliminarily certifies a plaintiff class for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2) and (b)(3), in accordance with the terms of the Settlement Agreement (the "Settlement Class"). The Court preliminarily finds, based on the terms of the Settlement described in the Settlement Agreement

and for settlement purposes only, that: (a) the Settlement Class is so numerous that joinder of all members is impracticable; (b) there are issues of law and fact that are typical and common to the Class, and that those issues predominate over individual questions; (c) a class action on behalf of the certified Class is superior to other available means of adjudicating this dispute; and (d) as set forth below, Plaintiffs and Class Counsel are adequate representatives of the Class. If the Court does not grant final approval of the Settlement set forth in the Settlement Agreement, or if the Settlement set forth in the Settlement Agreement is terminated in accordance with its terms, then the Settlement Agreement, and the certification of the Settlement Class provided for herein, will be vacated and the Action shall proceed as though the Settlement Class had never been certified, without prejudice to any party's position on the issue of class certification or any other issue. Defendant retains all rights to assert that the Action may not be certified as a class action, other than for purposes of this Settlement.

3.     **Class Definition.** The Settlement Class is defined as All consumers in the United States who purchased the Products during the Class Period. The Settlement Class excludes the Released Parties, any government entities, persons who made such purchase for the purpose of resale, persons who made a valid, timely request for exclusion, and Hon. Cathy Seibel and Randall W. Wulff, and any members of their immediate family.

4.     **Class Representatives and Class Counsel.** The Court appoints Michael R. Reese of Reese LLP, Spencer Sheehan of Sheehan & Associates, P.C., and Kevin Laukaitis of Shub Law Firm LLC as class counsel for the Settlement Class. Lauren Biegel, Greg Maroney, Stephen Bradshaw, Angela Farve, Ryan Cosgrove, Clive Rhoden, and Christina Henderson are hereby appointed as the Class Representatives.

5.     **Preliminary Settlement Approval.** The Court preliminarily approves the

Settlement set forth in the Settlement Agreement as being within the range of possible approval

as fair, reasonable, and adequate, within the meaning of Rule 23 and the Class Action Fairness

Act of 2005, subject to final consideration at the Final Approval Fairness Hearing provided for

below. Accordingly, the Settlement Agreement is sufficient to warrant sending notice to the

Class.

      6.     **Jurisdiction.** The Court has subject-matter jurisdiction over the Action pursuant

to 28 U.S.C. §§ 1332 and 1367 and personal jurisdiction over the Parties before it. Additionally,

venue is proper in this District pursuant to 28 U.S.C. § 1391.

      7.     **Fairness Hearing.** A Fairness Hearing shall be held on August 25, 2021 at the

United States District Court for the Southern District Court of New York in the Courtroom 621

at 300 Quarropas Street, White Plains, New York, to determine, among other things: (a) whether

the Action should be finally certified as a class action for settlement purposes pursuant to Rule

23(a), 23(b)(2) and (b)(3); (b) whether the Settlement of the Action should be finally approved as

fair, reasonable, and adequate pursuant to Rule 23(e); (c) whether the Action should be dismissed

with prejudice pursuant to the terms of the Settlement Agreement; (d) whether Settlement Class

Members should be bound by the releases set forth in the Settlement Agreement; (e) whether

Settlement Class Members and related persons should be permanently enjoined from pursuing

lawsuits based on the transactions and occurrences at issue in the Action; (f) whether the

application of Class Counsel for an award of Attorneys' Fees and Expenses should be approved

pursuant to Rule 23(h); and (g) whether the application of the named Plaintiffs for Class

Representative Incentive Awards should be approved. The submissions of the Parties in support

of the Settlement, including Class Counsel's application for Attorneys' Fees and Expenses and

the Class Representative Incentive Awards, shall be filed with the Court no later than July 26,

2021, which is thirty (30) calendar days prior to the Fairness Hearing.

       8.     **Administration and Class Notice.**

       a.     The Court accepts the recommendations of Class Counsel and Defendant, and hereby appoints Angeion Group to serve as Settlement Administrator in accordance with the terms of the Settlement Agreement, and to help implement the terms of the Settlement Agreement.

       b.     The proposed Class Notice, Summary Settlement Notice, and notice methodology described in the Settlement Agreement and in the Declaration of Steven Weisbrot (the "Weisbrot Declaration") are hereby approved.

       c.     No later than ten (10) calendar days after the entry of the Preliminary Approval Order, the Settlement Administrator shall cause the Notice Plan to commence as described in the Weisbrot Declaration. Specifically, the Settlement Administrator shall establish a website that will inform Settlement Class Members of the terms of the Settlement Agreement, their rights, dates and deadlines, and related information. The website shall include materials agreed upon by the Parties and as further ordered by this Court.

       d.     The Settlement Administrator shall disseminate any remaining notice, as stated in the Settlement Agreement and the Weisbrot Declaration.

       e.     No later than seven (7) calendar days before the date of the Fairness Hearing, the Settlement Administrator shall file a declaration or affidavit with the Court that: (i) includes a list of those persons who have opted out or excluded themselves from the Settlement; and (ii) attests to the proper implementation of the Notice Plan.

       f.     No later than ten (10) calendar days after the Settlement Agreement is filed with the Court, the Settlement Administrator, with assistance from the Parties as needed,

shall mail or cause the items specified in 28 U.S.C. § 1715(b) to be mailed to each State and Federal official, as specified in 28 U.S.C. § 1715(a).

9.      **Findings Concerning Notice.** The Court finds that the form, content, and method of giving notice to the Class as described in paragraph 8 of this Order: (a) will constitute the best practicable notice; (b) are reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action, the terms of the proposed Settlement, and their rights under the proposed Settlement, including but not limited to their rights to object to or exclude themselves from the proposed Settlement and other rights under the terms of the Settlement Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; and (d) meet all applicable requirements of law, including but not limited to 28 U.S.C. § 1715, Rule 23(c) and (e), and the Due Process Clause(s) of the United States Constitution. The Court further finds that all of the notices are written in plain language, are readily understandable by Settlement Class Members, and are materially consistent with the Federal Judicial Center's illustrative class action notices.

10.      **Exclusion from Settlement Class.** Any Settlement Class Member who wishes to be excluded from the Class may elect to opt out of the Settlement under this Agreement by completing the exclusion form at the Settlement Website; downloading and submitting to the Claim Administrator a completed exclusion form; or submitting a valid request to exclude themselves, as described in the Notice, to the Claim Administrator. Settlement Class Members who opt out of the Settlement will not release their claims for damages that accrued during the Class Period. Any request for exclusion must be delivered (not just postmarked) by the Opt-Out and Objection Deadline or they shall not be valid. A Settlement Class Member who elects to

exclude themselves from this Settlement shall not be permitted to object to this Settlement or to intervene. Any Settlement Class Member who does not submit a timely request for exclusion shall be bound by all subsequent proceedings, orders, and the Final Approval in this Litigation relating to this Settlement Agreement, even if he or she has pending, or subsequently initiates litigation, arbitration, or any other proceeding against BDG relating to the Released Claims.

11.    **Objections and Appearances.** Any Settlement Class Member who wishes to object to the fairness of the Settlement must submit a written objection to the Claim Administrator. The written objection may be submitted by mail, express mail, electronic transmission, or personal delivery, but to be timely, it must be *delivered to* the Claim Administrator (not just postmarked or sent) prior to the Opt-Out and Objection Deadline. Each objection must include: (i) the case name and number: *Biegel v. Blue Diamond Growers*, Case No. 7:20-cv-03032-CS; (ii) the name, address and telephone number of the objector; (iii) the name, address, and telephone number of all counsel (if any) who represent the objector, including any former or current counsel who may be entitled to compensation for any reason if the objection is successful, and legal and factual support for the right to such compensation; (iv) documents or testimony sufficient to establish membership in the Settlement Class; (v) a detailed statement of any objection asserted, including the grounds therefor; (vi) whether the objector is, and any reasons for, requesting the opportunity to appear and be heard at the final approval hearing; (vii) the identity of all counsel (if any) representing the objector who will appear at the final approval hearing and, if applicable, a list of all persons who will be called to testify in support of the objection; (viii) copies of any papers, briefs, or other documents upon which the objection is based; (ix) a detailed list of any other objections submitted by the Settlement Class Member, or his/her counsel, to any class Litigations submitted in any state or federal court in the

7

United States in the previous five (5) years (or affirmatively stating that no such prior objection has been made); and (x) the objector's signature, in addition to the signature of the objector's attorney (if any).

Any Settlement Class Member who files and serves a written objection, as described in the preceding Section, may appear at the Final Approval Hearing, either in person or through counsel hired at the Settlement Class Member's expense, to object to any aspect of the fairness, reasonableness, or adequacy of this Agreement, including Attorneys' Fees and Expenses and Class Representative Incentive Awards. Settlement Class Members or their attorneys who intend to make an appearance at the Final Approval Hearing must serve a notice of intention to appear on the Class Counsel identified in the Class Notice, and to Defendant's Counsel, and file the notice of appearance with the Court, no later than fourteen (14) calendar days before the Final Approval Hearing, or as the Court may otherwise direct.

Class Counsel shall have the right, and Defendant shall reserve its right, to respond to any objection no later than fourteen (14) days before the Final Approval Hearing. The Party so responding shall file a copy of the response with the Court and shall serve a copy, by regular mail, hand or overnight delivery, to the objecting Settlement Class Member or to the individually-hired attorney for the objecting Settlement Class Member, to all Class Counsel, and to Defendant's Counsel.

12.     **Disclosures.** The Settlement Administrator, Defendant's Counsel, and Class Counsel shall promptly furnish to each other copies of any and all objections or written requests for exclusion that might come into their possession.

13.     **Termination of Settlement.** This Order shall become null and void and shall not prejudice the rights of the Parties, all of whom shall be restored to their respective positions

existing immediately before this Court entered this Order, if: (a) the Settlement is not finally approved by the Court or does not become final, pursuant to the terms of the Settlement Agreement; (b) the Settlement is terminated in accordance with the Settlement Agreement; or (c) the Settlement does not become effective as required by the terms of the Settlement Agreement for any other reason. In such event, the Settlement and Settlement Agreement shall become null and void and be of no further force and effect, and neither the Settlement Agreement nor the Court's orders, including this Order, relating to the Settlement shall be used or referred to for any purpose.

14.   **Nationwide Stay and Preliminary Injunction.** Effective immediately, any actions or proceedings pending in any state or federal court in the United States involving the labeling or marketing of Defendant's Products, except any matters necessary to implement, advance, or further approval of the Settlement Agreement or settlement process, are stayed pending the final Fairness Hearing and the issuance of a final order and judgment in this Action.

In addition, pending the final Fairness Hearing and the issuance of a final order and judgment in this Action, all members of the Settlement Class and their legally authorized representatives are hereby preliminarily enjoined from demanding, threatening, filing, commencing, prosecuting, maintaining, intervening in, participating in (as class members or otherwise), or receiving any benefits from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding or order in any jurisdiction in the United States (defined to including both states and territories of the United States) arising out of or relating to the Products or the facts and circumstances at issue in the Action.

Also, pending the final Fairness Hearing and issuance of a final order and judgment in this Action, all members of the Settlement Class and their legally authorized representatives are

hereby preliminarily enjoined from demanding, threatening, filing, commencing, prosecuting, or maintaining any other lawsuit on behalf of members of the Settlement Class, if such other action is based on or relates to Defendant's Products.

Under the All Writs Act, the Court finds that issuance of this nationwide stay and injunction is necessary and appropriate in aid of the Court's jurisdiction over this Action. The Court finds no bond is necessary for issuance of this injunction.

15.     **Effect of Settlement Agreement and Order.** Class Counsel, on behalf of the Settlement Class, and Defendant entered into the Agreement solely for the purpose of compromising and settling disputed claims. This Order shall be of no force or effect if the Settlement does not become final and shall not be construed or used as an admission, concession, or declaration by or against Defendant of any fault, wrongdoing, breach, or liability. The Settlement Agreement, the documents relating to the Settlement Agreement, and this Order are not, and should not in any event be (a) construed, deemed, offered, or received as evidence of a presumption, concession, or admission on the part of Plaintiffs, Defendant, any member of the Settlement Class or any other person; or (b) offered or received as evidence of a presumption, concession, or admission by any person of any fault, wrongdoing, breach, or liability, or that the claims in the Action lack merit or that the relief requested is inappropriate, improper, or unavailable for any purpose in any judicial or administrative proceeding, whether in law or in equity.

16.     **Retaining Jurisdiction.** This Court shall maintain continuing jurisdiction over these settlement proceedings to assure the effectuation thereof for the benefit of the Class. If the Settlement receives final approval, this Court shall retain jurisdiction over any action to enforce the release provisions in the Settlement Agreement.

17.   **Continuance of Hearing.** The Court reserves the right to adjourn or continue the Final Approval Hearing without further written notice.

The Court sets the following schedule for the Fairness Hearing and the actions which must precede it:

a.   Plaintiffs shall file their Motion for Final Approval of the Settlement by no later than July 26, 2021.

b.   Plaintiffs shall file their Motion for Attorneys' Fees, Costs, and Expenses, and Motion for Incentive Award by no later than July 26, 2021.

c.   Settlement Class Members must file any objections to the Settlement and the Motion for Attorneys' Fees, Costs, and Expenses, and the Motion for Incentive Award by no later than August 4, 2021.

d.   Settlement Class Members must exclude themselves, or opt-out, from the Settlement by no later than August 4, 2021.

e.   Settlement Class Members who intend to appear at the Final Fairness Hearing must file a Notice of Intention to Appear at the Final Fairness Hearing by no later than August 11, 2021.

f.   The Settlement Administrator shall file a declaration or affidavit with the Court that confirms the implementation of the Notice Plan pursuant to the Preliminary Approval Order by no later than August 18, 2021.

g.   Class Counsel and Defendant's Counsel shall have the right to respond to any objection no later than August 11, 2021.

h.   The Fairness Hearing will take place on August 25, 2021 at _____ a.m/p.m at the United States District Court for the Southern District Court of New York in the

Courtroom 621 at 300 Quarropas Street, White Plains, New York.

      **SO ORDERED this \_\_\_ day of _____, 2021:**

                                  _____

                                  Honorable Cathy Seibel
                                  United States District Judge

# EXHIBIT 2

<u>Sheehan & Associates, P.C.</u>

**<u>Spencer Sheehan</u>**

Mr. Sheehan represents parties in a range of false advertising litigation. After Mr. Sheehan became an attorney in late 2011, he worked on behalf of municipalities and local government agencies in legal disputes. Following this experience, Mr. Sheehan worked for a plaintiff's law firm representing individuals subjected to violations of state and federal laws related to minimum wage, workplace safety and discrimination.

Of notable actions by Mr. Sheehan on behalf of consumers includes, *Liberski, et al v. Rhapsody International Inc.*, San Francisco County, California Superior Court, Case No. No. CGC-12-517061. In 2014, the parties reached a class wide settlement ("Rhapsody Subscriber Litigation Settlement"). Mr. Sheehan, with the California firm of Bramson, Plutzik, Mahler & Birkhaeuser, LLP, were appointed as lead counsel.

Mr. Sheehan was appointed lead counsel with the law firms of Reese LLP and Aegis Law Firm, P.C., in *Cicciarella v. Califia Farms, LLC*, 7:19-cv-08785-CS, S.D.N.Y. in summer 2020. The Court approved a nationwide settlement which resolved the underlying federal action and a California state case. It was alleged that defendant mislabeled its non-dairy milk alternative products with respect to flavoring (vanilla, hazelnut, etc.) and the presence of carrageenan. The class wide settlement resulted in individual consumers being able to receive up to $15 in monetary compensation.

In December 2016, Mr. Sheehan began focusing his practice exclusively on consumer advertising issues. He has been on the forefront of food labeling cases based on original, significant claims.

For instance, Mr. Sheehan was the first attorney to address "raw" juice products which were alleged to be treated with a non-thermal technology which had substantially the same effects as traditional thermal pasteurization. *See e.g. Campbell v. Freshbev LLC*, Case No. 1:16-cv-07119 (E.D.N.Y.), *Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 342 (E.D.N.Y. 2018) ("Therefore, plaintiff has successfully pleaded his GBL §§ 349 and 350 claims with respect to the 'unpasteurized' label on the Cranberry juice."). These cases attempted to apply the applicable law to the effects of novel technologies which were not considered at the time the FDA enacted regulations in this area.

Mr. Sheehan's pro bono work includes representing people with exotic or non-traditional animal companions. This includes his efforts, with local Florida counsel, on behalf of a Floridian who came to possess an alligator over six feet in length, alleged to be in violation of Florida's wildlife laws. Mr. Sheehan's efforts contributed to resolution of that issue and allowed the woman and gator to remain together. *See* John Breslin, [Lakeland woman keeps alligator, thanks to efforts of lawyer tied to subway shooter's squirrel eviction case](), Florida Record, January 4, 2017.

Mr. Sheehan holds a Bachelor of Science Degree from Georgetown University in Foreign Service (2002) and a Master's Degree in International Relations from the School of Advanced International Studies (SAIS), Johns Hopkins University (2006). Mr. Sheehan obtained a Juris Doctorate from Fordham University School of Law (2010). Mr. Sheehan also was a member of the United States Marine Corps as a Reservist.

## Christopher Patalano

Mr. Patalano joined Sheehan & Associates, P.C. in February 2020. Mr. Patalano joined Sheehan & Associates, P.C. in February 2020 where he represents parties in a range of false advertising litigation. Mr. Patalano began his legal career in 2014 with the law firm Katten Muchin Rosenman LLP in New York City. There Mr. Patalano worked in the litigation department until 2016.

While at Katten, Mr. Patalano worked on a wide range of litigation matters including FINRA and SEC administrative proceedings. Mr. Patalano also served as point person for discovery matters related to an SEC investigation and oversaw a team of five document review attorneys.

Mr. Patalano was recognized for his pro bono work at Katten and while in law school. At Katten, Mr. Patalano worked on various pro bono projects including an immigration proceeding where he and another associate attorney argued that an individual should be granted political asylum in the United States after facing persecution in her home country.

While in law school, Mr. Patalano was a member of the Harvard Law School Veterans Legal Clinic. As a member of the clinic, Mr. Patalano wrote a winning brief that persuaded the Board of Veterans Appeals to award a veteran's widow monthly benefits after the Board had originally denied her those benefits.

Mr. Patalano left Katten to work as an organizer for the Nevada Democratic Party and Hillary for America in Las Vegas, Nevada. Mr. Patalano managed a team of organizers and volunteers throughout the campaign's get-out-the vote operation.

At Sheehan & Associates, P.C., Mr. Patalano works on all aspects of complex consumer class action litigation. Mr. Patalano drafts complaints, briefs, memoranda, and motions.

Mr. Patalano holds a Bachelor of Arts Degree from Wesleyan University in the College of Letters (2009). Upon graduation from Wesleyan University, Mr. Patalano worked as a middle school English teacher in Hartford, Connecticut with Teach for America. Mr. Patalano obtained a Juris Doctorate from Harvard Law School (2014).

# EXHIBIT 3

# REESE LLP

Reese LLP represents consumers in a wide array of class action litigation throughout the nation. The attorneys of Reese LLP are skilled litigators with years of experience in federal and state courts. Reese LLP is based in New York, New York with offices also in California.

Recent and current cases litigated by the attorneys of Reese LLP on behalf of consumers include the following:

*The Praxis Project, Pastor William Lamar and Pastor Delman Coates v. The Coca-Cola Co.*, case no. 2017 CA0040801-B (Superior Court of the District of Columbia)(consumer action against Coca-Cola for misrepresentations to minority communities in effort to discredit scientific link between sugar sweetened beverages and diabetes and other adverse health effects); *Hasemann v. Gerber Products Co.*, case no. 15-cv-02995-MKB-RER (E.D.N.Y.)(case involving misrepresentation of health benefits of baby formula in violation of New York consumer protection laws); *Worth v. CVS Pharmacy, Inc.*, case no. 16-cv-00498 (E.D.N.Y.); (E.D.N.Y.)(class action for alleged misrepresentations regarding health benefits of dietary supplement); *Roper v. Big Heart Pet Brands, Inc.*, case no. 19-cv-00406-DAD (E.D. Cal.)(class action regarding pet food); *Ackerman v. The Coca-Cola Co.*, 09-CV-0395 (JG) (RML) (E.D.N.Y.)(class action for violation of California and New York's consumer protection laws pertaining to health beverages); *Rapaport-Hecht v. Seventh Generation, Inc.*, 14-cv-9087-KMK (S.D.N.Y.)(class action for violation of California and New York's consumer protection laws pertaining to personal care products); *Berkson v. GoGo, LLC,* 14-cv-1199-JWB-LW (E.D.N.Y.)(class action regarding improper automatic renewal clauses); *Chin v. RCN Corporation*, 08-cv-7349 RJS (S.D.N.Y.)(class action for violation of Virginia's consumer protection law by I.S.P. throttling consumers' use of internet); *Bodoin v. Impeccable L.L.C.*, Index. No. 601801/08 (N.Y. Sup. Ct.)(individual action for conspiracy and fraud); *Young v. Wells Fargo & Co.*, 08-CV-507 (S.D. Iowa)(class action for violation of the RICO Act pertaining to mortgage related fees); *Murphy v. DirecTV, Inc.*, 07-CV-06545 FMC (C.D. Cal.)(class action for violation of California's consumer protection laws); *Bain v. Silver Point Capital Partnership LLP,* Index No. 114284/06 (N.Y. Sup. Ct.)(individual action for breach of contract and fraud); *Siemers v. Wells Fargo & Co.*, C-05-4518 WHA (N.D. Cal.)(class action for violation of § 10(b) of the Securities Exchange Act of 1934 pertaining to improper mutual fund fees); *Dover Capital Ltd. v. Galvex Estonia OU*, Index No. 113485/06 (N.Y. Sup. Ct.)(individual action for breach of contract involving an Eastern European steel company); *All-Star Carts and Vehicles Inc. v. BFI Canada Income Fund*, 08-CV-1816 LDW (E.D.N.Y.)(class action for violation of the Sherman Antitrust Act pertaining to waste hauling services for small businesses on Long Island); *Petlack v. S.C. Johnson & Son, Inc.*, 08-CV-00820 CNC (E.D. Wisconsin)(class action for violation of Wisconsin consumer protection law pertaining to environmental benefits of household cleaning products); *Wong v. Alacer Corp.*, (San Francisco Superior Court)(class action for violation of California's consumer protection laws pertaining to deceptive representations regarding health benefits of dietary supplement's ability to improve immune system); *Howerton v. Cargill, Inc.* (D. Hawaii)(class action for violation of various consumer protection laws regarding sugar substitute); *Yoo v. Wendy's International, Inc.*, 07-CV-04515 FMC (C.D. Cal.)(class action for violation of California's consumer protection laws pertaining to adverse health effects of partially hydrogenated oils in popular food products).

## The Attorneys of Reese LLP

### Michael R. Reese

Mr. Reese litigates consumer protection and antitrust cases as class actions and on behalf of individual clients. Prior to entering private practice in 2000, Mr. Reese served as an assistant district attorney at the Manhattan District Attorney's Office where he served as a trial attorney prosecuting both violent and white-collar crime.

Achievements by Mr. Reese on behalf of consumers span a wide array of actions. For example, in *Yoo v. Wendy's International Inc.*, Mr. Reese was appointed class counsel by the court and commended on achieving a settlement that eliminated trans-fat from a popular food source. *See Yoo v. Wendy's Int'l Inc.*, No. 07-CV-04515-FMC (JCx) (C.D. Cal. 2007) (stating that counsel "***has conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy***"). In *Chin v. RCN Corporation*, Mr. Reese was appointed class counsel and commended by the court for stopping RCN's practice of throttling its Internet customers through adverse network management practices. *See Chin v. RCN Corp.*, No. 08-CV-7349(RJS)(KNF), 2010 WL 3958794, 2010 U.S. Dist. LEXIS 96302 (S.D.N.Y. Sept. 8, 2010) (stating that "***class counsel is qualified, experienced, and able to conduct the litigation***").

Victories by Mr. Reese and his firm include a $6.1 million class action settlement in *Howerton v. Cargill, Inc.* (D. Hawaii) for consumers of Truvia branded sweetener; a $6.4 million class action settlement in the matter of *Wong v. Alacer Corp.* (S.F. Superior Court) for consumers of Emergen-C branded dietary supplement; and, a $25 million dollar settlement for mortgagees in *Huyer v. Wells Fargo & Co.* (S.D. Iowa).

Mr. Reese and his firm are frequently appointed as co-lead counsel in food related multi-district litigations, including, but not limited to: *In re Vitaminwater Sales and Marketing Practices Litigation*, case no. 11-md-2215-DLI-RML (E.D.N.Y.); *In re Frito-Lay N.A. "All-Natural" Sales & Marketing Litigation*, case no. 12-md-02413-RRM-RLM (E.D.N.Y.); and, *In re Hill's Pet Nutrition, Inc. Dog Food Products Liability Litig.*, case no. 19-md-2887-JAR-TT (D. Kansas).

Mr. Reese is a frequent lecturer and author on issues of class actions and food law.  Mr. Reese co-hosts an annual two day food law conference with Professor Michael Roberts of UCLA; presents at the annual conference of the Consumer Brands Association (formerly known as the Grocery Manufacturers' Association); presented at Union Internationale des Advocats Annual Congress in Porto, Portugal.  Recent articles on food law and class actions appear in publications by the American Bar Association and the Union Internationale des Advocats.

Mr. Reese is also the chairperson of the Cambridge Forum Conference on Food Fraud and is also an executive committee member of the Plaintiffs' Class Action Roundtable, where he lectures on an annual basis on issues related to class actions.

Mr. Reese is also an adjunct professor at Brooklyn Law School where he teaches on class actions as well as food law.

Mr. Reese also is on the advisory boards for the University of California, Los Angeles School of Law Resnick Center for Food Law and Policy and Wellness in the Schools in New York, New York.

Mr. Reese is a member of the state bars of New York and California as well as numerous federal district and appellate courts. Mr. Reese received his juris doctorate from the University of Virginia in 1996 and his bachelor's degree from New College in 1993.

## Carlos F. Ramirez

Mr. Ramirez is based in New York, and he focuses his practice on the litigation of consumer class actions. Prior to entering private practice in 2001, Mr. Ramirez served as an Assistant District Attorney at the Manhattan District Attorney's Office where he served as a trial attorney prosecuting both violent and white-collar crimes.

Previous and current consumer fraud class actions litigated by Mr. Ramirez include *Coe v. General Mills, Inc.*, No. 15-cv-5112-TEH (N.D. Cal.) (involving false advertisement claims relating to the Cheerios Protein breakfast cereal); *In re Santa Fe Natural Tobacco Company Marketing & Sales Practices Litigation*, 16-md-2695-JB/LF (D.N.M.)(involving the deceptive marketing of cigarettes as "natural" and "additive free"); *Lamar v. The Coca-Cola Company, et al.*, No. 17-CA-4801 (D.C. Superior Ct.) (involving the deceptive marketing of sugar drinks as safe for health); and *Hasemann v. Gerber Products Co.*, case no. 15-cv-02995-MKB-RER (E.D.N.Y.)(case involving misrepresentation of health benefits of baby formula in violation of New York consumer protection laws).

Mr. Ramirez is a member of the state bars of New York and New Jersey. He is also a member of the bars of the U.S. District Courts for the Eastern District of New York and Southern District of New York. Mr. Ramirez received his juris doctorate from the Fordham University School of Law in 1997 and his bachelor's degree from CUNY-Joh Jay College in 1994.


## Sue J. Nam

Ms. Nam is based in New York where she focuses on consumer class actions.

Prior to joining the firm, Ms. Nam was the General Counsel for NexCen Brands, Inc., a publicly traded company that owned a portfolio of consumer brands in food, fashion and homeware.

Previously, Ms. Nam was Intellectual Property Counsel and Assistant Corporate Secretary at Prudential Financial, Inc., and she was an associate specializing in intellectual property and litigation at the law firms of Brobeck Phleger & Harrison LLP in San Francisco, California and Gibson Dunn & Crutcher LLP in New York, New York.

Ms. Nam clerked for the Second Circuit prior to joining private practice.

Ms. Nam received her juris doctorate from Yale Law School in 1994. She received a bachelor's degree with distinction from Northwestern University in 1991.

**George V. Granade II**

Mr. Granade is a partner at Reese LLP based in Los Angeles, California, where he focuses on consumer class actions. Cases Mr. Granade has worked on include:

- *Barron v. Snyder's-Lance, Inc.*, No. 0:13-cv-62496-JAL (S.D. Fla.) (involving "Snyder's," "Cape Cod," "EatSmart," and "Padrinos" brand food products labeled as "natural" and allegedly containing genetically-modified organisms and other synthetic ingredients);

- *In re: Frito-Lay North America, Inc. "All Natural" Litigation*, No. 1:12-md-02413-RRM-RLM (E.D.N.Y.) (involving "SunChips," "Tostitos," and "Bean Dip" products labeled as "natural" and allegedly containing genetically-modified organisms); and

- *Martin v. Cargill, Inc.*, No. 0:13-cv-02563-RHK-JJG (D. Minn.) (involving "Truvia" sweetener product labeled as "natural" and allegedly containing highly processed ingredients).

Mr. Granade received his juris doctorate from New York University School of Law in 2011. He received a master's degree from the University of Georgia at Athens in 2005 with distinction and a bachelor's degree from the University of Georgia at Athens in 2003, *magna cum laude* and with High Honors.

Mr. Granade is a member of the state bars of Georgia, New York, and California. He is also a member of the bar of the U.S. Courts of Appeals for the Second Circuit and Ninth Circuit, as well as the bars of the U.S. District Courts for the Eastern District of New York, Southern District of New York, Western District of New York, Southern District of Illinois, Northern District of Illinois, Northern District of California, Southern District of California, Central District of California, and Eastern District of California.

**Maurice L. Hudson**

Mr. Hudson is based in Los Angeles, California, where he brings over a decade of legal experience to our efforts to protect clients and consumers from harmful corporate practices. As a former Assistant Corporation Counsel for the City of New York, Mr. Hudson successfully resolved dozens of federal civil cases brought in the district courts, obtained a favorable jury verdict as co-lead counsel in a multi-party SDNY civil suit, taught CLEs on litigation and constitutional law, trained junior attorneys on conducting depositions, and received the Division Chief's Award for outstanding legal work. After returning to the private sector, Mr. Hudson participated in litigating and negotiating claims on behalf of ordinary patients and consumers alleging injuries by powerful medical and pharmaceutical companies, and has continued to serve vulnerable communities as a volunteer immigration clinic attorney and as a California Social Welfare Archives board member.

While earning a juris doctorate in international law from Case Western Reserve University, Mr. Hudson received numerous honors and awards, including the Community Service Award, the Student Bar Leadership Award, appearances on the Dean's List, and a CALI award for corporate governance. Prior to attending law school, Mr. Hudson taught African American studies at UC Berkeley while earning a master's degree in social welfare and served as director of the Resource Center for Sexual & Gender Diversity at UC Santa Barbara.

In addition to his ongoing work with our firm, Mr. Hudson consults for local education and law enforcement agencies, supervises direct-practice social work interns, and teaches evidence-based practice, program development and social innovation to masters and doctoral students at USC.

## Kate J. Stoia

Ms. Stoia is based in San Francisco, California from where she litigates securities and consumer class actions. Ms. Stoia previously worked at the law firms of Brobeck Phleger & Harrison LLP and Gibson Dunn & Crutcher LLP. Prior to her work as a civil litigator, Ms. Stoia clerked for the Hon. Charles A. Legge of the Northern District of California.

Ms, Stoia is a member of the state bar of California and several federal courts. Ms. Stoia received her juris doctorate from Boalt Hall School of Law, University of California at Berkeley and her bachelor's degree from Columbia University.

## Lance N. Stott

Mr. Stott is based in Austin, Texas from where he litigates consumer class actions. Previous and current consumer fraud class actions litigated by Mr. Stott include *Davis v. Toshiba America Consumer Products* for allegedly defective DVD players; *Bennight v. Pioneer Electronics (USA) Inc. et al.* for allegedly defective television sets; *Spencer v. Pioneer Electronics (USA) Inc. et al.* for allegedly defective DVD players; and, *Okland v. Travelocity.com, Inc.*, for deceptive pricing for online hotel reservations.

Mr. Stott is a member of the state bar of Texas. Mr. Stott received his juris doctorate from the University of Texas in 1996 and his bachelor's degree from New College in 1993.

## Belinda L. Williams

Ms. Williams is based in New York from where she focuses her practice on class actions on behalf of defrauded consumers and investors. Ms. Williams has extensive experience in litigating complex commercial cases.

Ms. Williams is admitted to the bars of several federal courts as well as the state bars of New York and Maryland. Ms. Williams received her juris doctorate from the University of Virginia School of Law in 1986 and her undergraduate degree from Harvard University in 1982.

# EXHIBIT 4



SHUB LAW FIRM LLC

134 KINGS HIGHWAY, SECOND FLOOR
HADDONFIELD, NJ 08033

(856) 772-7200
SHUBLAWYERS.COM
INFO@SHUBLAWYERS.COM
JSHUB@SHUBLAWYERS.COM
KLAUKAITIS@SHUBLAWYERS.COM



**Jonathan Shub** is the founder of Shub Law Firm LLC. Mr. Shub graduated from American University (Washington, D.C.), B.A., in 1983 and Delaware Law School of Widener University (now Widener University Delaware School of Law), cum laude, in 1988. While enrolled in Delaware Law School of Widener University, he served as the Law Review Articles Editor. Jon was a Wolcott Fellow Law Clerk to the Hon. Joseph T. Walsh, Delaware Supreme Court in 1988. He is a member of the American Association of Justice (past chairman of class action litigation section), the American Bar Association and the Consumer Attorneys of California. Jon was named a Pennsylvania SuperLawyer from 2005 -2009 and 2011-2019. Jon is also an active member of his local synagogue and an avid political fundraiser.

Jon is recognized as one of the nation's leading class action consumer rights lawyers, based on his vast experience and successes representing classes of individuals and businesses in a vast array of matters involving unlawful conduct. Jon has gained notable attention in the area of defective consumer electronics and computer hardware as a result of many leadership positions in federal and state cases against companies such as Hewlett-Packard, Maytag, IBM and Palm. In fact, Maximum PC Magazine, a leading industry publication, said years back that "Shub is becoming renowned for orchestrating suits that have simultaneously benefited consumers and exposed buggy hardware." He also has vast experience in mass tort class actions such as Vioxx, light tobacco litigation, and in consumer class actions such as energy deregulation. He is currently heavily involved in litigation on behalf of businesses that were denied insurance coverage involving COVID-19.

Jon launched his career in the Washington office of Fried, Frank, Harris, Shriver & Jacobson, where he worked on complex commercial matters including corporate investigations and securities litigation. He then moved into a practice of consumer protection and advocacy. Prior to joining Kohn, Swift & Graf, P.C., Jonathan was the resident partner in the Philadelphia office of Seeger Weiss LLP. He is a frequent lecturer on cutting edge class action issues, and is a past chairman of the Class Action Litigation Group of the American Association for Justice. Jon regularly appears in state and federal courts nationwide, and in many high profile consumer protection cases. Jon's leadership roles require him to develop the theories of liability for the entire class as well as the overall trial strategy for the cases. Most recently, Jon was co-lead and co-trial counsel in a case against municipality for violation of a state privacy law. The trial resulted in a jury award of approximately $68,000,000 to the Class.

**Jon's experience in class action litigation includes the following leadership positions:**

Serves as lead counsel in New York against KIWI Energy LLC for deceptive advertising of residential energy practices.
Served as co-lead counsel in Illinois against Direct Energy for deceptive advertising of residential energy practices.
Served as co-lead counsel in Pennsylvania against PG&E for deceptive advertising of residential energy practices.
Served as co-lead counsel in settled national litigation against CPG International for deceptive advertising in connections with deceptive advertising of AZEK-branded decking products.
Served as executive committee counsel in settled national litigation against Western Union for deceptive practices in connection with money transfers.
Served as co-lead counsel in litigation against Facebook for deceptive advertising practices.
Served as co-lead counsel in a national class action against Palm involving defective smart phones.
Served as co-lead counsel in a national class action against Nissan for defective tires on its 350Z model.
Served as co-lead counsel in a national class action against Hewlett Packard claiming defects in certain printer models.
Served as co-lead counsel in litigation against Vonage for consumer fraud.
Served as co-lead counsel in litigation against Maytag, where he was instrumental in negotiating a $42.5 million nationwide settlement for a class of more than 200,000 Maytag customers.
Served as co-lead counsel in a nationwide class settlement against IBM that affected more than 3 million hard drive purchasers.

**Publications and Presentations:**

Moderator, Class Actions, Annual Meetings of American Association of Justice, 2015, 2016
Speaker, "Finding the Right Class Action", New Jersey Association of Justice, June, 2016
Speaker, "Nuts and Bolts of MDL Practice", Class Action Symposium, Chicago Illinois, June, 2010
Speaker, "Computer Technology and Consumer Products Class Actions", Consumer Attorneys of California 46th Annual Convention, November, 2007
Frequent speaker, American Association for Justice (formerly ATLA)
Author, "Distinguishing Individual from Derivative Claims in the Context of Battles for Corporate Control", 13 Del. J. Corp. L. 579 (1998)

Author,"Shareholder Rights Plans? Do They Render Shareholders Defenseless Against Their
Own Management", 12 Del. J. Corp. L. 991 (1997)
Co-author, "Once Again, the Court Fails to Rein in RICO", Legal Times (April 27, 1992)
Co-author, "Failed One-Share, One Vote Rule Let SEC Intrude in Boardroom", National Law
Journal (October 8, 1990).



**Kevin Laukaitis** is a Philadelphia native who practices in the areas of
consumer rights litigation and other complex class action litigation.
Mr. Laukaitis is a graduate of Drexel University, where he received a
bachelor's degree in Business Administration. He attended law school
at Temple University Beasley School of Law in its part-time evening
program. During law school, Kevin worked full-time as a paralegal
and law clerk where he gained practical experience in consumer rights
litigation, including complex class actions. Kevin is a member of
American Association for Justice and Philadelphia Trial Lawyers
Association, Member

Mr. Laukaitis' practice has been focused on class action consumer
litigation involving overcharging of deregulated energy companies,
defective products, mislabeling and consumer fraud, and other areas of complex litigation.

Mr. Laukaitis has played a prominent role in cases against deregulated energy companies that
have engaged in deceptive practices by overcharging consumers on their energy bills. Mr.
Laukaitis' efforts have resulted in over $50 million dollars in recovery to classes of consumers
who were overcharged by these energy companies.

## PROMINENT JUDGMENTS AND SETTLEMENTS:

Sobiech v. U.S. Gas & Electric, Inc., Case No. 2:14-cv-04464, United States District Court for
the Eastern District of Pennsylvania (worked on the team who obtained $1.25 million for a class
of Pennsylvania resident customers of Pennsylvania Gas & Electric)

Amy Silvis v. Ambit Northeast LLC, Case No. 2:14-cv-05005-ER, United States District Court
for the Eastern District of Pennsylvania (worked on the team who obtained $9.3 million for a
class of Pennsylvania resident customers of Ambit Energy)

Basile v. Stream Energy Pennsylvania, LLC, et al., Case No.1:15-cv-01518-YK, United States
District Court for the Middle District of Pennsylvania (worked on the team who obtained $13.5
million for a class of Pennsylvania resident customers of Stream Energy)

Lori Sanborn, et al. v. Viridian Energy Inc., et al., Case No. 3:14-cv-01731-SRU, United States
District Court for the District of Connecticut (worked on the team who obtained $18.5 million
for a nationwide class of customers of Viridian Energy).

Hamlen v. Gateway Energy Services Corporation, Case No. 7:16-cv-03526-VB-JCM, United States District Court for the Southern District of New York (appointed class counsel and worked on the team who obtained $9.25 million for a class of New York, New Jersey, Pennsylvania, Maryland, Virginia, Kentucky, and Ohio resident customers of Gateway Energy).

Austin v. Kiwi Energy Services LLC, Case No. 515350/2017, New York State Supreme Court, Kings County (appointed lead counsel and worked on the team who obtained over $1 million for a class of customers of Kiwi Energy)

Mr. Laukaitis is also involved in pending class action litigation against several other deregulated energy companies, representing customers throughout the nation, including:

Verde Energy, Sperian Energy, Just Energy, Gateway Energy, Palmco Energy, Greenlight Energy, and Agway Energy.

Mr. Laukaitis was also part of the team of attorneys who worked on Taha v. County of Bucks, No. 12-06867, United States District Court for the Eastern District of Pennsylvania, a seminal case which resulted in a jury verdict for a certified class of nearly 68,000 people. The jury awarded each member of the class $1,000 in punitive damages.

**ADMISSIONS**
Pennsylvania
United States District Court for the Eastern District of Pennsylvania
United States District Court for the Northern District of Illinois
United States District Court for the Eastern District of Michigan